UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| The Government of Canada, the Government of Québec, the British Columbia Lumber Trade Council, Fontaine, Inc., Interfor Corporation, Interfor Sales & Marketing Ltd.,<br><br>                *Plaintiffs*,<br><br>        v.<br><br>The United States,<br><br>                *Defendant*. | Court No. 1:23-cv-00187 |

**COMPLAINT**

Pursuant to Rules 3(a)(2) and 7(a)(1) of the Rules of the U.S. Court of International Trade ("USCIT Rules") and 19 U.S.C. § 1516a(a)(2)(A), the Government of Canada, the Government of Québec, the British Columbia Lumber Trade Council, Fontaine, Inc., Interfor Corporation, and Interfor Sales & Marketing Ltd. (collectively, "Plaintiffs"), by and through their undersigned counsel, allege as follows:

**ADMINISTRATIVE DECISION TO BE REVIEWED**

1.      Plaintiffs appeal certain aspects of the final results in the U.S. Department of Commerce's ("Commerce") fourth administrative review of the antidumping duty order on softwood lumber products from Canada.[1] The *Final Results* were published in the Federal

---

[1] *See Certain Softwood Lumber Products From Canada: Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2021*, 88 Fed. Reg. 50,106 (Dep't Commerce Aug. 1, 2023) ("*Final Results*").

Register on August 1, 2023, and amended on September 7, 2023.[2] Plaintiffs bring this action to contest, as unsupported by substantial evidence on the record and otherwise not in accordance with law, Commerce's determinations: that the mandatory respondents, West Fraser and Canfor,[3] sold softwood lumber at less than normal value; the dumping margins Commerce calculated for the mandatory respondents; and the dumping margin calculated for all non-individually examined companies in the administrative review.

## JURISDICTION

2.	Pursuant to 28 U.S.C. § 1581(c), and through 19 U.S.C. §§ 1516a(a)(2)(A)(i)(I) and 1516a(a)(2)(B)(iii), this Court has exclusive jurisdiction to review the final results of administrative reviews by Commerce.

## STANDING OF PLAINTIFFS

3.	Plaintiff the Government of Canada is the federal government of the "country in which {the subject} merchandise is produced or manufactured or from which {the subject} merchandise is exported," and therefore, is an interested party as defined in 19 U.S.C. §§ 1677(9)(B), 1516a(f)(3), and 28 U.S.C. § 2631(k)(1). Specifically, the mandatory respondents and all of the non-individually examined companies produce subject merchandise in, and export subject merchandise from, Canada.

---

[2] *See Certain Softwood Lumber Products from Canada: Amended Final Results of Antidumping Duty Administrative Review in Part; 2021*, 88 Fed Reg. 61,511 (Dep't Commerce Sept. 7, 2023) ("*Amended Final Results*").

[3] The mandatory respondents were: (1) West Fraser Mills Ltd. ("West Fraser"), which Commerce treated as a single entity with Blue Ridge Lumber Inc., Manning Forest Products Ltd., and Sundre Forest Products Inc.; and (2) Canfor Corporation ("Canfor"), which Commerce treated as a single entity with Canadian Forest Products Ltd. and Canfor Wood Products Marketing Ltd.  *See Final Results*, 88 Fed. Reg. at 50,107.

4.       Plaintiff the Government of Québec is a provincial government of the "country in which {the subject} merchandise is produced or manufactured or from which {the subject} merchandise is exported," and therefore, is an interested party as defined in 19 U.S.C. §§ 1677(9)(B), 1516a(f)(3), and 28 U.S.C. § 2631(k)(1). Specifically, several of the non-individually examined companies produce subject merchandise in, and export subject merchandise from, Québec.

