# IN THE UNITED STATES COURT OF INTERNATIONAL TRADE
## BEFORE THE HONORABLE JENNIFER CHOE-GROVES, JUDGE

THE GOVERNMENT OF CANADA, THE
GOVERNMENT OF ALBERTA, THE
GOVERNMENT OF QUÉBEC, THE BRITISH
COLUMBIA LUMBER TRADE COUNCIL,
FONTAINE, INC., INTERFOR CORPORATION,
INTERFOR SALES & MARKETING LTD.,

              Plaintiffs,

CANFOR CORPORATION, CANADIAN
FOREST PRODUCTS, LTD., AND CANFOR
WOOD PRODUCTS MARKETING LTD.,

              Plaintiff-Intervenors,

CARRIER LUMBER LTD. AND CARRIER FOREST
PRODUCTS LTD.,

              Plaintiff-Intervenors,

OLYMPIC INDUSTRIES INC. AND OLYMPIC
INDUSTRIES ULC

              Plaintiff-Intervenors,

GOVERNMENT OF ONTARIO,

              Plaintiff-Intervenor,

BRITISH COLUMBIA LUMBER TRADE COUNCIL

              Plaintiff-Intervenor,

WEST FRASER MILLS LTD.

              Plaintiff-Intervenor,

        v.

UNITED STATES,

              Defendant,

Consol. Court No. 23-00187

COMMITTEE OVERSEEING ACTION FOR
LUMBER INTERNATIONAL TRADE
INVESTIGATIONS OR NEGOTIATIONS

        Defendant-Intervenor,

SIERRA PACIFIC INDUSTRIES

        Defendant-Intervenor.

## NB RESPONDENTS' REPLY TO DEFENDANT'S AND DEFENDANT-INTERVENOR'S RESPONSES IN OPPOSITION TO THE NB RESPONDENTS' MOTION TO INTERVENE

Date: December 5, 2023

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE THE HONORABLE JENNIFER CHOE-GROVES, JUDGE**

| | |
|---|---|
| CANFOR CORPORATION, CANADIAN FOREST PRODUCTS, LTD., AND CANFOR WOOD PRODUCTS MARKETING, LTD., | |
| Plaintiffs, | |
| TOLKO INDUSTRIES LTD., TOLKO MARKETING & SALES LTD., AND GILBERT SMITH FOREST PRODUCTS LTD., | |
| Plaintiff-Intervenors, | |
| CARRIER LUMBER LTD. AND CARRIER FOREST PRODUCTS LTD., | |
| Plaintiff-Intervenors, | |
| OLYMPIC INDUSTRIES INC. AND OLYMPIC INDUSTRIES ULC | |
| Plaintiff-Intervenors, | |
| THE ONTARIO FOREST INDUSTRIES ASSOCIATION, THE CONSEIL DE L'INDUSTRIE FORESTIERE DU QUEBEC, AND RESOLUTE FP CANADA INC. | Court No. 23-00188 |
| Plaintiff-Intervenors, | |
| BRITISH COLUMBIA LUMBER TRADE COUNCIL | |
| Plaintiff-Intervenor, | |
| v. | |
| UNITED STATES, | |
| Defendant, | |
| COMMITTEE OVERSEEING ACTION FOR LUMBER INTERNATIONAL TRADE INVESTIGATIONS OR NEGOTIATIONS | |
| Defendant-Intervenor, | |

SIERRA PACIFIC INDUSTRIES

Defendant-Intervenor.

**NB RESPONDENTS' REPLY TO DEFENDANT'S AND DEFENDANT-INTERVENOR'S RESPONSES IN OPPOSITION TO THE NB RESPONDENTS' MOTION TO INTERVENE**

Date: December 5, 2023

## TABLE OF CONTENTS

I.      INTRODUCTION ............................................................................................................1

II.     TIMELINESS ...............................................................................................................3

III.    THE NB RESPONDENTS HAVE STANDING UNDER 28 U.S.C. § 2631(J)(1)(B)
        BECAUSE THEY SUBMITTED FACTUAL INFORMATION IN THE
        UNDERLYING ADMINISTRATIVE REVIEW ................................................................3

IV.     THE NB RESPONDENTS HAVE STANDING UNDER 28 U.S.C. § 2631(J)(1)(B)
        BECAUSE THEIR PARTICIPATION IN THE UNDERLYING ADMINISTRATIVE
        REVIEW MEANINGFULLY PUT THE DEPARTMENT ON NOTICE OF THEIR
        CONCERNS ...................................................................................................................6

V.      FUNDAMENTAL PRINCIPLES OF STATUTORY INTERPRETATION AND
        EQUITY DEMAND THAT PARTIES IN THE NB RESPONDENTS' POSITION
        HAVE STANDING TO INTERVENE UNDER 28 U.S.C. § 2631(J)(1)(B) ..................10

VI.     PRECEDENT CITED BY THE UNITED STATES AND THE COALITION CAN
        AND MUST BE DISTINGUISHED FROM NB RESPONDENTS'
        CIRCUMSTANCES IN THIS CASE...............................................................................13

VII.    THE GOVERNMENT AND THE COALITION IGNORE KEY POINTS ABOUT
        THE CASES CITED BY THE NB RESPONDENTS IN THEIR MOTION TO
        INTERVENE ..................................................................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

**Administrative Proceedings**

*Certain Softwood Lumber Products From Canada: Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2021*, 88 Fed. Reg. 50,106 (Dep't Commerce Aug. 1, 2023) ............................................................. 1

**Federal Cases**

*Ashwander v. Valley Authority*, 297 U.S. 288 (1935) ................................................................................................. 13

*Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204 (1988) ................................................................................................. 18

