**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: THE HONORABLE JENNIFER CHOE-GROVES, JUDGE**

| |
|---|
| **GOVERNMENT OF CANADA, et al.,**<br><br>       **Plaintiffs,**<br><br>  **v.**<br><br>**UNITED STATES,**<br><br>       **Defendant,**<br><br>  **and**<br><br>**COMMITTEE OVERSEEING ACTION FOR LUMBER INTERNATIONAL TRADE INVESTIGATIONS OR NEGOTIATIONS, et al.,**<br><br>       **Defendant-Intervenors.** |

**Consol. Court No. 23-00187**

**<u>Non-Confidential Version</u>**

**THE COMMITTEE OVERSEEING ACTION FOR LUMBER INTERNATIONAL TRADE INVESTIGATIONS OR NEGOTIATIONS AND SIERRA PACIFIC INDUSTRIES' JOINT RULE 56.2 MOTION FOR JUDGMENT ON THE AGENCY RECORD**

Pursuant to Rule 56.2 of the Rules of the U.S. Court of International Trade, consolidated plaintiffs, the Committee Overseeing Action for Lumber International Trade Investigations or Negotiations ("COALITION") and Sierra Pacific Industries, including its subsidiary Seneca Sawmill Company (together with the COALITION, the "Domestic Industry"), respectfully move for judgment on the administrative record. For the reasons set forth in the accompanying memorandum in support of this motion, the Domestic Industry requests that the Court hold that the U.S. Department of Commerce's ("Commerce") final determination in the antidumping duty administrative review published in the *Federal Register* as *Certain Softwood Lumber Products from Canada: Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2021*, 88 Fed. Reg. 50,106 (Dep't Commerce Aug. 1, 2023)

Consol. Court No. 23-00187

("*Final Results*"), *as amended by Certain Softwood Lumber Products From Canada: Amended Final Results of Antidumping Duty Administrative Review in Part; 2021*, 88 Fed. Reg. 61,511 (Dep't Commerce Sept. 7, 2023), is not supported by substantial evidence on the record and is otherwise not in accordance with law in the following respects: (i) Commerce's decision not to deduct countervailing duty costs from the price used to establish the export price or constructed export price of the subject merchandise violates the plain language of 19 U.S.C. § 1677a(c)(2)(A); and (ii) Commerce's decision not to calculate Canfor Corporation's general and administrative expense ratio using the costs and expenses of Canadian Forest Products Ltd. was unreasonable and departed from with the agency's established practice without explanation.

WHEREFORE, the Domestic Industry respectfully requests that this Court grant this motion and (1) hold that the *Final Results* are unsupported by substantial evidence and otherwise not in accordance with law as argued in the Domestic Industry's brief accompanying this motion; (2) remand to Commerce with instructions to correct the errors identified by the Court; and (3) for such other and further relief that the Court deems just and proper.

A proposed order is enclosed.

<table>
<tr><td></td><td>Respectfully submitted,</td></tr>
<tr><td>David J. Ross<br>Jeffrey I. Kessler<br>Stephanie E. Hartmann</td><td>Andrew W. Kentz<br>Zachary J. Walker</td></tr>
<tr><td>**WILMER CUTLER PICKERING HALE and DORR LLP**<br>2100 Pennsylvania Avenue NW<br>Washington, DC 20037<br>(202) 663-6000</td><td>**PICARD KENTZ & ROWE LLP**<br>1750 K Street NW<br>Suite 800<br>Washington, DC 20006<br>(202) 888-0595</td></tr>
<tr><td>*Counsel to Sierra Pacific Industries, including its subsidiary Seneca Sawmill Company*</td><td>*Counsel to the COALITION*</td></tr>
</table>

Dated: April 5, 2024

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: THE HONORABLE JENNIFER CHOE-GROVES, JUDGE**

<table>
<tr><td>

**GOVERNMENT OF CANADA, et al.,**

       **Plaintiffs,**

    **v.**

**UNITED STATES,**

       **Defendant,**

   **and**

**COMMITTEE OVERSEEING ACTION FOR LUMBER INTERNATIONAL TRADE INVESTIGATIONS OR NEGOTIATIONS, et al.,**

      **Defendant-Intervenors.**

</td><td>

**Consol. Court No. 23-00187**

</td></tr>
</table>

<u>**PROPOSED ORDER**</u>

Upon consideration of the motion of plaintiffs, the Committee Overseeing Action for Lumber International Trade Investigations or Negotiations ("COALITION") and Sierra Pacific Industries, including its subsidiary Seneca Sawmill (together with the COALITION, the "Domestic Industry"), for judgment on the agency record pursuant to Rule 56.2 of the Rules of U.S. Court of International Trade, and all other papers and proceedings had herein, it is hereby

**ORDERED** that the Domestic Industry's Rule 56.2 Motion for Judgment on the Agency Record is granted; it is further

**ORDERED** that Commerce's determination not to deduct countervailing duty costs from the price used to establish the export price or constructed export price of the subject merchandise is remanded for further consideration consistent with this opinion; it is further

**ORDERED** that Commerce's determination not to calculate Canfor Corporation's general and administrative expense ratio using the costs and expenses of Canadian Forest Products Ltd. is remanded for further consideration consistent with this opinion.

**SO ORDERED.**

_____
The Honorable Jennifer Choe-Groves, Judge

Dated: _____
     New York, New York

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: THE HONORABLE JENNIFER CHOE-GROVES, JUDGE**

| | |
|---|---|
| **GOVERNMENT OF CANADA, et al.,** | |
| **Plaintiffs,** | |
| **v.** | |
| **UNITED STATES,** | **Consol. Court No. 23-00187** |
| **Defendant,** | <u>**Non-Confidential Version**</u> |
| **and** | **Business Proprietary Information Deleted from Pages 18-19** |
| **COMMITTEE OVERSEEING ACTION FOR LUMBER INTERNATIONAL TRADE INVESTIGATIONS OR NEGOTIATIONS, et al.,** | |
| **Defendant-Intervenors.** | |

**THE COMMITTEE OVERSEEING ACTION FOR LUMBER INTERNATIONAL TRADE INVESTIGATIONS OR NEGOTIATIONS AND SIERRA PACIFIC INDUSTRIES' MEMORANDUM IN SUPPORT OF RULE 56.2 MOTION FOR JUDGMENT ON THE AGENCY RECORD**

David J. Ross
Jeffrey I. Kessler
Stephanie E. Hartmann

**WILMER CUTLER PICKERING HALE and DORR LLP**
2100 Pennsylvania Avenue NW
Washington, DC 20037
(202) 663-6000

*Counsel to Sierra Pacific Industries, including its subsidiary Seneca Sawmill Company*

