UNITED STATES COURT OF INTERNATIONAL TRADE

*Before*: The Honorable Jennifer Choe-Groves, Judge

| | |
|---|---|
| **The Government of Canada**, *et al.*,<br><br>      *Plaintiffs*,<br><br>**Canfor Corporation**, *et al.*,<br><br>   and<br><br>**Committee Overseeing Action for Lumber International Trade Investigations or Negotiations**, *et al.*,<br><br>      *Consolidated Plaintiffs,*<br><br>**Canfor Corporation**, *et al.*,<br><br>      *Plaintiff-Intervenors*,<br><br>   v.<br><br>**United States**,<br><br>      *Defendant*,<br><br>**Committee Overseeing Action for Lumber International Trade Investigations or Negotiations**, *et al.*,<br><br>      *Defendant-Intervenors.* | Consol. Court No. 1:23-cv-00187-JCG<br><br>PUBLIC DOCUMENT |

**SUPPLEMENTAL BRIEF ON SUBSEQUENT AUTHORITY OF CONSOLIDATED PLAINTIFFS RESOLUTE FP CANADA INC., CONSEIL DE L'INDUSTRIE FORESTIÈRE DU QUÉBEC ("CIFQ"), AND THE ONTARIO FOREST INDUSTRIES ASSOCIATION ("OFIA")**

Elliot J. Feldman
Michael S. Snarr
Ronald J. Baumgarten
Tung A. Nguyen

**Baker Hostetler LLP**
1050 Connecticut Ave., NW
Suite 1100
Washington, D.C.  20036

Counsel to Resolute FP Canada Inc.,
Conseil de l'Industrie forestière du
Québec ("CIFQ"), and the Ontario
Forest Industries Association ("OFIA")

Dated: January 31, 2025

**TABLE OF CONTENTS**

I.   INTRODUCTION ............................................................................................... 1

II.  CONDITIONS FOR SUBSTITUTING FOR THE DEFAULT "A-A" ANTIDUMPING METHODOLOGY ............................................................................................ 2

   A.  The A-T Comparison Methodology Is An Exception .......................................... 2

   B.  The Plain Meanings Of "Pattern" And "Or" Preclude Commerce From Cumulating Price Differences Among Time Periods *And* Purchasers *And* Regions ................................................................................................ 3

   C.  Monthly A-A Comparisons Took Into Account The Only Significant Price Differences: Those By Time Period ............................................................... 6

III. COMMERCE FAILED THE TEST FOR SUBSTITUTING METHODOLOGIES ....... 7

   A.  Courts Have Not Fully Accepted Commerce's Method For Targeted Dumping .................................................................................. 7

   B.  There Is No Precedent Governing This Examination Of The Statute ................. 9

## TABLE OF AUTHORITIES

**Cases**

*Apex Frozen Foods Private Ltd. v. United States,* 862 F. 3d 1337 (Fed. Cir. 2017) ........ 8

*Borusan Mannesmann Boru Sanayi ve Ticaret A.S. v. United States*,
608 Fed. App'x 948 (Fed. Cir. 2015) ............................................................................ 9

*Caquelin v. United States*, 959 F. 3d 1360 (Fed. Cir. 2020) ............................................ 9

*Chevron U. S. A. Inc. v. Natural Resources Defense Council, Inc.*,
104 S. Ct. 2778 (1984) .................................................................................................. 8

*Deckers Corp. v. United States*, 752 F. 3d 949 (Fed. Cir. 2014) ..................................... 9

*Dillinger France S.A. v. United States*, 981 F. 3d 1318 (Fed. Cir. 2020) ........................ 8

*Garg Tube Exp. LLP v. United States,* No. 21-169,
2024 Ct. Intl. Trade LEXIS 125, SLIP OP. 2024-124 (Ct. Int'l Trade Nov. 7, 2024) ......... 5

*JBK RAK LLC v. United States,* 790 F. 3d 1358 (Fed. Cir. 2015) ............................... 3, 8

*Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244 (2024) ........................... 1, 2, 3, 8

*Marbury v. Madison,* 1 Cranch 137 (1803) ...................................................................... 2

*Ortiz v. McDonough*, 6 F. 4th 1267 (Fed. Cir. 2021) ....................................................... 9