5.       Plaintiff the British Columbia Lumber Trade Council is a trade or business association, a majority of the members of which are producers or exporters of subject merchandise, and therefore, an interested party within the meaning of 19 U.S.C. §§ 1677(9)(A), 1516a(f)(3), and 28 U.S.C. § 2631(k)(1). Specifically, each of the ten members of the British Columbia Lumber Trade Council—Interfor Corporation, Sinclair Group Forest Products Ltd., Tolko Industries Ltd., West Fraser Mills Ltd., Western Forest Products Inc., Canfor Corporation, Dunkley Lumber Ltd., Conifex Inc., Gorman Bros. Lumber Ltd., and Carrier Lumber Ltd.—is "a foreign manufacturer, producer, or exporter, or the United States importer, of subject merchandise."[4]

6.       Plaintiff Fontaine Inc. is a foreign manufacturer, producer, and exporter of the subject merchandise, and therefore, an interested party within the meaning of 19 U.S.C. §§ 1677(9)(A), 1516a(f)(3), and 28 U.S.C. § 2631(k)(1).

7.       Plaintiff Interfor Corporation is a foreign manufacturer, producer, and exporter, as well as a U.S. importer of the subject merchandise, and therefore, an interested party within the meaning of 19 U.S.C. §§ 1677(9)(A), 1516a(f)(3), and 28 U.S.C. § 2631(k)(1).

---

[4] 19 U.S.C. § 1677(9)(A).

8. Plaintiff Interfor Sales & Marketing Ltd. is a foreign exporter and a U.S. importer of the subject merchandise, and therefore, an interested party within the meaning of 19 U.S.C. §§ 1677(9)(A), 1516a(f)(3), and 28 U.S.C. § 2631(k)(1).

9. Each of the Plaintiffs actively participated in the administrative proceeding that is the subject of this appeal through submissions, including filing case and/or rebuttal briefs. Accordingly, Plaintiffs have standing to commence this action pursuant to 19 U.S.C. § 1516a(d) and 28 U.S.C. § 2631(c).

## TIMELINESS OF ACTION

10. Commerce published the *Final Results* in the Federal Register on August 1, 2023. This action was commenced on September 6, 2023, with the filing of the summons.[5] This action was timely commenced by the filing of a summons within the statutory time limits prescribed in 19 U.S.C. § 1516a(a)(5)(A) and 28 U.S.C. § 2636(c) because this appeal concerns merchandise from Canada, a free trade area country, and the 30-day period to commence an action in the U.S. Court of International Trade did not begin to run until September 1, 2023, which is "the 31st day after the date on which notice of the determination is published in the Federal Register."[6]

11. This Complaint is being filed on October 6, 2023, within 30 days of filing the summons.[7] Therefore, this Complaint is timely filed.

---

[5] *See* Summons (Sept. 6, 2023), ECF No. 1.

[6] 19 U.S.C. § 1516a(a)(5)(A).

[7] 19 U.S.C. § 1516a(a)(2)(A); USCIT Rule 3(a)(2).

## THE DIFFERENTIAL PRICING METHODOLOGY

12.     Under the statute and Commerce's regulations, the preferred comparison methodology for calculating dumping margins is "by comparing the weighted average of the normal values to the weighted average of the export prices (and constructed export prices) for comparable merchandise," also referred to as the average-to-average ("A-A") methodology.[8]

13.     In certain exceptional circumstances (when Commerce finds "targeted dumping"), 19 U.S.C. § 1677f-1(d)(1)(B) allows Commerce to calculate dumping margins "by comparing the weighted average of the normal values to the export prices (or constructed export prices) of individual transactions for comparable merchandise," also referred to as the average-to-transaction ("A-T") methodology.  Commerce may dispense with the normal A-A methodology and instead use the A-T methodology or a mix of the A-A and A-T methodologies (the "mixed methodology") only if it finds that "(i) there is a pattern of export prices (or constructed export prices) for comparable merchandise that differ significantly among purchasers, regions, or periods of time, and (ii) {Commerce} explains why such differences cannot be taken into account" using the preferred A-A methodology.[9]

14.     When Commerce employs the A-A methodology to calculate a dumping margin, it does not set to zero the dumping margins of transactions in which the U.S. price is above normal value (non-dumped margins) when combining them with transactions in which the U.S. price is below normal value (dumped margins).  However, when Commerce employs the A-T methodology, it *does* set to zero non-dumped margins.

---

[8] 19 U.S.C. § 1677f-l(d)(l)(A)(i); 19 C.F.R. § 351.414(c).

[9] 19 U.S.C. § 1677f-1(d)(1)(B).