*Dofasco Inc. v. United States*, 31 C.I.T. 1592 (Ct. Int'l Trade 2007) ................................................................ 3, 14, 15, 16

*Dongkuk Steel Mill Co. v. United States*, 567 F. Supp. 3d 1359 (Ct. Int'l Trade 2022) ............................................... 5, 7, 14, 16

*Jennings v. Rodriguez*, 583 U.S. 281 (2018) ................................................................................................. 13

*Kleissler v. U.S. Forest Serv.*, 157 F.3d 964 (3d Cir. 1998) ........................................................................................ 12

*Laclede Steel Co. v. United States*, 92 F.3d 1206 (Fed. Cir. 1996) ................................................................................. 7

*Legacy Classic Furniture, Inc. v. United States*, 35 C.I.T. 420 (Ct. Int'l Trade 2011) ........................................................ 14, 15, 16

*Navneet Publications (India) Ltd. et al. v. United States*, 999 F.Supp.2d 1354 (Ct. Int'l Trade 2014) ................................................. 11, 17

*New Mexico Garlic Growers Coal. v. United States*, 953 F.3d 1358 (Fed. Cir. 2020) .............................................................. 15

*Nucor Corp. v. United States*, 516 F.Supp.2d 1348 (Ct. Int'l Trade 2007) ........................................... 9, 14, 15, 16

*RHI Refractories Liaoning Co., Ltd. v. United States*, 35 C.I.T. 130 (Ct. Int'l Trade 2011) .................................................... *passim*

*United States v. Brown,*
    333 U.S. 18 (1948) ............................................................................. 12

**Federal Statutes**

19 U.S.C. § 1673d(c)(5) ......................................................................... 11

19 U.S.C. § 1673d(c)(5)(A) .................................................................... 11

19 U.S.C. § 1673d(c)(5)(B) .................................................................... 11

19 U.S.C. § 1677e .................................................................................... 7

19 U.S.C. § 1677f-1(c)(2) ...................................................................... 10

28 U.S.C. § 2631(c) ................................................................................ 11

28 U.S.C. § 2631(j)(1)(B) ............................................................... *passim*

**Regulations**

19 C.F.R. § 351.102(b)(21) ............................................................. 4, 5, 6

19 C.F.R. § 351.102(b)(21)(i)-(v) ............................................................ 6

19 C.F.R. § 351.102(b)(36) ................................................................. 3, 4

19 C.F.R. § 351.213(b)(1) ........................................................................ 7

19 C.F.R. § 351.213(b)(2)-(3) ............................................................. 5, 7

**NB RESPONDENTS' REPLY TO DEFENDANT'S AND DEFENDANT-INTERVENOR'S RESPONSES IN OPPOSITION TO THE NB RESPONDENTS' MOTION TO INTERVENE**

## I.     Introduction

Pursuant to this Court's Order Granting Leave to Reply dated December 4, 2023, Chaleur Forest Products Inc., Chaleur Forest Products L.P., Delco Forest Products Ltd., Devon Lumber Co. Ltd., H.J. Crabbe & Sons Ltd., J.D. Irving, Limited, Langevin Forest Products Inc., Marwood Ltd., North American Forest Products Ltd., and Twin Rivers Paper Co. Inc. (collectively, the "NB Respondents"), submit this Reply to the Responses of the United States (the "Government") and the Committee Overseeing Action for Lumber International Trade Investigations or Negotiations (the "COALITION") opposing the NB Respondents' Motion to Intervene in the above-captioned actions.[1]  *See* ECF No. 81 (Ct. No. 23-00187) (Government's Response); ECF No. 84 (Ct. No. 23-00187) (COALITION's Response); ECF No. 77 (Ct. No. 23-00188) (Government's Response); ECF No. 78 (Ct. No. 23-00188) (COALITION's Response).

The NB Respondents were both "interested part{ies}" and "part{ies} to the proceeding" under 28 U.S.C. § 2631(j)(1)(B) in the fourth administrative review ("AR4") of the antidumping ("AD") duty order on certain softwood lumber products from Canada conducted by the U.S. Department of Commerce (the "Department" or "Commerce") that is challenged in the above-captioned actions.  *See Certain Softwood Lumber Products From Canada: Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2021*, 88 Fed. Reg. 50,106 (Dep't Commerce Aug. 1, 2023).  Therefore, the NB Respondents have

---

[1] The NB Respondents also support the Reply to Defendant's and Defendant-Intervenor's Comments in Opposition to AJ Forest Products Ltd., ER Probyn Export Limited, Rayonier A.M. Canada G.P., and Scierie Alexandre Lemay & Fils Inc.'s Partial Consent Motion To Intervene filed on December 4, 2023, ECF No. 90 (Ct. No. 23-00187).

standing to intervene as a matter of right in the above-captioned actions pursuant to 28 U.S.C. § 2631(j)(1)(B).

While the Government and the COALITION do not contest that the NB Respondents were "interested part{ies}" in the underlying AR4 at issue, they do contest that the NB Respondents were "part{ies} to the proceeding." However, the NB Respondents were "part{ies} to the proceeding," and therefore have standing to intervene as a matter of right under 28 U.S.C. § 2631(j)(1)(B), because, through their actions, they submitted factual information and meaningfully put the Department on notice of their concerns in the underlying AR4. The Government's and the COALITION's arguments that the NB Respondents were not "part{ies} to the proceeding" are based upon an unreasonably narrow, absurd, and constitutionally problematic reading of 28 U.S.C. § 2631(j)(1)(B). Fundamental principles of statutory interpretation and equity demand that foreign producers/exporters and U.S. importers in the NB Respondents' position be deemed "part{ies} to the proceeding" within the meaning of 28 U.S.C. § 2631(j)(1)(B).