Andrew W. Kentz
Zachary J. Walker

**PICARD KENTZ & ROWE LLP**
1750 K Street NW
Suite 800
Washington, DC 20006
(202) 888-0595

*Counsel to the COALITION*

April 5, 2024

**Consol. Court No. 23-00187**                          **NON-CONFIDENTIAL VERSION**

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ........................................................................................ ii

INTRODUCTION ................................................................................................... 1

STATEMENT PURSUANT TO RULE 56.2(c) .......................................................... 1

      A.    The Administrative Determination Under Review ........................... 1

      B.    Issues Presented for Review and Summary of Arguments ................ 2

STATEMENT OF FACTS ....................................................................................... 3

STANDARD OF REVIEW ...................................................................................... 6

ARGUMENT ........................................................................................................ 7

    I.    Commerce Acted Unlawfully by Failing to Make All Required Adjustments to the Price Used to Establish EP and CEP ................................................. 7

      A.    Commerce is Required to Make Adjustments to the Price Used to Establish EP and CEP ...................................................... 8

      B.    CVDs are Costs Included in the Price Used to Establish EP and CEP and are Incident to Bringing the Subject Merchandise from Canada to the United States ........................... 10

    II.    Commerce's Reliance on Canfor's Reported G&A Expense Ratio was Unreasonable .............................................................................. 15

CONCLUSION ..................................................................................................... 21

NON-CONFIDENTIAL VERSION

## TABLE OF AUTHORITIES

### Cases

*AK Steel Corp. v. United States*,
    988 F. Supp. 594 (Ct. Int'l Trade 1997) ................................................................. 12-13

*Borusan Mannesmann Boru Sanayi ve Ticaret A.S. v. United States*,
    494 F. Supp. 3d 1365 (Ct. Int'l Trade 2021) ......................................................... 15

*Borusan Mannesmann Boru Sanayi ve Ticaret A.S. v. United States*,
    63 F.4th 25 (Fed. Cir. 2023) ............................................................................ 8-9, 12

*Ceramica Regiomontana, S.A. v. United States*,
    636 F. Supp. 961 (Ct. Int'l Trade 1986) ................................................................. 7

*Chevron, U.S.A., Inc. v. NRDC, Inc.*,
    467 U.S. 837 (1984) ...................................................................................... 7, 13-14

*Consol. Edison Co. v. NLRB*,
    305 U.S. 197 (1938) ............................................................................................ 6

*CS Wind Vietnam Co. v. United States*,
    832 F.3d 1367 (Fed. Cir. 2016) ..................................................................... 7, 13-14

*Downhole Pipe & Equipment, L.P. v. United States*,
    776 F.3d 1369 (Fed. Cir. 2015) ............................................................................ 6

*Gazelle v. Shulkin*,
    868 F.3d 1006 (Fed. Cir. 2017) ...........................................................................11

*Gerald Metals, Inc. v. United States*,
    132 F.3d 716 (Fed. Cir. 1997) .............................................................................. 7

*Kisor v. Wilkie*,
    139 S. Ct. 2400 (2019) ...................................................................................... 13

*Louis Dreyfus Citrus Inc. v. United States*,
    495 F. Supp. 2d 1338 (Ct. Int'l Trade 2007) ......................................................... 14

*Prosperity Tieh Enterprise Co. v. United States*,
    965 F.3d 1320 (Fed. Cir. 2020) ............................................................................ 6

*SAS Institute, Inc. v. Iancu*,
    138 S. Ct. 1348 (2018) ...................................................................................... 14

*Shanxi Hairui Trade Co. v. United States*,
    39 F.4th 1357 (Fed. Cir. 2022) ............................................................................ 7

Consol. Court No. 23-00187                          NON-CONFIDENTIAL VERSION

*SKF USA, Inc. v. United States*,
    263 F.3d 1369 (Fed. Cir. 2001) ............................................................... 13

*Smith-Corona Group v. United States*,
    713 F.2d 1569 (Fed. Cir. 1983) ........................................................... 9, 15

*Torrington Co. v. United States*,
    68 F.3d 1347 (Fed. Cir. 1995) ................................................................. 9

*U.S. Steel Group v. United States*,
    15 F. Supp. 2d 892 (Ct. Int'l Trade 1998) ............................................. 12

*Usinor Sacilor v. United States*,
    955 F. Supp. 1481 (Ct. Int'l Trade 1997) ................................................ 7

*Valent v. Comm'r of Soc. Sec.*,
    918 F.3d 516 (6th Cir. 2019) ................................................................. 13

*Voices for Int'l Business and Educ., Inc. v. NLRB*,
    905 F.3d 770 (5th Cir. 2018) ................................................................. 13

**Statutes**

19 U.S.C. § 1516a ......................................................................................... 6

19 U.S.C. § 1671h ....................................................................................... 10

19 U.S.C. § 1677a ................................................................................ *passim*

19 U.S.C. § 1677b .................................................................................. 8, 16

**Regulations**

19 C.F.R. § 351.213 ...................................................................................... 3

19 C.F.R. § 351.309 ...................................................................................... 5

**Administrative Determinations**

*Antidumping or Countervailing Duty Order, Finding, or Suspended Investigation;
    Opportunity To Request Administrative Review and Join Annual Inquiry Service List*,
    87 Fed. Reg. 1396 (Dep't Commerce Jan. 11, 2022) ................................. 3

*Certain Crystalline Silicon Photovoltaic Products From Taiwan: Final Results of
    Antidumping Duty Administrative Review; 2014-2016*, 82 Fed. Reg. 31,555
    (Dep't Commerce July 7, 2017) ......................................................... 16, 18

Case 1:23-cv-00187-JCG    Document 110    Filed 04/05/24    Page 9 of 31

Consol. Court No. 23-00187                    NON-CONFIDENTIAL VERSION

*Certain Softwood Lumber Products From Canada: Amended Final Results of Antidumping Duty Administrative Review in Part; 2021*, 88 Fed. Reg. 61,511 (Dep't Commerce Sept. 7, 2023) ................................................................................................ 2, 6

*Certain Softwood Lumber Products From Canada: Antidumping Duty Order and Partial Amended Final Determination*, 83 Fed. Reg. 350 (Dep't Commerce Jan. 3, 2018)................ 1

*Certain Softwood Lumber Products From Canada: Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2021*, 88 Fed. Reg. 50,106 (Dep't Commerce Aug. 1, 2023) ................................................................ *passim*

*Certain Softwood Lumber Products From Canada: Preliminary Results of Antidumping Duty Administrative Review*, 88 Fed. Reg. 5,306 (Dep't Commerce Jan. 27, 2023).......... 4, 15

*Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 87 Fed. Reg. 13,252 (Dep't Commerce Mar. 9, 2022) ........................................................................ 3