*Stanley Works (Langfang) Fastening Sys., Ltd. v. United States,*
279 F. Supp. 3d 1172 (Ct. Int'l Trade 2017) ................................................................ 3

*Stupp Corp. v. United States*, 5 F. 4th 1341 (Fed. Cir. 2021) .......................................... 9

*The Timken Co. v. United States,* 179 F. Supp. 3d 1168 (Ct. Int'l Trade 2016) .............. 3

*West Virginia v. EPA*, 142 S. Ct. 2587 (2022) ................................................................. 6

**Statutory Provisions**

19 U.S.C. § 1677b(a) ................................................................................................ 1, 6, 7
19 U.S.C. § 1677b(a)(1)(A) ............................................................................................. 7
19 U.S.C. § 1677f-1(d) .................................................................................................... 1
19 U.S.C. § 1677f-1(d)(1)(A)(i) ...................................................................................... 2
19 U.S.C. § 1677f-1(d)(1)(A)(ii) ..................................................................................... 1
19 U.S.C. § 1677f-1(d)(1)(B) ................................................................................... 1, 3, 8
19 U.S.C. § 1677f-1(d)(1)(B)(i) ................................................................................... 4, 8
19 U.S.C. § 1677f-1(d)(1)(B)(ii) ................................................................................ 4, 6, 9
19 U.S.C. § 1677f-1(d)(i)(B) ......................................................................................... 10

**Regulatory Provisions**

19 C.F.R. § 351.414(d)(3) ................................................................................................ 7

**Other Authorities**

*Antidumping Proceedings: Calculation of the Weighted-Average Dumping Margin and Assessment Rate in Certain Antidumping Duty Proceedings; Final Modification*, 77 Fed. Reg. 8,101 (Dep't Commerce Feb. 14, 2012) ............................................................ 3, 7

Merriam-Webster's Online Dictionary ........................................................................ 4, 5

I.      INTRODUCTION

The Tariff Act of 1930, as amended ("the statute"), expresses Congress' intent and preference that, when calculating a dumping margin, the U.S. Department of Commerce ("Commerce") should compare weighted average normal values to weighted average export prices ("WA-WA" or "A-A").[1] The statute also authorizes the substitution of an alternative methodology, comparing weighted average normal values to export prices in specific transactions ("A-T"), occasioned by a search for targeted dumping.[2] The substitution of an alternative methodology, however, is permitted only when certain conditions, articulated in the statute, are met.[3] Understanding these conditions and determining whether they have been met in any given antidumping appeal requires the judiciary's close reading of 19 U.S.C. § 1677f-1(d) and 19 U.S.C. § 1677b(a), starting with the statute's plain language.

The Supreme Court in *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244, 2273 (2024) ("*Loper Bright*"), held that "Courts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority. . . . And when a particular statute delegates authority to an agency consistent with constitutional limits, courts must respect the delegation, while ensuring that the agency acts within it. But courts . . . may not defer to an agency interpretation of the law simply because a

---

[1] *See* U.S. Resp. Br. at 3 (noting that Commerce "ordinarily" applies the A-A methodology in reviews).

[2] The statute also permits a comparison of individual transactions ("T-T"), a cumbersome methodology that Commerce rarely uses, especially when the merchandise is a commodity with thousands of individual transactions. *See* 19 U.S.C. § 1677f-1(d)(1)(A)(ii).

[3] *See* 19 U.S.C. § 1677f-1(d)(1)(B).

1

statute is ambiguous."  A court is no longer to accept any permissible or "reasonable" interpretation offered by an agency; instead, as the Supreme Court cautioned, "In the business of statutory interpretation, if it is not the best, it is not permissible."  144 S. Ct. at 2266.

In this case, Commerce has expected deference to interpret the law and has treated as "reasonable" its resort to A-T without explaining, as the statute requires, why monthly A-A comparisons could not take into account a detected pattern of significant price differences that were entirely a function of periods of time.  *Loper Bright* requires more from the courts than deference to agencies and acceptance of what may seem "reasonable."  Courts are to exercise their own independent authority "'to say what the law is.'" 144 S. Ct. at 2257 (citing *Marbury v. Madison*, 1 Cranch 137, 177 (1803)).

Commerce's interpretation here is unlawful because the resort to an alternative methodology was without lawful justification.  The Final Results never defined essential statutory terms and failed to respect plain language directives in the statute.  Pursuant to *Loper Bright*, this Court should find that Commerce's interpretation of the Tariff Act is unlawful according to the most basic elements of statutory interpretation.