15. To supposedly detect targeted dumping, Commerce applies a series of tests that make up the differential pricing methodology ("DPM").[10] The DPM proceeds in two stages, which Commerce claims fulfill both criteria in 19 U.S.C. § 1677f-1(d)(1)(B).

16. In the first stage, Commerce applies what are known as the "Cohen's *d* test" and the "ratio test" to determine whether there is a pattern of U.S. prices that differs significantly among purchasers, regions, or periods of time. Commerce purports to rely on the Cohen's *d* test to identify "significant" price differences. Commerce conducts the Cohen's *d* test by first separating product-specific net sales prices into a series of "test" groups composed of the sales to a particular purchaser, in a particular region, or during a particular time period (depending on what is being tested) and "base" or "comparison" groups composed of the sales to all other purchasers, regions, or time periods. Commerce plugs certain values associated with those groups of data into a formula (i.e., Cohen's *d*), which produces a coefficient that it interprets using cutoffs developed by Professor Jacob Cohen. If the absolute value of the Cohen's *d* coefficient is equal to or greater than 0.8, then Commerce deems the sales in the test group to "pass" the Cohen's *d* test.

17. Next, Commerce conducts its "ratio test," by which it purports to identify whether there is a "pattern" of export prices that differ significantly among purchasers, regions or periods of time. In the ratio test, Commerce aggregates the total value of U.S. sales that passed the Cohen's *d* test and compares that aggregate value to the value of all U.S. sales. Depending on the percentage of the aggregate value of sales found to "pass" the Cohen's *d* test, Commerce will: (i)

---

[10] *See Certain Softwood Lumber Products From Canada: Preliminary Results of Antidumping Duty Administrative Review*, 88 Fed. Reg. 5,306 (Dep't Commerce Jan. 27, 2023) ("*Preliminary Results*"), and accompanying Decision Mem. for Prelim. Results at 8–10.

rely entirely on the A-A methodology (and not proceed to the second stage of the DPM—the meaningful difference test); (ii) apply the mixed methodology in the meaningful difference test; or (iii) apply the A-T methodology to all sales in the meaningful difference test.

18. In the second stage, Commerce applies the "meaningful difference" test, purportedly to meet its statutory obligation to explain whether the A-A methodology cannot account for identified price "differences" as compared to the margin produced when using the mixed methodology or the A-T methodology. In determining if the difference in dumping margins is meaningful, Commerce considers whether:

> (1) there is a 25 percent relative change in the weighted average dumping margins between the average-to-average method and the appropriate alternative method where both rates are above the *de minimis* threshold, or (2) the resulting weighted-average dumping margins between the average-to-average method and the appropriate alternative method move across the *de minimis* threshold.[11]

Where either of these criteria is met, Commerce concludes, without additional explanation, that the respondent's U.S. sales were the result of targeted dumping, and therefore, the use of the mixed methodology or the A-T methodology to determine the respondent's margin is appropriate.

## ISSUES RAISED IN THIS CASE

19. This case challenges the *Final Results* of the fourth administrative review (the "Review") of the U.S. antidumping duty order on softwood lumber from Canada.[12] The period of review is January 1, 2021 through December 31, 2021.

---

[11] *Id*. at 9–10.

[12] *Certain Softwood Lumber Products from Canada: Antidumping Duty Order and Partial Amended Final Determination*, 83 Fed. Reg. 350 (Dep't Commerce Jan. 3, 2018).

20. In January 2022, Commerce published in the Federal Register a notice of opportunity to request administrative review of the antidumping duty order on softwood lumber from Canada.[13]

21. Commerce initiated the instant Review on March 4, 2022.[14]

22. On April 29, 2022, pursuant to 19 U.S.C. § 1677f-1(c)(2), Commerce limited its examination to two mandatory respondents: Canfor and West Fraser.[15]

23. On December 27, 2022, the Government of Canada submitted an extensive analysis by a leading expert in the field of statistics, Professor Larry V. Hedges, describing how Commerce's use of the Cohen's *d* test, which is the foundation of the DPM, is not reliable when Commerce departs from the statistics literature and ignores essential principles underlying the Cohen's *d* test.[16]