Further, as explained below, the cases cited by the Government and the COALITION in their Responses to the NB Respondents' Motion to Intervene are distinguishable from the NB Respondents' circumstances in the present case, because none of these cases pertain to non-selected respondents (*i.e.*, foreign producers/exporters and U.S. importers) that filed their own requests for review. Indeed, this precedent *must* be distinguished from the NB Respondents' circumstances in order to uphold principles of equity in the instant proceedings. The Government's and the COALITION's arguments to the contrary are unavailing.

## II. Timeliness

This Reply is timely filed. On November 27, 2023, the Government and the COALITION each submitted Responses in Opposition to the NB Respondents' Motion to Intervene. *See* ECF No. 81 (Ct. No. 23-00187) (Government's Response); ECF No. 84 (Ct. No. 23-00187) (COALITION's Response); ECF No. 77 (Ct. No. 23-00188) (Government's Response); ECF No. 78 (Ct. No. 23-00188) (COALITION's Response). On November 28, 2023, the NB Respondents filed a Motion for Leave to Reply to the Government's and COALITION's Responses. *See* ECF No. 85 (Ct. No. 23-00187); ECF No. 79 (Ct. No. 23-00188). In their Motion for Leave to Reply, NB Respondents requested 7 days (*i.e.*, until Tuesday, December 5, 2023) to reply to the Government's and the COALITION's Responses. *See id.* On December 4, 2023, the Court granted NB Respondents' motion, with a deadline of 10:00 A.M. EST on December 5, 2023. ECF No. 89 (Ct. No. 23-00187); ECF No. 81 (Ct. No. 23-00188). NB Respondents filed this Reply before 10:00 A.M. EST on December 5, 2023.

## III. The NB Respondents Have Standing Under 28 U.S.C. § 2631(j)(1)(B) Because They Submitted Factual Information in the Underlying Administrative Review

As this Court has recognized, the term "party to the proceeding" in 28 U.S.C. § 2631(j)(1)(B) is undefined. *See Dofasco Inc. v. United States*, 31 C.I.T. 1592, 1597 (Ct. Int'l Trade 2007). In the absence of a statutory definition, this Court has looked for guidance in the definition of "party to the proceeding" in the Department's AD duty and countervailing ("CV") duty regulations. *See id.* The Department's AD/CV duty regulations define "party to the proceeding" as "any interested party that actively participates, through written submissions of factual information or written argument, in a segment of a proceeding." 19 C.F.R. § 351.102(b)(36). The Department's regulations further provide an expansive definition of

"factual information" that includes *any* "{e}vidence, including statements of fact, documents, and data."  *See* 19 C.F.R. § 351.102(b)(21).

Assuming *arguendo* that the definition of "party to the proceeding" in 19 C.F.R. § 351.102(b)(36) sheds light on the meaning of the statutory term "party to the proceeding" in 28 U.S.C. § 2631(j)(1)(B), the NB Respondents are "part{ies} to the proceeding" because they submitted "factual information" within the meaning of 19 C.F.R. § 351.102(b)(21) in their Requests for Administrative Review ("Review Requests").[2]  Specifically, the NB Respondents submitted "statements of fact," which included: "the names of the requesting entities; whether these entities produced, exported, remanufactured, and/or were importers of record of the subject merchandise within the period of review {"POR"}; and the nature of the relationships between the requesting entities (*e.g.*, whether one entity was the exporter for another entity)."  ECF No. 69 (Ct. No. 23-00187); ECF No. 72 (Ct. No. 23- 00188) (Mot.) at 5.  For example, at footnotes 2 and 3 of the review request filed by the NB Respondents other than J.D. Irving, Limited, they explained: "During the POR, Langevin Forest Products Inc. ('Langevin') exported to the United States subject merchandise sourced from Delco Forest Products Ltd. ('Delco'), a Canadian softwood lumber producer/remanufacturer"; and "During the POR, Marwood Ltd. ('Marwood') exported to the United States subject merchandise sourced from numerous other Canadian softwood lumber producers/remanufacturers."  *Id.* at Exhibit 1.  Similarly, on page 2 of the

---

[2] The NB Respondents' Review Requests are included in Exhibit 1 to the NB Respondents' Motion to Intervene.  *See* ECF No. 69 (Ct. No. 23-00187); ECF No. 72 (Ct. No. 23- 00188) (Mot.), at Exhibit 1.

review request filed by J.D. Irving, Limited, it explained: "J.D. Irving is an exporter and producer in Canada of the merchandise covered by the scope of the AD order …."[3] *Id.*

The information submitted by the NB Respondents in their Review Requests—namely, information concerning the relationships between the requesting entities—was more than required for foreign producers/exporters and U.S. importers to submit requests for review under the Department's regulations. *See* 19 C.F.R. § 351.213(b)(2)-(3). The NB Respondents' Review Requests were, therefore, not like the "bare-bones" review request considered by this Court to be insufficient for purposes of standing of a *domestic producer*[4] in *Dongkuk Steel Mill Co. v. United States*, 567 F. Supp. 3d 1359, 1364 (Ct. Int'l Trade 2022).