*Notice of Final Determination of Sales at Less Than Fair Value: Certain Softwood Lumber Products From Canada*, 67 Fed. Reg. 15,539 (Dep't Commerce Apr. 2, 2002) ................... 16

*Notice of Final Determination of Sales at Less Than Fair Value: Fresh Atlantic Salmon From Chile*, 63 Fed. Reg. 31,411 (Dep't Commerce June 9, 1998) ...................................... 16

*Notice of Final Results of Antidumping Duty Administrative Review: Low Enriched Uranium From France*, 69 Fed. Reg. 46,501 (Dep't Commerce Aug. 3, 2004)...................................11

*Silicomanganese From India: Notice of Final Determination of Sales at Less Than Fair Value and Final Negative Critical Circumstances Determination*, 67 Fed. Reg. 15,531 (Dep't Commerce Apr. 2, 2002)................................................................................................ 20

## INTRODUCTION

On behalf of the Committee Overseeing Action for Lumber International Trade Investigations or Negotiations ("COALITION") and Sierra Pacific Industries ("SPI") (collectively, the "Domestic Industry"), we submit this brief in support of the Domestic Industry's motion for judgment on the agency record. As set forth below, the Domestic Industry challenges two determinations made by the U.S. Department of Commerce ("Commerce") in the final results of the agency's fourth administrative review of the antidumping duty order on certain softwood lumber products from Canada. In the administrative decision under review, Commerce recognized that Canadian producers and exporters made sales of subject merchandise at less than normal value during the period of review ("POR"). In certain areas, however, Commerce failed to capture the full extent of the respondents' dumping. These findings are unlawful and require remand, as further discussed below.

## STATEMENT PURSUANT TO RULE 56.2(c)

A.    <u>The Administrative Determination Under Review</u>

The Domestic Industry challenges certain aspects of the final results of Commerce's fourth administrative review of the antidumping duty order on certain softwood lumber products from Canada.[1] The challenged determination was published in the *Federal Register* on August 1, 2023 as *Certain Softwood Lumber Products From Canada: Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2021*, 88 Fed. Reg. 50,106 (Dep't Commerce Aug. 1, 2023) ("*Final Results*"), P.R. 611, *as amended by Certain Softwood*

---

[1]  The antidumping duty order on certain softwood lumber products from Canada was issued by Commerce in 2018. *See Certain Softwood Lumber Products From Canada: Antidumping Duty Order and Partial Amended Final Determination*, 83 Fed. Reg. 350 (Dep't Commerce Jan. 3, 2018).

1

Consol. Court No. 23-00187                            NON-CONFIDENTIAL VERSION

*Lumber Products From Canada: Amended Final Results of Antidumping Duty Administrative Review in Part; 2021*, 88 Fed. Reg. 61,511 (Dep't Commerce Sept. 7, 2023) ("*Amended Final Results*") (correcting a ministerial error made in the calculation of West Fraser Mills Ltd.'s ("West Fraser") general and administrative ("G&A") expense ratio), P.R. 597.[2]  The determinations, findings, and conclusions challenged in this appeal are set out primarily in the "Issues and Decision Memorandum" accompanying the final results.  *See* Commerce Memorandum, "Issues and Decision Memorandum for the Final Results of the 2021 Administrative Review of the Antidumping Duty Order on Certain Softwood Lumber Products from Canada" (July 26, 2023) ("IDM"), P.R. 585.

B.    Issues Presented for Review and Summary of Arguments

The Domestic Industry seeks judgment on the agency record with respect to the following two issues:

1)    Whether Commerce's determination not to deduct countervailing duty ("CVD") costs from the price used to establish the export price ("EP") or constructed export price ("CEP") of the subject merchandise was supported by substantial evidence and otherwise in accordance with law when such costs are "included in" the price used to establish EP or CEP and are incident to bringing the subject merchandise from the original place of shipment in Canada to the place of delivery in the United States.

---

[2]  Documents on the administrative record are referred to within this brief by the document number assigned in the administrative record index filed by Commerce with the Court on November 15, 2023.  *See* ECF 76.  Citations in this brief to public documents (or public versions of business proprietary documents) are identified with the rubric "P.R." followed by the relevant document number from the public record index.  *See* ECF 76-3.  Similarly, citations to business proprietary documents are identified with the rubric "C.R." followed by the relevant document number from the confidential record index.  *See* ECF 76-2.

2)      Whether Commerce's decision to calculate Canfor Corporation's ("Canfor")

G&A expense ratio using financial statements other than those of Canadian Forest Products Ltd.

("CFP"), the producer of the foreign like product, was supported by substantial evidence and

otherwise in accordance with law.

## STATEMENT OF FACTS

Commerce published a notice of opportunity to request administrative review of the

antidumping duty order on certain softwood lumber products from Canada in the *Federal

Register* during the January anniversary month of the order.  *See Antidumping or Countervailing

Duty Order, Finding, or Suspended Investigation; Opportunity To Request Administrative

Review and Join Annual Inquiry Service List*, 87 Fed. Reg. 1396 (Dep't Commerce Jan. 11,

2022), P.R. 506.  During that month, interested parties were able to submit requests asking that

Commerce conduct an administrative review of the order.[3]  *Id.* at 1397.  Based on requests

received, Commerce initiated its fourth administrative review of the antidumping duty order on

March 9, 2022.  *See Initiation of Antidumping and Countervailing Duty Administrative Reviews*,

87 Fed. Reg. 13,252 (Dep't Commerce Mar. 9, 2022), P.R. 507.  Commerce's review applied to

entries made from January 1, 2021 through December 31, 2021.  *Id.* at 13,254.

Following initiation, Commerce selected Canfor and West Fraser for individual

examination as "mandatory respondents" based on their status as the largest exporters or

producers of the subject merchandise by value.  Commerce Memorandum, "Respondent

Selection" (Apr. 29, 2022), C.R. 7, P.R. 279.  Commerce then issued questionnaires to these

companies to determine the extent to which subject merchandise was being sold at less than fair

---

[3]  Interested parties may request that Commerce conduct an administrative review "during the anniversary month of the publication of an antidumping or countervailing duty order."  19 C.F.R. § 351.213(b)(1).

value during the twelve-month POR.  *See, e.g.*, Letter from Commerce to Morris, Manning &

Martin, LLP, "Initial Questionnaire" (Apr. 29, 2022), P.R. 281.