## II.  CONDITIONS FOR SUBSTITUTING FOR THE DEFAULT "A-A" ANTIDUMPING METHODOLOGY

### A.  The A-T Comparison Methodology Is An Exception

The statute instructs, unambiguously, that "the administering authority shall determine whether the subject merchandise is being sold in the United States at less than fair value (i) by comparing the weighted average of the normal values to the weighted average of the export prices."[4]  As an express "exception" to that rule, "The

---

[4] 19 U.S.C. § 1677f-1(d)(1)(A)(i).

administering authority may determine whether the subject merchandise is being sold in the United States at less than fair value by comparing the weighted average of the normal values to the export prices of individual transactions (or constructed export prices) of individual transactions for comparable merchandise if ...."[5]

The key to this case follows the statutory word "if." The two essential conditions to be met for the "administering authority" (Commerce) to resort to the statutory exception by substituting the A-T methodology for A-A are "a pattern of export prices … that differ significantly among purchasers, regions, or periods of time,"[6] and for Commerce to "explai[n] why such differences cannot be taken into account using" the A-A or T-T methods. *Loper Bright* requires this Court to examine closely the language of the statute, Commerce's misinterpretation of it, 144 S. Ct. at 2273, and Commerce's failure to justify its resort to the exception in the statute.[7]

### B. The Plain Meanings Of "Pattern" And "Or" Preclude Commerce From Cumulating Price Differences Among Time Periods *And* Purchasers *And* Regions

Immediately following the "if" in the section of the statute labelled "exception" comes "there is a pattern of export prices . . . that differ significantly among purchasers,

---

[5] 19 U.S.C. § 1677f-1(d)(1)(B).

[6] The Government of Canada has shown why Commerce's misapplication of the Cohen's *d* test does not accurately demonstrate a pattern of export prices that differ significantly.

[7] Commerce, in 2012, adopted comparisons and the targeted dumping exception at § 1677f-1(d)(1)(B) as the default for administrative reviews. *See Antidumping Proceedings: Calculation of the Weighted-Average Dumping Margin and Assessment Rate in Certain Antidumping Duty Proceedings; Final Modification*, 77 Fed. Reg. 8,101, 8,102-07 (Dep't Commerce Feb. 14, 2012) (amending 19 C.F.R. § 351.414). The courts have upheld this interpretation of the statute. *See, e.g., JBK RAK LLC v. United States,* 790 F. 3d 1358, 1364 (Fed. Cir. 2015); *Stanley Works (Langfang) Fastening Sys., Ltd. v. United States,* 279 F. Supp. 3d 1172, 1182 n.12 (Ct. Int'l Trade 2017); *The Timken Co. v. United States,* 179 F. Supp. 3d 1168, 1177-78 (Ct. Int'l Trade 2016).

3

regions, or periods of time."[8] The statute does not define "pattern." Commerce claims that its "ratio test" identifies a "pattern," citing to two cases in which the courts upheld an undefined meaning that is contrary to a plain language dictionary definition.[9]

Commerce's "pattern" included all three of the subordinate categories – purchasers, regions, or periods of time – taken together.[10] Whereas each subordinate category might produce a "pattern" – "a discernible coherent system based on the intended interrelationship of component parts"[11] – there is no "discernible coherent system" when test results in each of the three distinct categories, which have no "interrelationship," are taken together.

Commerce should have looked for a "pattern" in each of the three categories separately, rather than across all of them.  Aggregating them is contrary to the statute's plain language which separates the categories by the conjunction "or."[12]  Without explanation or justification, but with the consequence of having more comparisons in total "passing" the Cohen's *d* test, Commerce impermissibly substituted "and" for "or."