---

[13] Commerce published its initial notice of opportunity to request administrative review on January 3, 2022, which omitted certain text and tables. *Antidumping or Countervailing Duty Order, Finding, or Suspended Investigation; Opportunity to Request Administrative Review and Join Annual Inquiry Service List*, 87 Fed. Reg. 75 (Dep't Commerce Jan. 3, 2022). Commerce published the corrected notice, including the text and tables, on January 11, 2022. *Antidumping or Countervailing Duty Order, Finding, or Suspended Investigation: Opportunity to Request Administrative Review and Join Annual Inquiry Service List*, 87 Fed. Reg. 1,396 (Dep't Commerce Jan. 11, 2022).

[14] *See Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 87 Fed. Reg. 13,252 (Dep't Commerce Mar. 9, 2022).

[15] *See* Administrative Review of the Antidumping Duty Order on Certain Softwood Lumber Products from Canada: Respondent Selection, from Maisha Cryor to Robert Bolling (Apr. 29, 2022).

[16] *See* Ltr. from McDermott Will & Emery LLP, Submission of Factual Information (Dec. 27, 2022) & Exh. 1; *see also Mid Continent Steel & Wire, Inc. v. United States*, 41 F.4th 1367, 1381 (Fed. Cir. 2022) (describing the Cohen's *d* test as the first step and "the foundation of the remaining steps" of the DPM).

24. Plaintiffs also submitted evidence that the mandatory respondents changed their U.S. prices in response to market volatility, and thus, the price changes were not the result of "targeted dumping."[17]

25. In the *Preliminary Results*, Commerce unreasonably applied the DPM and found that both mandatory respondents engaged in targeted dumping and used the A-T methodology to determine their margins. Commerce then used the mandatory respondents' margins, which were tainted by Commerce's unreasonable use of the A-T methodology, to calculate an inaccurate margin for the non-individually examined companies.[18]

26. Following publication of the *Preliminary Results*, the Government of Canada and other respondents submitted case briefs challenging Commerce's use of the DPM and the evidentiary basis of its targeted dumping findings for Canfor and West Fraser.

27. For the *Final Results*, Commerce continued to apply its defective DPM and found that the mandatory respondents' U.S. sales were the result of targeted dumping. In reaching this conclusion, Commerce ignored and mischaracterized the analysis by Professor Hedges and the arguments regarding Commerce's unreasonable application of the DPM. Commerce also mischaracterized its obligation to address the evidence that undermined Commerce's conclusion that pricing differences identified in the Cohen's *d* test were attributable to market conditions and not targeted dumping.

---

[17] *See, e.g.*, Ltr. from McDermott Will & Emery LLP, Responding to Petitioner's Allegation of a Particular Market Situation (Dec. 6, 2022), Exh. PMS-9, Attach. 32.

[18] *See Preliminary Results*, 88 Fed. Reg. at 5,306–07.

28.     Because Commerce erroneously determined that the mandatory respondents engaged in targeted dumping, Commerce used the A-T methodology to calculate their dumping margins: 5.25 percent for Canfor and 7.06 percent for West Fraser.[19]

29.     Last, Commerce used the mandatory respondents' inaccurate margins to erroneously calculate a margin of 6.26 percent for the non-individually examined companies.[20]

## STATEMENT OF CLAIMS

## COUNT ONE

30.     Plaintiffs incorporate the allegations contained in paragraphs 1 through 29 by reference as fully set forth herein.

31.     Commerce's reliance on the DPM and subsequent use of the A-T methodology to calculate the margins for the mandatory respondents, and its reliance on those flawed margins to calculate the margin for the non-individually examined companies, did not satisfy Commerce's statutory obligations for the use of the A-T methodology because, among other things, Commerce's use of the DPM does not identify "a pattern of export prices (or constructed export prices) . . . that differ significantly among purchasers, regions, or periods of time" or explain "why such differences cannot be taken into account using" the A-A methodology.[21]   Therefore,

---

[19] *Amended Final Results*, 88 Fed. Reg. at 61,511.  Commerce initially calculated a margin of 6.96 percent for West Fraser, *see Final Results*, 88 Fed. Reg. at 50,107, but pursuant to the petitioner's ministerial error allegations, Commerce increased the margin to 7.06 percent, *Amended Final Results*, 88 Fed. Reg. at 61,511.