The Government selectively quotes from the definition of "factual information" in 19 C.F.R. § 351.102(b)(21) to argue that the NB Respondents did not submit "factual information" in their Review Requests, while ignoring that the complete definition of "factual information" in that provision includes *any* "statements of fact," which would plainly encompass the statements made in the NB Respondents' Review Requests. Specifically, the Government contends that "factual information" under the Department's regulations is "{e}vidence, including statements of fact, documents, and data submitted *either in support of allegations, or, to rebut, clarify, or correct such evidence submitted by any other interested party*." ECF No. 81 (Ct. No. 23-00187)

---

[3] The NB Respondents submit that the review request filed by J.D. Irving, Limited, should be sufficient to make it a "party to the proceeding." Nonetheless, based on additional factual information and/or written argument submitted by J.D. Irving, Limited, neither the Government nor the COALITION objects to J.D. Irving, Limited's participation in these actions as a plaintiff-intervenor. See ECF No. 81 (Ct. No. 23-00187) (Government's Response), at 1-2 n.1 (citing P.R. 300, although the correct citation is P.R. 301); ECF No. 77 (Ct. No. 23-00188) (Government's Response), at 1-2 n.1 (same); ECF No. 84 (Ct. No. 23-00187) (COALITION's Response), at 2 n.1 (citing P.R. 301); ECF No. 78 (Ct. No. 23-00188) (COALITION's Response), at 2 n.1 (same).

[4] The critical distinction between a domestic producer requesting review and foreign producers/exporters or U.S. importers requesting review is addressed further below.

(Government's Response), at 3; ECF No. 77 (Ct. No. 23-00188) (Government's Response), at 3 (emphasis added) (*quoting* 19 C.F.R. § 351.102(b)(21)(ii)).  The Government then asserts that, because the NB Respondents did not submit information "in support of allegations" or to "rebut, clarify, or correct" evidence submitted by other interested parties, the NB Respondents did not submit "factual information" sufficient to make them "part{ies} to the proceeding."  *See id.*

The Government's argument is meritless on its face.  The regulatory language referenced by the Government covers only one category of "factual information" identified in 19 C.F.R. § 351.102(b)(21), specifically the category described in 19 C.F.R. § 351.102(b)(21)(ii), which is only one out of five sub-clauses of 19 C.F.R. § 351.102(b)(21).  The Government ignores the fact that 19 C.F.R. § 351.102(b)(21)(i)-(v) in its entirety identifies five categories of "factual information," including the final catch-all category of "{e}vidence, including statements of fact, documents, and data" not otherwise covered by 19 C.F.R. § 351.102(b)(21)(i)-(iv).  *See* 19 C.F.R. § 351.102(b)(21)(v).  This final catch-all category very clearly indicates that *all* "statements of fact," for whatever purpose, are considered "factual information" under the Department's regulatory definition.  In short, the Government makes an incomplete argument, based on a selective reading of the regulatory language, that fails to demonstrate the NB Respondents' lack of standing in these actions.

**IV.  The NB Respondents Have Standing Under 28 U.S.C. § 2631(j)(1)(B) Because Their Participation in the Underlying Administrative Review Meaningfully Put the Department on Notice of Their Concerns**

This Court has held that, to be a "party to the proceeding" under 28 U.S.C. § 2631(j)(1)(B), the "movant need not engage in extensive participation" in the underlying proceeding, but must have "reasonably convey{ed} the{ir} separate status" and participated meaningfully enough "to put Commerce on notice of {their} concerns."  *RHI Refractories Liaoning Co., Ltd. v. United States*, 35 C.I.T. 130, 132 (Ct. Int'l Trade 2011) (internal citations

omitted); *see also Dongkuk Steel Mill Co.*, 567 F. Supp. 3d at 1362 (*quoting RHI Refractories Liaoning,* 35 C.I.T. at 132); *Laclede Steel Co. v. United States*, 92 F.3d 1206, 1996 WL 384010, at *2 (Fed. Cir. 1996) (unpublished) (internal citations omitted).  As a group of foreign producers/exporters and U.S. importers – *i.e.*, respondents – requesting review pursuant to 19 C.F.R. § 351.213(b)(2)-(3), the NB Respondents' circumstances are distinct from those of domestic interested parties requesting review pursuant to 19 C.F.R. § 351.213(b)(1).  Unlike requests by domestic interested parties, respondents' review requests *do* meaningfully put the Department on notice of their concerns.  This distinction has not been previously considered by this Court, but it must be recognized here.[5]

When foreign producers/exporters make a review request in an AD duty proceeding, they make known to the Department their disagreement with their existing dumping margin and interest in obtaining a new dumping margin for their affected exports for the applicable POR. Critically, they also make known their willingness to participate in the review, including through the provision of factual information if and when requested by the Department, or to otherwise be subjected to a dumping margin in that review based on adverse facts available ("AFA").  *See* 19 U.S.C. § 1677e (setting forth the circumstances under which the Department may use "the facts otherwise available" and "{a}dverse {i}nferences" in reaching a determination in an AD/CV

---

[5] As the NB Respondents noted in their Motion to Intervene, they "are not aware of any case in which this Court has denied standing to intervene as plaintiff-intervenors to similarly situated non-selected respondents who filed their own review requests in the underlying administrative review."  ECF No. 69 (Ct. No. 23-00187); ECF No. 72 (Ct. No. 23- 00188) (Mot.) at 8 n.3.  As the remainder of this Reply demonstrates, none of the cases cited by the Government or the COALITION in their oppositions to the NB Respondents' Motion to Intervene involve non-selected respondents that filed their own review requests, so none of those cases support this Court denying the NB Respondents standing to intervene in these actions on the basis of the Review Requests filed by the NB Respondents.

duty proceeding).  In other words, once foreign producers/exporters request a review, they are obligated to participate or face adverse consequences.  No other interested party is in a similar situation by virtue of having submitted their own review request.