Over the next several months, Canfor and West Fraser submitted responses to

Commerce's initial and supplemental questionnaires, providing the agency with information on

the respondents' organization, sales, and costs.[4]

Commerce published the preliminary results of its administrative review on January 27,

2023, calculating weighted-average dumping margins of 5.25 percent and 6.90 percent for

Canfor and West Fraser, respectively.  *Certain Softwood Lumber Products From Canada:*

*Preliminary Results of Antidumping Duty Administrative Review*, 88 Fed. Reg. 5,306 (Dep't

Commerce Jan. 27, 2023) ("*Preliminary Results*"), P.R. 526; *see also* Commerce Memorandum,

"Decision Memorandum for Preliminary Results of the 2021 Antidumping Duty Administrative

Review of Certain Softwood Lumber Products from Canada" (Jan. 23, 2023) ("PDM"), P.R. 518.

To assess the extent to which companies under review made sales at less than fair value,

Commerce, in the preliminary results, made a comparison between the EP or CEP of the subject

merchandise and its normal value.  *See* PDM at 7-12, P.R. 518.  Commerce's preliminary

decision made various adjustments to the starting prices used to determine EP and CEP

consistent with section 772(c) of the Tariff Act of 1930, as amended (the "Act").  *See id.*

at 11-12 ("We made . . . deductions from the starting price {for EP}, where applicable, for

rebates and discounts, futures contracts gains or losses, and for movement expenses, *i.e.*, inland

freight, fuel surcharges, brokerage and handling, and warehousing.").  In calculating Canfor's

---

[4]  Section A of Commerce's questionnaire collects general information on the company.
Meanwhile, sections B and C of the questionnaire solicit information on the respondent's sales in
the comparison market and to the United States, respectively.  Finally, section D collects
information on the producer's cost of production.

total cost of production ("COP") in the preliminary results, Commerce relied on the G&A

expense ratio calculated and reported by the respondent. *See id.* at 15.

Following the preliminary results, the COALITION and other interested parties

submitted case briefs presenting written argument relevant to Commerce's final results. *See*

19 C.F.R. § 351.309. The COALITION's case brief argued, in part, that section 772(c)(2)(A) of

the Act required Commerce to deduct CVD costs from the prices used to establish EP and CEP.

*See* Letter from Picard Kentz & Rowe LLP to Commerce, "Case Brief" (Feb. 27, 2023)

("COALITION Case Brief"), at 26-31, C.R. 489, P.R. 546. Specifically, the COALITION

argued that CVDs are costs that are both "incident to bringing the subject merchandise from the

original place of shipment in the exporting country to the place of delivery in the United States,"

and "included in" the "price used to establish {EP} and {CEP}." *Id.* at 28 (citing 19 U.S.C.

§ 1677a(c)). The COALITION's case brief further argued that Commerce's preliminary

decision to rely on the G&A expense ratio calculated by Canfor was unreasonable and contrary

to the agency's practice of calculating G&A expenses based on the producing company. *Id.*

at 4-7. The COALITION claimed that Commerce should instead rely on a G&A expense ratio

calculated using the financial information of CFP, the entity producing softwood lumber in

Canada. *Id.*

Commerce published the final results of its administrative review in the *Federal Register*

on August 1, 2023. *See Final Results*, 88 Fed. Reg. at 50,106, P.R. 611. In the final results,

Commerce rejected the COALITION's argument regarding whether section 772 of the Act

requires the agency to adjust U.S. price to account for CVD costs incurred by respondents

bringing subject merchandise into the United States. *See* IDM at Comment 8, pp. 44-46,

P.R. 585. The agency reasoned in its decision memorandum that it "has never deducted CVDs

from U.S. price in an AD proceeding," and that "{t}he plain language of section 772(c)(2)(A)
does not include CVDs or CVD deposits." *Id.* at 46. Commerce also rejected the
COALITION's argument concerning calculation of Canfor's G&A expense ratio, continuing to
rely on a ratio based on the 'CFP Legal' entity. *Id.* at Comment 15, pp. 59-60.

 The final results of Commerce's administrative review calculated weighted-average
dumping margins of 5.25 percent and 6.96 percent for Canfor and West Fraser, respectively. *See
Final Results*, 88 Fed. Reg. at 50,107, P.R. 611. These individual margins were used by
Commerce to calculate the rate assigned to the non-selected companies under review. *Id.*
Thereafter, based on a ministerial error alleged by the COALITION, *see* Letter from Picard
Kentz & Rowe LLP to Commerce, "Ministerial Error Comments" (Aug. 2, 2023), C.R. 521,
P.R. 591, Commerce revised its calculation of West Fraser's weighted-average dumping margin,
as well as the margin assigned to the non-selected companies under review. *See Amended Final
Results*, 88 Fed. Reg. at 61,511, P.R. 597.

**STANDARD OF REVIEW**

 In reviewing Commerce's determinations in administrative reviews of antidumping duty
orders, the Court will "hold unlawful any determination, finding, or conclusion found . . . to be
unsupported by substantial evidence on the record, or otherwise not in accordance with law."
19 U.S.C. § 1516a(b)(1)(B). Substantial evidence means such evidence that "a reasonable mind
might accept as adequate to support a conclusion." *Prosperity Tieh Enterprise Co. v. United
States*, 965 F.3d 1320, 1326 (Fed. Cir. 2020) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S.
197, 229 (1938)). Substantial evidence is defined as "more than a mere scintilla," *Downhole
Pipe & Equipment, L.P. v. United States*, 776 F.3d 1369, 1374 (Fed. Cir. 2015) (citation omitted),
and requires that the agency take into account "whatever in the record fairly detracts" from the
weight of supportive evidence. *CS Wind Vietnam Co. v. United States*, 832 F.3d 1367, 1373

Case 1:23-cv-00187-JCG    Document 110    Filed 04/05/24    Page 16 of 31

Consol. Court No. 23-00187                                NON-CONFIDENTIAL VERSION

(Fed. Cir. 2016) (quoting *Gerald Metals, Inc. v. United States*, 132 F.3d 716, 720 (Fed. Cir. 1997)).

The Court analyzes Commerce's interpretation and application of a statute applying the two-step analysis set forth in *Chevron*. *Shanxi Hairui Trade Co. v. United States*, 39 F.4th 1357, 1360 (Fed. Cir. 2022) (citing *Chevron, U.S.A., Inc. v. NRDC, Inc.*, 467 U.S. 837 (1984)).  At *Chevron* step one, the Court determines "whether Congress has directly spoken to the precise question at issue." *Chevron*, 467 U.S. at 842.  "If the intent of Congress is clear," the Court, as well as the agency, must give effect to that intent.  *Id.* at 842-43.  "If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute." *Id*. at 843.  Instead, under step two of the *Chevron* framework, the court considers the question of "whether the agency's answer is based on permissible constriction of the statute." *Id*.  "However, the Court will not uphold an agency's interpretation which 'contravene{s} or ignore{s} the intent of the legislature or the guiding purpose of the statute.'" *Usinor Sacilor v. United States*, 955 F. Supp. 1481, 1484 (Ct. Int'l Trade 1997) (quoting *Ceramica Regiomontana, S.A. v. United States*, 636 F. Supp. 961, 966 (Ct. Int'l Trade 1986)).