After Commerce's flawed application of the first statutory condition for resorting to A-T – by changing the plain language of the statute ("and" for "or") and implicitly redefining an essential term ("pattern") – Commerce had to assess whether the second condition was met. Under 19 U.S.C. § 1677f-1(d)(1)(B)(ii), the administering authority

---

[8] 19 U.S.C. § 1677f-1(d)(1)(B)(i).
[9] *See* PDM at 37 (citing *to Dillinger France S.A. v. United States*, 981 F.3d 1318, 1325 (Fed. Cir. 2020); *Stupp Corp. v. United States,* 5 F.4th 1341, 1355-56 (Fed. Cir. 2021)).
[10] *See* PDM at 9; U.S. Resp. Br. at 5.
[11] *Pattern*, Merriam-Webster's Online Dictionary, *available at* https://www.merriam-webster.com/dictionary/pattern.
[12] *See Or,* Merriam-Webster's Online Dictionary, *available at* https://www.merriam-webster.com/dictionary/or ("used as a function word to indicate an alternative").

must "explain{s} why such differences cannot be taken into account using a method described in paragraph (1)(A)(i) or (ii)," the A-A and T-T methodologies.[13]

Commerce skipped over its statutory requirement to "explain" by relying on a defective statistical test that has nothing to do with dumping.[14] Nor did Commerce pause over the phrase "taken into account."[15] It nowhere acknowledged the statutory obligation to explain why the significant differences in export prices over periods of time "cannot be taken into account" by the statutorily preferred A-A methodology.

*Loper Bright* requires this Court to look closely at the statute. An agency interpretation that ignores statutory terms or assigns them meaning divorced from ordinary or dictionary definitions must fail. Commerce's chosen methodology may be permitted only as an "exception" that requires identifying "a pattern of export prices . . . that differ significantly" and explaining why these differences "cannot be taken into account" when using the preferred A-A methodology.[16]

---

[13] *See Explain*, Merriam-Webster's Online Dictionary, available at https://www.merriamwebster.com/dictionary/explain ("to give the reason for or cause of," or "to show the logical development or relationship of.").

[14] The Cohen's *d* test compares export prices in the United States in different regions; for different purchasers; and for different periods of time. It does not compare any of the export prices to the normal values, the comparison necessary to find dumping.

[15] *Taken into account of,* Merriam-Webster's Online Dictionary, *available at* https://www.merriam-webster.com/dictionary/take%20into%20account ("to give attention or consideration to (something)" or "bear in mind, consider, allow for").

[16] The court in *Garg* concluded that *Loper Bright* did not serve to excuse *Garg*'s failure to exhaust administrative remedies. *See Garg Tube Exp. LLP v. United States,* No. 21-169, 2024 Ct. Intl. Trade LEXIS 125, SLIP OP. 2024-124 (Ct. Int'l Trade Nov. 7, 2024). The role of *Loper Bright* here is different, confirming the Court's requirement to reconsider the plain meaning of all the terms in the statute.

      C.    Monthly A-A Comparisons Took Into Account The Only Significant Price Differences:  Those By Time Period

After requiring identification of a "pattern" of significant price differences by purchaser, region *or* period of time, the statute imposes one more condition on Commerce, stated in the negative, before it may substitute A-T for A-A.  Commerce must "explain" "why such differences *cannot* be taken into account using a method described in paragraph (1)(A)(i) or (ii)," *i.e.*, A-A or T-T.[17]  Commerce provided no explanation offering instead the quantitative results of a statistical test (i.e., "meaningful difference test").

Commerce could not have provided an explanation because differences by time period were taken into account specifically and fully by the A-A comparisons based on one-month periods.  Following its "differential pricing methodology" ("DPM"), Commerce looked for significant differences in prices using quarterly time periods.[18]  Commerce's monthly A-A comparisons already accounted for such differences; significant price differences did not otherwise exist by purchaser or region.[19]

The statute establishing normal value[20] states that, "a fair comparison shall be made between the export price or constructed export price and normal value,"[21] which

---

[17] 19 U.S.C. § 1677f-1(d)(1)(B)(ii) (emphasis added).

[18] *See* AD AR4 Prelim. at 8.

[19] *See* Canadian Parties' Br. at 72 & n. 285 (citing Canfor's Analysis Mem., Attach. 2 (time period basket produced most passes); West Fraser's Final Analysis Mem., Attach. II (time period basket produced most passes)).

[20] The overall statutory scheme of the antidumping system is "fundamental" to proper interpretation of the targeted dumping provision. *See, e.g., West Virginia v. EPA*, 142 S. Ct. 2587, 2607 (2022) ("'It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.'") (Roberts, C.J.); *Hyundai Steel Co. v. United States*, 658 F. Supp. 3d 1331, 1335 (Ct. Int'l Trade 2023) ("The statutory context confirms the plain meaning of 'benefit.'").