[20] *Amended Final Results*, 88 Fed. Reg. at 61,511.  Commerce initially calculated a margin of 6.20 percent for the non-individually examined companies, *see Final Results*, 88 Fed. Reg. at 50,107, but, as part of the petitioner's ministerial error allegations, Commerce increased the margin for the non-examined companies to 6.26 percent, *Amended Final Results*, 88 Fed. Reg. at 61,511.

[21] 19 U.S.C. § 1677f-1(d)(1)(B)(i)–(ii).

Commerce's use of the DPM, and its consequent use of the A-T methodology to calculate the margins for the mandatory respondents, and its reliance on those margins to calculate the non-individually examined respondents' margin, is not supported by substantial evidence or in accordance with the law.

## COUNT TWO

32.     Plaintiffs incorporate the allegations contained in paragraphs 1 through 31 by reference as fully set forth herein.

33.     Commerce mischaracterized and ignored evidence concerning its flawed application of the DPM, including the expert analysis provided by Professor Hedges as to the reliability of Commerce's use of the Cohen's $d$ test when the statistical underpinnings of the test are violated. Commerce also mischaracterized and ignored the legal arguments based on Professor Hedges's analysis.  Therefore, Commerce's use of the DPM, and its consequent use of the A-T methodology to calculate the margins for the mandatory respondents, and its reliance on those margins to calculate the non-individually examined respondents' margin, is not supported by substantial evidence or in accordance with the law.

## COUNT THREE

34.     Plaintiffs incorporate the allegations contained in paragraphs 1 through 33 by reference as fully set forth herein.

35.     Commerce mischaracterized its obligation to consider evidence detracting from its conclusion that the supposed price differences found using the Cohen's $d$ test were the result of targeted dumping.  Consequently, Commerce failed to address evidence fairly detracting from its finding of targeted dumping, which renders that finding unsupported by substantial evidence and not in accordance with the law.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that the Court:

(1) Hold Commerce's *Final Results*, as amended by the *Amended Final Results*, unsupported by substantial evidence and not in accordance with law with respect to the claims advanced by Plaintiffs in this Complaint;

(2) Remand this matter to Commerce for disposition consistent with the opinion of this Court; and

(3) Grant such additional and further relief as the Court deems just and proper.

Respectfully submitted,

*/s/ Eric S. Parnes*
Eric S. Parnes
Joanne E. Osendarp
Lynn G. Kamarck
Alan G. Kashdan
Tyler J. Kimberly
**Blank Rome LLP**
1825 Eye Street NW
Washington, DC 20006
(202) 420-5479
eric.parnes@blankrome.com

*Counsel to the Government of Canada*

*/s/ Amy J. Lentz*
Amy J. Lentz
Stephanie Wang
**Steptoe & Johnson**
1330 Connecticut Ave NW
Washington, DC 20036
(202) 429-1320
alentz@steptoe.com

*Counsel to the British Columbia Lumber Trade Council*

*/s/ Nancy A. Noonan*
Nancy A. Noonan Esq.
Matthew J. Clark, Esq
**ArentFox Schiff LLP**
1717 K Street, NW
Washington, DC 20006-5344
(202) 857-6479
Nancy.Noonan@afslaw.com

*Counsel to the Government of Québec*

| | |
|---|---|
| */s/ Diana Dimitriuc Quaia* | */s/ Mark B. Lehnardt* |
| Matthew Nolan | Mark B. Lehnardt |
| Diana Dimitriuc Quaia | **Law Offices of David L. Simon, PLLC** |
| Mario Torrico | 1025 Connecticut Ave., N.W., Ste. 1000 |
| **ArentFox Schiff LLP** | Washington, D.C.  20036 |
| 1717 K Street, NW | (202) 642-4850 |
| Washington, DC 20006 | MarkLehnardt@DLSimon.com |
| (202) 857-6291 | |
| diana.dimitriuc-quaia@afslaw.com | *Counsel to Fontaine, Inc.* |

*Counsel to Interfor Corporation
and Interfor Sales & Marketing Ltd.*

October 6, 2023