When U.S. importers make a review request in an AD duty proceeding, they make known to the Department that they disagree with having their entries of subject merchandise during the POR from specified foreign producers/exporters liquidated at the cash deposit rate paid upon entry, and instead are interested in obtaining a new assessment rate for their affected entries during the POR.  U.S. importers are the only interested parties that have made cash deposits with U.S. Customs and Border Protection ("CBP"), which they stand to lose if they do not request a review.  Consequently, U.S. importers' review requests signal their interest in maintaining suspension of liquidation of their entries pending the final results of the review.  Thus, contrary to the Government's view that the fact that some of the NB Respondents are U.S. importers is "of no moment," ECF No. 81 (Ct. No. 23-00187) (Government's Response), at 3; ECF No. 77 (Ct. No. 23-00188) (Government's Response), at 3, this fact is indeed of great moment.

In sum, irrespective of whether the filing of a review request by itself is sufficient to confer "party to the proceeding" status on other categories of interested parties, in the case of foreign producers/exporters and U.S. importers that file their own review requests, that act *must* be deemed sufficient to confer "party to the proceeding" status, because that act "put{s} Commerce on notice of {their} concerns." *RHI Refractories Liaoning*, 35 C.I.T. at 132. Interpreting "party to the proceeding" in this manner for foreign producers/exporters and U.S. importers such as the NB Respondents does not render that term in 28 U.S.C. § 2631(j)(1)(B)

"practically meaningless," as the COALITION suggests.[6]  To the contrary, interpreting "party to

the proceeding" any other way for foreign producers/exporters and U.S. importers that file their

own review requests leads to inequitable and absurd results, as discussed further below.

Accordingly, because the NB Respondents are foreign producers/exporters and U.S. importers

that filed their own review requests in the underlying AR4 at issue, this Court should find that

the NB Respondents are "part{ies} to the proceeding" within the meaning of 28 U.S.C. §

2631(j)(1)(B) and therefore have standing to intervene as a matter of right in this case.

---

[6] The COALITION writes: "any conclusion that the NB Respondents meet the 'party to the
proceeding' requirement would so weaken that prerequisite 'as to render it practically
meaningless.'"  ECF No. 84 (Ct. No. 23-00187) (COALITION's Response), at 7; ECF No. 78
(Ct. No. 23-00188) (COALITION's Response), at 7, *quoting Nucor Corp. v. United States*, 516
F.Supp.2d 1348, 1353 (Ct. Int'l Trade 2007).  However, the Court in *Nucor* made this statement
in the context of considering standing for a domestic producer that had filed only a notice of
appearance and an application to receive business proprietary information.  The statement by its
own terms does not apply to circumstances where a foreign producer/exporter or U.S. importer
has filed its own review request.  Furthermore, interpreting "party to the proceeding" to include
foreign producers/exporters and U.S. importers that have filed their own review requests does
not render that term in 28 U.S.C. § 2631(j)(1)(B) meaningless by collapsing it with the term
"interested party," as the COALITION appears to suggest.  Rather, such an interpretation still
gives meaning to the requirement in 28 U.S.C. § 2631(j)(1)(B) that a person be both an
"interested party" and a "party to the proceeding" to have standing to intervene.  For example,
there may be thousands of Canadian softwood lumber producers/exporters, out of which only
500 request a review.  The requirement in 28 U.S.C. § 2631(j)(1)(B) for a person to be both an
"interested party" and a "party to the proceeding" to have standing to intervene in a CIT action
challenging the final results of that review means that only the latter 500 could intervene.  If the
"party to the proceeding" requirement in 28 U.S.C. § 2631(j)(1)(B) did not exist, it would mean
that any one of those thousands of Canadian softwood lumber producers/exporters, each of
which is an "interested party," could intervene in a CIT action without ever having filed anything
with the Department in the underlying review.  The "party to the proceeding" requirement in 28
U.S.C. § 2631(j)(1)(B) exists to prevent this outcome, not to prevent foreign producers/exporters
and U.S. importers that have filed their own review requests with the Department from
intervening in a CIT action challenging the final results of that review.

**V.    Fundamental Principles of Statutory Interpretation and Equity Demand that Parties in the NB Respondents' Position Have Standing to Intervene Under 28 U.S.C. § 2631(j)(1)(B)**

Any reading of 28 U.S.C. § 2631(j)(1)(B) that denies standing to non-selected respondents (*i.e.*, foreign producers/exporters and U.S. importers) in the position of the NB Respondents would be manifestly inequitable, lead to absurd results, and raise serious constitutional concerns.  While the NB Respondents' Motion to Intervene already made this clear, including through the hypothetical provided therein, the NB Respondents elaborate further below.

For example, small foreign producers/exporters may submit review requests in an AD proceeding involving hundreds of producers/exporters of the subject merchandise.  In light of the large number of respondents and limitations on agency resources, the Department may limit individual examination—and therefore, the assignment of individual weighted average dumping margins—to the two largest producers/exporters in the review.  *See* 19 U.S.C. § 1677f-1(c)(2).  That is, the Department may unilaterally decide not to individually examine the smaller producers/exporters that submitted a review request.  At that point, unless the Department requests further information from them, those smaller producers/exporters would have <u>no reason</u> to devote resources to submit additional and unnecessary factual material or argumentation to the Department.  Specifically, those companies would have <u>no reason</u> to comment on the company-specific price and cost data that the mandatory respondents submit to assist the Department in calculating their company-specific dumping margins.