**ARGUMENT**

**I.    Commerce Acted Unlawfully by Failing to Make All Required Adjustments to the Price Used to Establish EP and CEP**

In the final results, Commerce refused to account for CVD costs included in the price used to establish EP and CEP.  *See* IDM at 46, P.R. 585.  This decision was inconsistent with the plain language of the statute that directs Commerce to reduce the price used to establish EP and CEP by the amount of "any additional costs, charges, or expenses, and United States import duties, which are incident to bringing the subject merchandise from the original place of

Consol. Court No. 23-00187                    NON-CONFIDENTIAL VERSION

shipment in the exporting country to the place of delivery in the United States." 19 U.S.C.

§ 1677a(c)(2)(A). The COALITION's case brief cited record evidence demonstrating that CVDs

are, in fact, costs incident to bringing softwood lumber from Canada to the United States. *See*

COALITION Case Brief at 29-31, C.R. 489, P.R. 546. But Commerce's determination failed to

engage with this evidence and offered internally inconsistent justifications for its decision.

Accordingly, as detailed below, the agency's determination is unlawful and requires remand.

A.    Commerce is Required to Make Adjustments to the Price Used to Establish EP and CEP

In determining whether merchandise is being sold at less than fair value, Commerce is

directed to make "a fair comparison . . . between the export price or constructed export price and

normal value." 19 U.S.C. § 1677b. Generally, the normal value is determined using the price at

which the foreign like product is first sold for consumption in the exporting country in the usual

course of trade. *See id.* § 1677b(a)(1)(B). Meanwhile, the export price means:

> {T}he price at which the subject merchandise is first sold (or agreed to be sold)
> before the date of importation by the producer or exporter of the subject
> merchandise outside of the United States to an unaffiliated purchaser in the United
> States or to an unaffiliated purchaser for exportation to the United States, as
> adjusted under subsection (c).

*Id*. § 1677a(a). Where the sale to an unaffiliated purchaser is made by a seller that is affiliated

with the foreign producer, or otherwise occurs after importation into the United States,

Commerce will instead establish a CEP. *Id*. § 1677a(b).

Commerce is directed by the Act to make certain adjustments to the price at which the

merchandise is sold in both the comparison market and the United States. *See* 19 U.S.C.

§§ 1677a(c), 1677b(a)(6). These adjustments are necessary to ensure that the values "produce an

'apples with apples' comparison between the price at which the merchandise is sold in the U.S.

and the price at which it is sold in the home country." *Borusan Mannesmann Boru Sanayi ve*

*Ticaret A.S. v. United States*, 63 F.4th 25, 28 (Fed. Cir. 2023) (citations omitted).  Relevant here, section 772(c) of the Act provides for adjustments to the price used to establish EP and CEP:

> The price used to establish export price and constructed export price shall be—
>
> * * *
>
> (2) reduced by—
>
>> (A) . . . the amount, if any, included in such price, attributable to any additional costs, charges, or expenses, and United States import duties, which are incident to bringing the subject merchandise from the original place of shipment in the exporting country to the place of delivery in the United States.

19 U.S.C. § 1677a(c).  Therefore, the language of the statute requires that Commerce deduct "any additional costs, charges, or expenses, and United States import duties," if they are (1) "incident to bringing the subject merchandise from the original place of shipment in the exporting country to the place of delivery in the United States," and (2) "included in" the "price used to establish {EP} and {CEP}."  *Id*.

The Federal Circuit has detailed the rationale for the use of adjustments in establishing EP and CEP, as well as normal value, explaining that:

> In general, the antidumping statutes seek to produce a fair, "apples-to-apples" comparison between foreign market value and United States price; to achieve that end, the statutes and Commerce Department regulations call for adjustments to the base value of both foreign market value and United States price to permit comparison of the two prices at a similar point in the chain of commerce.

*Torrington Co. v. United States*, 68 F.3d 1347, 1352 (Fed. Cir. 1995) (citations omitted); *see also Smith-Corona Group v. United States*, 713 F.2d 1569, 1578 (Fed. Cir. 1983) (explaining that price adjustments are necessary to achieve a fair price-to-price comparison).  Thus, after establishing the starting price for EP and CEP, Commerce removes from this price all costs that do not relate to the payment for the subject merchandise so that it arrives at a price that permits an "apples-to-apples" comparison to normal value.

B.    <u>CVDs are Costs Included in the Price Used to Establish EP and CEP and are Incident to Bringing the Subject Merchandise from Canada to the United States</u>

Both respondents individually examined by Commerce in this review act as the importer of record for certain sales of subject merchandise. *See* Letter from Morris, Manning & Martin, LLP to Commerce, "Canfor's Sections B-D Initial Questionnaire Response" (June 21, 2022) ("Canfor Sections B-D Initial Response"), at C-70 (reporting that "Canfor is the importer of record for all sales of subject merchandise during the POR"), C.R. 182, P.R. 320; Letter from Gibson, Dunn & Crutcher LLP to Commerce, "Response to April 29, 2022 Section A Initial Antidumping Duty Questionnaire" (May 20, 2022), at A-35 (explaining that, for "direct sales" to customers in the United States, "West Fraser imports the lumber and pays any U.S. customs duties and fees, including antidumping and countervailing duties"), C.R. 20, P.R. 289.  Because these respondents act as the importer of record, they are responsible for the payment of various costs, charges, and duties, including CVDs, related to bringing the subject merchandise from the original place of shipment in Canada to the place of delivery in the United States.  Indeed, should Canfor or West Fraser not pay the necessary CVD costs, the merchandise would be barred from entry into the United States.  *See* 19 U.S.C. § 1671h(a) (stating that "no customs officer may deliver merchandise of that class or kind to the person by whom or for whose account it was imported <u>unless that person . . . deposits with the appropriate customs officer an estimated countervailing duty</u> in an amount determined by the administering authority") (emphasis added). In this case, because CVDs are included in the price used to establish EP and CEP, and because Canfor and West Fraser are required to pay these duties to enter their merchandise, CVDs constitute a cost incident to the sale and delivery of softwood lumber into the United States.

In refusing to adjust EP and CEP to account for CVD costs, Commerce explained that "deducting CVDs from U.S. prices in AD cases would be inconsistent with the context and logic

**NON-CONFIDENTIAL VERSION**

of the statute and its legislative history and result in a 'double remedy.'" IDM at 46 (citing

*Notice of Final Results of Antidumping Duty Administrative Review: Low Enriched Uranium*

*From France*, 69 Fed. Reg. 46,501, 46,505 (Dep't Commerce Aug. 3, 2004)), P.R. 585.