[21] 19 U.S.C. § 1677b(a).

means "at a time reasonably corresponding to the time of the sale used to determine the export price . . ."[22] Commerce, by its own regulation, interprets "a time reasonably corresponding to the time of the sale" to mean "monthly:" "{T}he new, normal comparison methodology to be used in reviews will be the A-A comparison methodology (on a monthly basis)."[23]

Commerce's A-A comparisons by monthly periods thus satisfy the preferred A-A methodology intended by Congress. In this case, the A-A methodology expressly took into account the only significant price differences found by the Cohen's *d* test for a quarterly period[24] and constituted a fair comparison by time as required by the statute. Commerce did not explain, nor could it explain, why the A-A monthly comparisons could not account for significant price differences by periods of time in this case. The statutory conditions for A-T comparisons, therefore, were not met, requiring a remand.

### III.    COMMERCE FAILED THE TEST FOR SUBSTITUTING METHODOLOGIES

#### A.    Courts Have Not Fully Accepted Commerce's Method For Targeted Dumping

Commerce purported to satisfy the conditions for substituting the A-T methodology while failing to define essential terms and by altering the plain language of

---

[22] 19 U.S.C. § 1677b(a)(1)(A).
[23] 77 Fed. Reg. at 8,106; *see also* 19 C.F.R. § 351.414(d)(3).
[24] The statute at 19 USC § 1677b(a) does not address the other two categories of targeted dumping where patterns of significant price differences might be found – purchasers or regions. However, the Cohen's *d* test expressly addressed those two categories and found no patterns of significant price differences. The test found a pattern of significant price differences only by time periods, which then were expressly taken into account by the preferred A-A antidumping methodology, consistent with the statute in making fair comparisons.

the statute. Whatever courts may have accepted as "reasonable" interpretations cannot survive the *Loper Bright* test for accepting only the "best" interpretation.

Nothing in the case law requires adherence to *stare decisis* where Commerce's interpretation of the masked dumping statute under *Chevron U. S. A. Inc. v. Natural Resources Defense Council, Inc.*, 104 S. Ct. 2778 (1984) ("*Chevron*"), ignores and distorts statutory plain language, nor is *stare decisis* "an inexorable command." *Loper Bright*, 144 S. Ct. at 2270 (quoting *Payne v. Tennessee*, 501 U.S. 808, 828 (1991)). Central Canada's (and the Canadian Parties') argument here focuses on the plain meaning of terms not defined by Commerce nor considered previously by this Court or the Federal Circuit.[25] As the Federal Circuit has explained elsewhere, "These are

---

[25] *See* Canadian Parties' Reply Br. at 27 (distinguishing *Apex*); 32-33 (distinguishing *Dillinger France*). In *Apex Frozen Foods Private Ltd. v. United States,* 862 F. 3d 1337 (Fed. Cir. 2017), appellant made three narrow challenges against the meaningful difference test, none of which is at issue here: 1) the test should only have been run on the sales passing the Cohen's *d* test; 2) the test only accounts for the difference that zeroing makes when calculating margins; and 3) the double zeroing inherent in the mixed methodology is unreasonable. The CAFC rejected all of these claims. The court never discussed the plain meaning of "explains" nor "taken into account."

In *Dillinger France S.A. v. United States*, 981 F. 3d 1318 (Fed. Cir. 2020), the CAFC concluded that "the statute is silent as to how Commerce must determine the existence of a 'pattern'" under 19 U.S.C. § 1677f-1(d)(1)(B)(i) and, thus, under *Chevron* evaluated whether it was reasonable for Commerce to establish a pattern by aggregating sales across categories (purchasers, regions, time periods). The court upheld Commerce's finding of a "pattern," without ever saying what the plain meaning of the word "pattern" is and without recognizing the substitution of "and" for "or." The CAFC, however, left the door open to further arguments concerning "pattern." *Id.* at 1326.