In the preliminary results of this hypothetical review, the Department might establish a low, *de minimis*, or even zero percent dumping margin for the non-selected respondents ("the non-selected rate").  In other words, the Department may signal throughout the review that these small, non-selected respondents have no reason to participate further.  However, at the end of

this hypothetical review, the Department might recalculate the non-selected rate such that it is unexpectedly and exorbitantly high. Perhaps in this review, the Department blatantly violates 19 U.S.C. § 1673d(c)(5)(A),[7] and fails to calculate the non-selected rate as "the weighted average of the estimated weighted average dumping margins established for {the individually examined respondents}, excluding any zero and *de minimis* margins," and margins based entirely on AFA. 19 U.S.C. § 1673d(c)(5)(A). Or, perhaps the Department calculates zero percent or *de minimis* dumping margins, or margins based entirely on AFA, for both individually examined respondents in the final results. If this were to occur, the Department could not use these margins to calculate the non-selected rate, and instead could calculate the non-selected rate according to "any reasonable method." 19 U.S.C. § 1673d(c)(5)(B). The Department might then use some method that results in an exorbitantly or unduly high non-selected rate (*e.g.*, one not grounded in any economic reality) applied to non-selected respondents.[8] Indeed, the Department might even use a clearly unreasonable method.

Under the Government's and the COALITION's reading of 28 U.S.C. § 2631(j)(1)(B), the non-selected producers/exporters that requested this hypothetical review would be shut out of the court system and unable to challenge the exorbitantly or unduly high final non-selected rate applied to their exports. Indeed, these producers/exporters would be denied legal recourse to

---

[7] Although 19 U.S.C. § 1673d(c)(5) expressly applies to AD duty investigations, the Department generally applies it in AD duty administrative reviews as well. *See Navneet Publications (India) Ltd. et al. v. United States*, 999 F.Supp.2d 1354, 1358-1359 (Ct. Int'l Trade 2014).

[8] This is precisely what occurred in the underlying review at issue in *Navneet Publications (India) Ltd. et al. v. United States*, Court No. 13-00204, which the NB Respondents cited in their Motion to Intervene. *See* ECF No. 69 (Ct. No. 23-00187); ECF No. 72 (Ct. No. 23- 00188) (Mot.) at 9-10. As noted below, non-selected respondents challenging the unduly high non-selected rate in *Navneet*, even those that had not filed their own review requests, were properly found to have standing to bring suit themselves under 28 U.S.C. § 2631(c).

challenge even a blatant violation of the AD statute by the Department, simply because the Department did not choose them for individual examination and they reacted to that choice in a rational manner by not submitting additional unrequired factual information or written argument beyond their initial review request. Put differently, if the Government's and the COALITION's reading of 28 U.S.C. § 2631(j)(1)(B) were correct, and no non-selected producer/exporter that submitted only a review request to the Department could have standing to litigate the final non-selected rate, then the Department would have free reign in the final results of *every* AD/CV duty administrative review to simply, out of nowhere, assign a 1,000 percent non-selected rate to all such non-selected producers/exporters without any consequence.[9] A reading of 28 U.S.C. § 2631(j)(1)(B) that permits this inequitable and absurd result cannot be sustained. *See United States v. Brown*, 333 U.S. 18, 27 (1948) ("No rule of construction necessitates our acceptance of an interpretation resulting in patently absurd consequences").

Further, a reading of 28 U.S.C. § 2631(j)(1)(B) that denies standing to U.S. importers in the NB Respondents' position raises serious constitutional concerns and therefore must be rejected as well. It is a "cardinal" principle of statutory interpretation that, if "fairly possible" to do so, statutes susceptible to multiple interpretations should be construed so as to avoid

---

[9] In the context of intervention under the Federal Rules of Civil Procedure ("FRCP"), reviewing courts have found it inappropriate to elevate form over substance when considering motions to intervene as of right. For example, in *Kleissler v. U.S. Forest Serv.*, 157 F.3d 964 (3d Cir. 1998), which considered whether the economic interests of municipal governments supported intervention in an environmental suit, the court found that "pragmatism is a substantial factor that must be considered" by courts when assessing motions to intervene as of right under the FRCP. *Id.* at 970. The "central purpos{e}" of 1966 amendments expanding FRCP Rule 24 (which provides the requirements for intervening by right under the FRCP) was to "allow intervention by those who might be practically disadvantaged by the disposition of the action{.}" *Id.* This Court should read 28 U.S.C. § 2631(j)(1)(B) in a similarly pragmatic manner. The NB Respondents may be seriously disadvantaged if these actions move forward without them; therefore, they should be granted the right to intervene.

constitutionally problematic readings. *See Ashwander v. Valley Authority*, 297 U.S. 288, 348 (1935) (Brandeis, concurring) ("When the validity of an act of the Congress is drawn in question, and even if a serious doubt of constitutionality is raised, it is a cardinal principle that this Court will first ascertain whether a construction of the statute is fairly possible by which the question may be avoided.") (*quoting Crowell v. Benson*, 285 U.S. 22, 62 (1932)); *see also Jennings v. Rodriguez*, 583 U.S. 281, 282 (2018).

The Government's and the COALITION's reading of 28 U.S.C. § 2631(j)(1)(B) must be rejected under this principle with respect to U.S. importers. Under that reading, a U.S. importer in the same position as the NB Respondents could not intervene in a challenge to the final results of an administrative review that assigns a clearly erroneous (*e.g.*, 1,000 percent) non-selected rate on their subject entries during the POR. As a result, the U.S. importer could not secure suspension of liquidation for their subject entries *pendente lite*, and these entries would liquidate at the erroneous non-selected rate established by the Department that this Court eventually determines is unsupported by substantial evidence or not in accordance with law. Denying these U.S. importers standing under 28 U.S.C. § 2631(j)(1)(B) thereby risks depriving them of property (*i.e.*, excess cash deposits held by CBP to which they are entitled) without due process of law. For this reason, a reading of 28 U.S.C. § 2631(j)(1)(B) that denies standing to U.S. importers in the same position as the NB Respondents raises serious constitutional concerns. Therefore, the Court should reject such a reading.