Commerce further claimed that its interpretation of the statutory language "any additional costs,

charges, or expenses, and United States import duties" to not include CVD costs "has been

upheld." *Id.* (citations omitted).

　　　Commerce's statutory interpretation is unlawful and requires remand because it is

inconsistent with the plain meaning of the statute and contradicts the intent of the statute. While

the agency found that "{t}he plain language of section 772(c)(2)(A) does not include CVDs and

CVD deposits," *see* IDM at 46, P.R. 585, the statutory language is not permissibly read as

narrowly as Commerce claims. Rather, the statute requires Commerce to adjust the price used to

establish EP or CEP whenever two conditions are met. First, the "cost" must be incident to

bringing the merchandise from the original place of shipment in the exporting country to the

place of delivery in the United States. *See* 19 U.S.C. § 1677a(c)(2)(A). And, second, the "cost"

must be included in the price used to establish the EP and CEP. *Id.* The CVD costs paid by

Canfor and West Fraser on their entries of subject merchandise meet both of these requirements.

　　　Importantly, the statute does not define or list the "additional costs, charges, or expenses,

and United States import duties" that Commerce must remove from the price used to establish

EP or CEP. As such, it is presumed that Congress intended to give those words their plain and

ordinary meaning. *See, e.g.*, *Gazelle v. Shulkin*, 868 F.3d 1006, 1010-11 (Fed. Cir. 2017)

(citations omitted). The ordinary meaning of the word "costs" plainly applies to CVD costs as

they reflect "the amount or equivalent paid or charged for something." *See* COALITION Case

Brief at 29 (providing dictionary definitions for the ordinary meaning of the term cost), C.R. 489,

P.R. 546.  Indeed, if CVDs were not paid, the respondents would be unable to deliver their merchandise to their customers in the United States.  As such, there is nothing in the statute that supports Commerce's interpretation that the plain language of the statute does not apply to CVD costs.

In the final results, Commerce states that the agency's decision to not deduct CVDs from the U.S. price has been upheld.  IDM at 46 (citations omitted), P.R. 585.  The cases cited by Commerce do not resolve the issue in this appeal.  Specifically, the issue in both *AK Steel* and *U.S. Steel Group* was whether Commerce's interpretation of the phrase "United States import duties" was reasonable where the agency distinguished between certain remedial duties that should not be deducted from the U.S. price and "ordinary customs duties."  *See AK Steel Corp. v. United States*, 988 F. Supp. 594, 607 (Ct. Int'l Trade 1997) (holding that Commerce's decision not to deduct antidumping and countervailing duties from U.S. price was reasonable as "{t}he statute does not define the term 'United States import duties'"); *U.S. Steel Group v. United States*, 15 F. Supp. 2d 892, 899 (Ct. Int'l Trade 1998) (relying on *AK Steel* and sustaining Commerce's decision not to deduct antidumping and countervailing duties from U.S. price despite "concerns about Commerce's interpretation").  While those two cases held that Commerce's interpretation of the term "United States import duties" was reasonable, neither of the cases is determinative as the Federal Circuit has not addressed the reasonableness of Commerce's refusal to adjust U.S. price by the amount of CVD costs.  *See Borusan*, 63 F.4th at 35 ("Commerce similarly treats countervailing duties as categorically excluded from 'United States import duties.'  . . .  But there is no immediately evident circularity problem, and we have not addressed whether such treatment is proper.").  In other words, there is no binding precedent that addresses the question of whether CVD costs are within the types of costs that Commerce is

required to deduct from U.S. price.  The holdings in *AK Steel* and *U.S. Steel Group* should also be closely scrutinized given increasing skepticism of courts towards claims by agencies that their statutory interpretations are entitled to deference.  *See Kisor v. Wilkie,* 139 S. Ct. 2400, 2419 (2019) (explaining that "{t}here can be no thought of deference" until "all traditional methods of interpretation" have been employed).  Indeed, since *AK Steel* and *U.S. Steel Group* were decided more than two decades ago, there has been a marked refocusing on *Chevron's* requirement that courts "exhaust all the 'traditional tools of statutory construction'—and there are many of them—before surrendering to some putative ambiguity and thereby allowing the Executive to exercise power belonging to another branch."  *Valent v. Comm'r of Soc. Sec.*, 918 F.3d 516, 525 (6th Cir. 2019) (Kethledge, J. dissenting) (quoting *Chevron*, 467 U.S. at 843 n.9).  Because the decisions in *AK Steel* and *U.S. Steel Group* were too quick "wave the ambiguity flag," *see Kisor*, 139 S. Ct. at 2416, Commerce's reliance on those cases is unpersuasive.  *See Voices for Int'l Business and Educ., Inc. v. NLRB*, 905 F.3d 770, 780 (5th Cir. 2018) (Ho, J. concurring) (citation omitted) (explaining that "{t}hreshold questions like ambiguity under *Chevron* are not just perfunctory speedbumps" and that it "remains the duty of every court to apply *Chevron* correctly").

　　　　Further, Commerce's blind deference to its past practice as justification for declining to deduct CVD costs from U.S. price is insufficient.  *See* IDM at 46, P.R. 585.  It is well settled that "an agency's statement of what it 'normally' does or has done before . . . is not, by itself, an explanation of 'why its methodology comports with the statute.'"  *CS Wind Vietnam*, 832 F.3d at 1377 (quoting *SKF USA, Inc. v. United States*, 263 F.3d 1369, 1383 (Fed. Cir. 2001)).  In *CS Wind Vietnam*, the Federal Circuit explained that agency decisions require "adequate explanation," even when such determinations are based on past practice, and must be grounded

in the statutory standard.  *Id.*  In the determination at issue here, Commerce only explains that

countervailing duties do not fall under the plain meaning of the statute as it pertains to "costs,"

and may instead be considered a "special type of import duty" that nevertheless does not prompt

the agency to deduct the amount of duties paid.  *See* IDM at 46, P.R. 585.

For the reasons set forth above, the statutory language is clear and unambiguous:

Commerce must deduct "any" costs that are incident to bringing the subject merchandise into the

United States that are included in the price used to determine EP and CEP.  19 U.S.C.