The United States and Domestic Parties have relied on additional cases that fail to support Commerce's interpretation of the statute. *See, e.g.,* U.S. Resp. Br. at 7, 12, 37, 38 (relying on *Stupp, JBF RAK*); Domestic Parties' Resp. Br. at 8, 9 (relying on *JBF RAK, Borusan*). In *JBK RAK*, 790 F. 3d 1358 (Fed. Cir. 2015), the CAFC found that § 1677f-1(d)(1)(B) does not require Commerce to determine the reasons why there is a pattern of export prices for comparable merchandise that differs significantly among purchasers, regions, or time periods. The CAFC framed the issue as one under 19 U.S.C. § 1677f-1(d)(1)(B)(i); not as one related to the explanation condition under (ii).

circumstances calling for application of the principle that prior decisions do not establish controlling precedent on an issue 'never squarely addressed.'"[26]

### B. There Is No Precedent Governing This Examination Of The Statute

There is no statutory ambiguity allowing Commerce to replace "or" with "and." "Or" in the statute means there are three distinct categories. This correction is unavoidable because Commerce must find a "pattern," which it did for the single category, periods of time. No definition of "pattern" can sustain a combination of three categories that have nothing more in common than passing the Cohen's *d* test.

Commerce refused to consider qualitative explanations for why the A-A methodology could not account for the pattern of significant price differences according

---

The CAFC never addressed the arguments similar to those the Canadian Parties are making here based on the plain language of § 1677f-1(d)(1)(B)(ii) – Commerce is not free to ignore the qualitative evidence supporting an interpretation that A-A is sufficient for taking into account significant price differences as to time period.

In *Borusan Mannesmann Boru Sanayi ve Ticaret A.S. v. United States*, 608 Fed. App'x 948 (Fed. Cir. 2015), the CAFC followed *JBF RAK* and held that nothing in the language of the statute requires Commerce to take the extra analytical step of considering alternate explanations for the pricing patterns observed through use of the *Nails* test (pre-dating the DPM). Again, the CAFC never addressed the issue of qualitative evidence in reaffirming the adequacy of A-A in a case like the present one.

In *Stupp Corp. v. United States*, 5 F. 4th 1341 (Fed. Cir. 2021), the CAFC upheld the ratio test cut-offs for application of a mixed or A-T methodology, which is not at issue here. In so doing, the CAFC reached the perplexing conclusion that "there is no statutory language telling Commerce . . . how to aggregate and quantify pricing comparisons across product groups in order to select a statutorily defined comparison method. *Id.* at 1354. The decision never reconciled this view with the plain language reading of "pattern" and "or." The CAFC further held that *Apex* "disposes of" the challenges to the meaningful difference test. *Id.* at 1356. *Stupp* thus suffers from the same flaws as the initial *Apex* precedent.

[26] *Caquelin v. United States*, 959 F. 3d 1360, 1372 (Fed. Cir. 2020) ("These are circumstances calling for application of the principle that prior decisions do not establish controlling precedent on an issue 'never squarely addressed.'") (citation omitted); *Ortiz v. McDonough*, 6 F. 4th 1267, 1279 (Fed. Cir. 2021) (same) (citations omitted); *Deckers Corp. v. United States*, 752 F. 3d 949, 956 (Fed. Cir. 2014) (same).

to periods of time.[27]  "Explain," however, is not a requirement satisfied by a quantitative result of a statistical test.

Commerce found a pattern of significant price differences by quarterly time periods, a factor expressly taken into account by the statutory requirements of the A-A methodology to make fair comparisons of normal values and export prices according to "reasonably corresponding" time periods (here, by Commerce's own regulation implementing the law, on a monthly basis).  *Loper Bright* requires the Court's return to the plain language of the statute, accepting only the best interpretation.

Commerce has not made its case for substituting the A-T methodology for the preferred A-A methodology because it has not satisfied the requirements in 19 U.S.C. § 1677f-1(d)(i)(B).  Substitution – by the unmistakable plain language of the statute – is authorized only as an exception, permitted only in the presence of certain conditions that Commerce has not met.

                                                Respectfully submitted,

                                                */s/ Elliot J. Feldman*
                                                Elliot J. Feldman
                                                Michael S. Snarr
                                                Ronald J. Baumgarten
                                                Tung A. Nguyen

                                                Baker & Hostetler LLP

                                                Counsel to Resolute FP Canada Inc., Conseil de l'Industrie forestière du Québec ("CIFQ"), and the Ontario Forest Industries Association ("OFIA")

---

[27] *See, e.g.,* Canadian Parties' Br. at 64-73; Canadian Parties' Reply Br. at 26-29.