## VI.     Precedent Cited By the United States and the COALITION Can and Must Be Distinguished from NB Respondents' Circumstances in this Case

In discussing judicial precedent regarding the "party to the proceeding" requirement under 28 U.S.C. § 2631(j)(1)(B), the Government and the COALITION improperly conflate the factual circumstances in those cases with the NB Respondents' circumstances in the instant case.

In their Responses, the Government and the COALITION each cite *Dongkuk Steel Mill Co., Ltd. v. United States*, *Dofasco Inc. v. United States*, and *Nucor Corp. v. United States*. ECF No. 81 (Ct. No. 23-00187) (Government's Response), at 3-4; ECF No. 84 (Ct. No. 23-00187) (COALITION Response), at 5-7; ECF No. 77 (Ct. No. 23-00188) (Government's Response), at 3-4; ECF No. 78 (Ct. No. 23-00188) (COALITION Response), at 5-7. The COALITION further cites *Legacy Classic Furniture, Inc. v. United States* and *RHI Refractories Liaoning Co. v. United States*. ECF No. 84 (Ct. No. 23-00187) (COALITION Response), at 4-5; ECF No. 78 (Ct. No. 23-00188) (COALITION Response), at 4-5. As explained below, none of these cases address the circumstances faced by the NB Respondents in the instant proceeding.

*Dofasco* and *Nucor* both pertain to the final results of an administrative review of the AD duty order on corrosion-resistant ("CORE") carbon steel flat products from Canada. In the underlying administrative review, the domestic producer Nucor Corporation ("Nucor") had filed an Entry of Appearance ("EOA"), submitted an application requesting disclosure of business proprietary information under the administrative protective order ("APO"), and participated in settlement negotiations with other parties involved in the proceeding. *See Dofasco*, 31 C.I.T. 1592. In *Dofasco*, the Court held that Nucor lacked "party to the proceeding" status, and therefore lacked standing to intervene, in a challenge to the final results of this administrative review. *See id*. In *Nucor*, the Court held that this level of participation in the review at issue was insufficient for Nucor to initiate its own challenge to these same review results. *See Nucor*, 516 F.Supp.2d at 1350-1352.

*Dofasco* and *Nucor* are distinguishable from the present case. Specifically, in both cases, the Court determined that Nucor's engagement in settlement negotiations was not part of its "participation" in the CORE steel administrative review because these activities did not occur

"before the agency itself." *Dofasco*, 31 C.I.T. at 1598; *see also Nucor*, 516 F.Supp.2d at 1352.

Thus, the Court did not consider Nucor's engagement in settlement negotiations when assessing

whether Nucor was a "party to the proceeding" within the meaning of 28 U.S.C. § 2631(j)(1)(B).

*Dofasco*, 31 C.I.T. at 1598; *see also Nucor*, 516 F.Supp.2d at 1352. As a result, Nucor's only

"participation" in the underlying review had been the filing of an EOA and APO application.

Similarly, in *Legacy Classic Furniture* and *RHI Refractories Liaoning*, the proposed

intervenors had only filed EOAs and APO applications in the underlying proceedings before the

Department. *See Legacy Classic Furniture, Inc. v. United States*, 35 C.I.T. 420, 421 (Ct. Int'l

Trade 2011); *see also RHI Refractories Liaoning*, 752 F.Supp.2d at 1379. This Court denied

standing in both cases, holding that submission of an EOA and APO application alone were

insufficient to afford an interested party standing under 28 U.S.C. § 2631(j)(1)(B). *See Legacy*

*Classic Furniture*, 35 C.I.T. at 423; *see also RHI Refractories Liaoning*, 752 F.Supp.2d at

1381.[10]

While the filing of only an EOA and APO application in an underlying administrative

review may be insufficient to confer standing,[11] the NB Respondents did not simply file an EOA

---

[10] In *RHI Refractories Liaoning*, one of the proposed intervenors (Yingkou Bayuwuan Refractories Co., Ltd. ("Yingkou"), a foreign exporter of the subject merchandise) had also filed a request for voluntary respondent treatment in the underlying administrative review. Importantly, however, Yingkou withdrew its voluntary respondent request during the course of the administrative review. *See RHI Refractories Liaoning*, 752 F.Supp.2d at 1380. As a result, Yingkou's only submissions in the underlying administrative review were an EOA and APO application.

[11] Notably, the Court of Appeals for the Federal Circuit, in considering standing under 28 U.S.C. § 2631(j)(1)(B), has found that a fraudulent request for review of an AD duty order cannot satisfy the participation requirement, but implied that a valid request for review would. *See New Mexico Garlic Growers Coal. v. United States*, 953 F.3d 1358, 1372 (Fed. Cir. 2020) (observing that the plaintiff did "initially participate{} in the {administrative review} by requesting that Commerce review" a specific company).

and APO application in the present case. Rather, as explained above, the NB Respondents also filed Review Requests, which included factual information and meaningfully put the Department on notice of their concerns as foreign producers/exporters and U.S. importers. *Dofasco*, *Nucor*, *RHI Refractories Liaoning*, and *Legacy Classic Furniture* do not address the situation of any interested party (much less a respondent party) submitting an EOA, APO application, *and* review request. Therefore, these cases are inapposite to the case at bar.

The Government and the COALITION are correct that the Court in *Dongkuk* denied standing to a proposed intervenor that had filed a review request, EOA, and request to be placed on the service list in the underlying administrative review. *See Dongkuk*, 567 F. Supp. 3d at 1364. However, there are critical differences between the circumstances of *Dongkuk* and the circumstances in the instant case. Critically, the proposed intervenor in *Dongkuk*, SSAB Enterprises LLC, was a *domestic producer* of the subject merchandise. *See id.* at 1361. For the reasons discussed above, denying standing in a challenge to the final results of an administrative review to a domestic producer that only filed a review request, EOA, and request to be placed on the service list does not raise the same equity and due process concerns as does denying such standing to non-selected foreign producers/exporters and U.S. importers that filed their own review requests through which they meaningfully put the Department on notice of their concerns. Because *Dongkuk* concerns a domestic producer's right to intervene under 28 U.S.C. § 2631(j)(1)(B), this case is distinguishable from the circumstances faced by the NB Respondents.