§ 1677a(c)(2)(A).  Therefore, the Court's analysis of Commerce's statutory interpretation should

begin and end with the first step of the *Chevron* framework.  *See Chevron*, 467 U.S. at 842-843

("If the intent of Congress is clear, that is the end of the matter; for the court, as well as the

agency, must give effect to the unambiguously expressed intent of Congress."); *SAS Institute,*

*Inc. v. Iancu*, 138 S. Ct. 1348, 1358 (2018) ("Even under *Chevron*, {courts} owe an agency's

interpretation of the law no deference unless, after 'employing traditional tools of statutory

construction,' we find ourselves unable to discern Congress's meaning.").  However, even if the

language in section 772(c)(2) was found to be ambiguous, Commerce's interpretation is not a

"reasonable means of effectuating the statutory purpose."  *See Louis Dreyfus Citrus Inc. v.*

*United States*, 495 F. Supp. 2d 1338, 1344 (Ct. Int'l Trade 2007) ("The court will accord

deference to the agency's determination and thus 'not impose its own views as to the sufficiency

of the agency's investigation or question the agency's methodology,' so long as such procedures

are a 'reasonable means of effectuating the statutory purpose, and there is substantial evidence in

the record supporting the agency's conclusions.'" (citation omitted)).  As explained above,

Commerce is directed to adjust both normal value and EP "in an attempt to reconstruct the price

at a specific, 'common' point in the chain of commerce, so that value can be fairly compared on

an equivalent basis." *Smith-Corona Group*, 713 F.2d at 1571-72; *see also Borusan Mannesmann Boru Sanayi ve Ticaret A.S. v. United States*, 494 F. Supp. 3d 1365, 1373 (Ct. Int'l Trade 2021) (explaining that Commerce seeks to achieve "an ex-factory price that is comparable to the price of goods in the home market"). Because CVD costs are only included in U.S. price, adjusting for CVD costs is necessary to achieve an apples-to-apples comparison. By not adjusting for costs that are reflected in U.S. price, but not in the price in the home market, Commerce fails to make the intended "fair comparison" between prices in the two markets and calculates a dumping margin that does not address the full extent of respondents' dumping. Accordingly, even if there were any ambiguity in the statute, Commerce's interpretation cannot be sustained under step two of *Chevron* as it manifestly fails to achieve the statutory purpose.

Therefore, Commerce's determination that the agency should not adjust the price used to establish EP and CEP to account for CVD costs borne by respondents to bring subject softwood lumber products from Canada to the United States must be remanded for reconsideration.

## II.    <u>Commerce's Reliance on Canfor's Reported G&A Expense Ratio was Unreasonable</u>

In determining Canfor's COP in this review, Commerce relied on the G&A expense ratio reported by the respondent. *See* PDM at 15, P.R. 518; Letter from Morris, Manning & Martin, LLP to Commerce, "Canfor's Sections B-D Supplemental Questionnaire Response" (Dec. 7, 2022) ("Canfor Dec. 7 Supp. Sections B-D Response"), at Exhibit D-37 (Canfor's G&A expense ratio calculation), C.R. 423, P.R. 488. According to Canfor, this ratio was based on the G&A expenses and total cost of goods sold ("COGS") "incurred for the lumber segment of CFP legal" which it described as "Canfor Corporation less {Canfor Pulp Products Inc. ("CPPI")}." Canfor Sections B-D Initial Response at D-56, C.R. 184, P.R. 321. As explained below, Commerce's reliance on 'CFP Legal's' G&A expense ratio in this review requires remand because the

agency's decision departs from its established practice of determining a respondent's G&A expenses based on the financial information of the producing company without explanation.

In determining a respondent's COP, Commerce is directed by section 773 of the Act to include "an amount for selling, general, and administrative expenses based on actual data pertaining to production and sales of the foreign like product by the exporter in question." 19 U.S.C. § 1677b(b)(3)(B). Commerce has a well-established practice of calculating a respondent's G&A expense ratio based on the G&A expenses of the producing company as a whole (i.e., those costs that do not relate directly to the manufacture of products, but, instead, relate to the general operations of the company) allocated over the respondent's company-wide COGS. *See, e.g.*, *Notice of Final Determination of Sales at Less Than Fair Value: Fresh Atlantic Salmon From Chile*, 63 Fed. Reg. 31,411, 31,433 (Dep't Commerce June 9, 1998). For example, in *Solar Cells from Taiwan*, Commerce explained that:

> the Department has developed a consistent and predictable practice for calculating and allocating G&A expenses. This consistent and predictable method is to calculate the rate based on the company-wide G&A expenses <u>incurred by the producing company</u> allocated over the <u>producing company's company-wide COGS</u> and not on a divisional or product-specific basis.

*Certain Crystalline Silicon Photovoltaic Products From Taiwan: Final Results of Antidumping Duty Administrative Review; 2014-2016*, 82 Fed. Reg. 31,555 (Dep't Commerce July 7, 2017) ("*Solar Cells from Taiwan*"), and accompanying IDM at 30 (emphasis added) (citations omitted); *see also Notice of Final Determination of Sales at Less Than Fair Value: Certain Softwood Lumber Products From Canada*, 67 Fed. Reg. 15,539 (Dep't Commerce Apr. 2, 2002), and accompanying IDM at Comment 33 (noting that Commerce's "consistent and predictable method is to calculate the {G&A expense} rate based on the company-wide G&A costs incurred by the producing company allocated over the producing company's company-wide cost of sales").

NON-CONFIDENTIAL VERSION

In the final results, Commerce failed to base Canfor's G&A expense ratio on the G&A expenses incurred by CFP, the company producing softwood lumber in Canada. Instead, Commerce strayed from its established practice and relied on a G&A expense ratio constructed using the expenses and costs of 'CFP Legal,' a made-up entity. *See* IDM at Comment 15, pp. 59-60, P.R. 585. Canfor calculated the G&A expense ratio of 'CFP Legal' beginning with the consolidated financial statements of Canfor Corporation. *See* Canfor Sections B-D Initial Response at D-56 – D-58, C.R. 184, P.R. 321. Canfor then subtracted CPPI's operational expenses from those of Canfor Corporation to arrive at what it identified as the 'CFP Legal' entity. *See id.* at D-56. Importantly, 'CFP Legal' is a contrived group of companies— representing the Canfor Corporation consolidated group without CPPI and its subsidiaries. The group of companies remaining after exclusion of CPPI includes CFP, as well as numerous other legal entities, including foreign ones, with substantial operations. For example, the 'CFP Legal' entity includes Canfor's operations in the United States and Europe. *Id.* at D-56 n.23 (stating that 'CFP Legal' includes Canfor's "U.S. and newly purchased European lumber operations"). As detailed below, the G&A expense ratio calculated by Canfor for 'CFP Legal' deviates from the agency's normal practice with respect to how a respondent's G&A expense ratio should be calculated in significant respects and must be remanded for reconsideration.