## VII. The Government and the COALITION Ignore Key Points About the Cases Cited By the NB Respondents in Their Motion to Intervene

Finally, the Government and the COALITION do not adequately address the cases cited in the NB Respondents' Motion to Intervene.

In its Response, the COALITION asserts:

> {T}he NB Respondents' citations to other cases where parties were allowed to participate as intervenors despite their limited participation at the agency level fails to demonstrate that the NB Respondents are entitled to intervene as of right in this case …. In one of the cases identified by NB Respondents {*Jinko Solar Co. v. United States*}, the motion to intervene was disposed of by the clerk without submission to the court.

ECF No. 84 (Ct. No. 23-00187) (COALITION's Response), at 7-8; ECF No. 78 (Ct. No. 23-00188) (COALITION's Response), at 7-8.

The COALITION is referencing the fact that the Clerk of the Court granted non-selected respondents' motion to intervene in *Jinko* pursuant to Rule 82(b)(5) of the Rules of this Court. *See* ECF No. 69 (Ct. No. 23-00187); ECF No. 72 (Ct. No. 23- 00188) (Mot.) at Exhibit 2. Rule 82(b)(5) allows the Clerk to grant an order disposing of a "consent motion{} to intervene as of right" without submission of that motion to the Court. Rule 82(b)(5). Contrary to the COALITION's suggestion, the fact that the Clerk disposed of certain non-selected respondents' motion to intervene in *Jinko* under Rule 82(b)(5) *supports* the NB Respondents' position that these parties had standing to intervene under 28 U.S.C. § 2631(j)(1)(B). As Rule 82(b)(5) makes clear, the Clerk could only have disposed of the *Jinko* intervenors' motion without submission to the Court if all parties to the *Jinko* proceedings consented to their intervention. Rather than support the Government and the COALITION's position, the example from *Jinko* only emphasizes that the Government and other parties have recognized the standing of non-selected respondents in the NB Respondents' position in past challenges before this Court.

Moreover, neither the Government nor the COALITION addresses the example from *Navneet Publications (India) Ltd. et al. v. United States*, Court No. 13-00204, cited by the NB Respondents. As the NB Respondents explained in their Motion to Intervene, in *Navneet*, non-selected respondents that did not even file a review request had standing to challenge the

Department's application of an erroneous non-selected rate in an administrative review of the AD duty order on certain lined paper products from India. *See* ECF No. 69 (Ct. No. 23-00187); ECF No. 72 (Ct. No. 23- 00188) (Mot.) at 9-10. Indeed, the Government did not oppose these parties' standing. *See id.* Now, the Government asserts that its "litigation position" of consenting to certain parties' standing in past actions "does not equate to agency practice that warrants deference." ECF No. 81 (Ct. No. 23-00187) (Government's Response), at 4; ECF No. 77 (Ct. No. 23-00188) (Government's Response), at 4. While the Government's "litigation positions" may not be entitled to *Chevron* deference, *see Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 213 (1988), this Court has unfettered discretion to disagree with the Government as to the NB Respondents' standing in the instant case. Moreover, because this Court has granted standing in prior cases to similarly-situated non-selected respondents, past practice supports a grant of standing to the NB Respondents in the case at bar. For the various reasons expressed above, the only fair course of action in this case is for this Court to recognize the NB Respondents' standing to intervene under 28 U.S.C. § 2631(j)(1)(B).

\* \* \*

The NB Respondents have complied with Rule 5 of the Rules of this Court by serving this Reply upon the parties to this proceeding electronically via the Court's CM/ECF system.

**WHEREFORE**, Chaleur Forest Products Inc., Chaleur Forest Products L.P., Delco Forest Products Ltd., Devon Lumber Co. Ltd., H.J. Crabbe & Sons Ltd., J.D. Irving, Limited, Langevin Forest Products Inc., Marwood Ltd., North American Forest Products Ltd., and Twin Rivers Paper Co. Inc., respectfully request that this Court grant their motion to intervene as a matter of right as Plaintiff-Intervenors in the above-captioned actions.

Respectfully submitted,

/s/ Rajib Pal
Rajib Pal

Sidley Austin LLP
1501 K Street, N.W.
Washington, DC 20005
(202) 736-8329
rpal@sidley.com

*Counsel to Delco Forest Products Ltd., Devon Lumber Co. Ltd., H.J. Crabbe & Sons Ltd., Langevin Forest Products Inc., Marwood Ltd., North American Forest Products Ltd., and Twin Rivers Paper Co. Inc.*

/s/ Jay C. Campbell
Jay C. Campbell
Walter J. Spak
Allison Kepkay

White & Case LLP
701 13th Street, N.W.
Washington, DC 20005
(202) 626-3632
jcampbell@whitecase.com

*Counsel to J.D. Irving, Limited*


/s/ Diana Dimitriuc-Quaia
Diana Dimitriuc-Quaia
Mario A. Torrico
Matthew M. Nolan

ArentFox Schiff LLP
1717 K Street, N.W.
Washington, DC 20006
(202) 857-6291
diana.dimitriuc-quaia@afslaw.com

*Counsel to Chaleur Forest Products Inc. and
Chaleur Forest Products L.P.*

December 5, 2023