It was unnecessary for Commerce to abandon its regular practice of basing a respondent's G&A expense ratio on the G&A expenses incurred by the producing company divided by that company's COGS in this review. Here, Commerce possessed information specific to CFP (i.e., CFP's tax return), that would have allowed the agency to calculate a G&A expense ratio that was based on the financial information of the actual producing company. *See* COALITION Case Brief at 6-7, C.R. 489, P.R. 546; Letter from Picard Kentz & Rowe LLP to Commerce, "Pre-

17

Preliminary Comments" (Dec. 23, 2022), at Attachment D, C.R. 427, P.R. 493.  Rather than grant

imprimatur to an artificial G&A expense ratio fashioned by Canfor on information that does not

accurately reflect the G&A expenses of the producing company, Commerce should have used the

information available to it on the record and calculated a G&A expense ratio reflective of CFP's

actual experience during the POR.

 The record developed in this review shows that CFP is the "operating entity within

Canfor Corporation that is responsible for the development and production of softwood lumber

in Canada."  Letter from Morris, Manning & Martin, LLP to Commerce, "Canfor's Section A

Initial Questionnaire Response" (May 20, 2022), at A-8, C.R. 27, P.R. 290.  Canfor identifies

CFP's business area as "softwood lumber production" and identifies CFP as controlling Canfor's

Canadian softwood lumber operations.  *Id.* at Exhibits A-3 and A-4.  Thus, CFP's data reflects

the costs and expenses related to the production and sale of the foreign like product.  *See Solar*

*Cells from Taiwan* IDM at 30 (explaining Commerce's "consistent and predictable practice" of

calculating a respondent's G&A expense ratio "based on the company-wide G&A expenses

incurred by the producing company").

 CFP's reconciled tax return included information specific to CFP's administrative

expenses and COGS that would have more accurately reflected the respondent's G&A expenses

during the POR than those reported by Canfor based on the 'CFP Legal' entity.  For example,

there are [     ] between the financial figures of CFP and 'CFP Legal.'  As

acknowledged by Canfor itself, the G&A expense ratio calculation for 'CFP Legal' relies on a

COGS of [   ], *see* Canfor Dec. 7 Supp. Sections B-D Response at Exhibit D-37,

C.R. 423, P.R. 488, while CFP's tax return reported a COGS of [   ].  *See*

Letter from Morris, Manning & Martin, LLP to Commerce, "Canfor's Section A Supplemental

Case 1:23-cv-00187-JCG    Document 110    Filed 04/05/24    Page 28 of 31

Consol. Court No. 23-00187                    NON-CONFIDENTIAL VERSION

Questionnaire Response" (Nov. 17, 2022), at Exhibit A-37, C.R. 209-213, P.R. 364.

Commerce's decision to accept a G&A expense ratio based on 'CFP Legal' fails to explain how

'CFP Legal's' COGS reasonably reflects the "actual data" of CFP. Accordingly, Commerce

unreasonably departed from established practice when it declined to calculate Canfor's G&A

expense ratio based on the G&A expenses of CFP.

 Additionally, after improperly allowing Canfor to base its G&A expense ratio on 'CFP

Legal,' Commerce distorted the calculations further. Specifically, the numerator of 'CFP Legal's'

G&A expense ratio calculation failed to capture all of the G&A expenses incurred by the 'CFP

Legal' entity as a whole. Rather, Canfor excluded expenses incurred by Canfor Southern Pine,

Inc. ("CSP") and Canfor Sweden (Forest Products) AB ("Canfor Sweden"), companies within

the 'CFP Legal' entity, claiming that the expenses charged to these entities were entirely selling

expenses related to non-subject merchandise. *See* IDM at 60, P.R. 585. Specifically, Canfor

reported that CSP and Canfor Sweden incurred administrative expenses during the POR totaling

[     ], yet Canfor excluded this entire amount from the G&A expenses of 'CFP

Legal,' claiming that this amount consisted of selling expenses that were "not part of GA." *See*

Canfor Dec. 7 Supp. Sections B-D Response at Exhibit D-37, C.R. 423, P.R. 488. It strains

credulity to believe that CSP and Canfor Sweden's administrative expenses in excess of [

] were made up entirely of direct selling expenses related to merchandise produced in the

United States and Sweden, respectively, that are reasonably excluded from 'CFP legal's' total

G&A expenses. As CSP and Canfor Sweden are both companies that produce lumber, the G&A

costs of these entities reasonably relate to 'CFP Legal' as a whole and belong in the numerator of

the G&A expense ratio calculation. *See, e.g.*, *Silicomanganese From India: Notice of Final*

*Determination of Sales at Less Than Fair Value and Final Negative Critical Circumstances*

*Determination*, 67 Fed. Reg. 15,531 (Dep't Commerce Apr. 2, 2002), and accompanying IDM at

Comment 24 (explaining that Commerce's methodology of calculating a respondent's G&A

expense ratio based on "company-wide general expenses" avoids distortions that may result if

expenses are allocated between products or divisions).

Instead of relying on a mathematically unbalanced G&A expense ratio calculation,

Commerce should have relied on a company-specific G&A expense ratio calculated using

information from CFP and Canfor Corporation's tax returns.  Because Commerce's calculation

of Canfor's G&A expense ratio was inconsistent with agency practice, the final results should be

remanded for Commerce to calculate and apply a G&A expense ratio based on the costs and

expenses of CFP.

**NON-CONFIDENTIAL VERSION**

## CONCLUSION

The Domestic Industry respectfully requests that this Court find that Commerce's

determinations addressed above are unsupported by substantial evidence and otherwise not in

accordance with law and remand to Commerce for redetermination consistent with the Court's

opinion.

Respectfully submitted,

David J. Ross                                     Andrew W. Kentz
Jeffrey I. Kessler                                Zachary J. Walker
Stephanie E. Hartmann

**WILMER CUTLER PICKERING HALE**      **PICARD KENTZ & ROWE LLP**
**and DORR LLP**                                 1750 K Street NW
2100 Pennsylvania Avenue NW          Suite 800
Washington, DC 20037                      Washington, DC 20006
(202) 663-6000                                  (202) 888-0595

*Counsel to Sierra Pacific Industries,*       *Counsel to the COALITION*
*including its subsidiary Seneca Sawmill*
*Company*

## CERTIFICATE OF COMPLIANCE

The undersigned counsel hereby certifies that this brief complies with the 14,000 word-count limitation described in part 2(B)(1) of the Court's Chambers Procedures.  This brief contains 6,251 words according to the word-count function of the word-processing software used to prepare the memorandum, excluding the table of contents, table of authorities, and counsel's signature block.

Respectfully submitted,

*/s/ Zachary J. Walker*

Zachary J. Walker

**PICARD KENTZ & ROWE LLP**
1750 K Street NW
Suite 800
Washington, DC 20006
(202) 888-0595

*Counsel to the COALITION*

April 5, 2024