IN THE UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: THE HONORABLE JENNIFER CHOE-GROVES, JUDGE

| | |
|---|---|
| GOVERNMENT OF CANADA, et al., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant, <br><br> and <br><br> COMMITTEE OVERSEEING ACTION FOR LUMBER INTERNATIONAL TRADE INVESTIGATIONS OR NEGOTIATIONS, et al., <br><br> Defendant-Intervenors. | Consol. Court No. 23-00187 |

## SIERRA PACIFIC INDUSTRIES', INCLUDING ITS SUBSIDIARY SENECA SAWMILL COMPANY, SUPPLEMENTAL BRIEF ON *LOPER BRIGHT*

David J. Ross
Jeffrey I. Kessler
Stephanie E. Hartmann

Wilmer Cutler Pickering Hale and Dorr LLP
2100 Pennsylvania Avenue NW
Washington, D.C. 20037
(202) 663-6000

*Counsel for Defendant-Intervenor Sierra Pacific Industries, including its subsidiary Seneca Sawmill Company*

January 31, 2025

**Consol. Court No. 23-00187**

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

ARGUMENT ........................................................................................................................ 1

    I.    Effect of *Loper Bright* on This Case ........................................................................ 1

    II.   Effect of *Loper Bright* on Cases Decided by the Federal Circuit ............................... 6

    III.  Effect of *Stupp* on the Present Case ........................................................................ 7

CONCLUSION ..................................................................................................................... 8

# TABLE OF AUTHORITIES

                                                                                                                    Page(s)

**Statutes and Regulations**

5 U.S.C. § 551 ............................................................................................................... 1, 2, 4

19 U.S.C. § 1516a(b)(1)(B)(i) ............................................................................................ 2

**Cases**

*Asociación de Exportadores e Industriales de Aceitunas de Mesa v. United States*,
   429 F. Supp. 3d 1325 (CIT 2020) ................................................................................. 2

*Batterton v. Francis*,
   432 U.S. 416 (1977) ...................................................................................................... 3

*Kisor v. Wilkie*,
   588 U.S. 558 (2019) ............................................................................................... 3, 4, 5

*Loper Bright Enters. v. Raimondo*,
   144 S. Ct. 2244 (2024) ........................................................................................ *passim*

*Marmen Inc. v. United States*,
   627 F. Supp. 3d 1312 (CIT 2023) ........................................................................ 5, 7, 8

*Michigan v. EPA*,
   576 U.S. 743 (2015) ...................................................................................................... 3

*Mid-Continent Steel & Wire, Inc. v. United States*,
   940 F.3d 662 (Fed. Cir. 2019) ................................................................................... 6, 7

*North Star Steel Ohio v. United States*,
   824 F. Supp. 1074 (CIT 1993) ................................................................................. 5, 6

*Nippon Steel Corp. v. United States*,
   458 F.3d 1345 (Fed. Cir. 2006) .................................................................................... 2

*Pesquera Mares Australes Ltda. v. United States*,
   266 F.3d 1372 (Fed. Cir. 2001) .................................................................................... 2

*Qingdao Qihang Tyre Co. v. United* States,
   308 F. Supp. 3d 1329 (CIT 2018) ................................................................................ 2

*Relentless, Inc. v. Dep't of Commerce*,
   603 U.S. 369 (2024) ...................................................................................................... 1

*SeAH Steel Corp. v. United States*,
   619 F. Supp. 3d 1309 (CIT 2023) ............................................................................7, 8

*Skidmore v. Swift & Co.*,
   323 U.S. 134 (1944) ..................................................................................................3, 4

*Stupp Corp. v. United States*,
   5 F.4th 1341 (Fed. Cir. 2021) ...........................................................................1, 5, 7, 8

*Stupp Corp. v. United States*,
   619 F. Supp. 3d 1314 (CIT 2023) ............................................................................7, 8

*Wayman v. Southard*,
   23 U.S. (10 Wheat.) 1 (1825) ....................................................................................3, 7

**Consol. Court No. 23-00187**

## INTRODUCTION

Pursuant to the Court's Order of January 17, 2025, Sierra Pacific Industries, including its subsidiary Seneca Sawmill Company (collectively "Sierra Pacific"), respectfully submits this supplemental brief on the U.S. Supreme Court's recent decision in *Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244 (2024) and its companion case, *Relentless, Inc. v. Dep't of Commerce*, 603 U.S. 369 (2024) (referred to collectively as "*Loper Bright*"). The Court instructed the parties to address three questions: (1) what effect, if any, *Loper Bright* has on how this Court should review Commerce's differential pricing determination; (2) how should the Court view cases that were decided by the U.S. Court of Appeals for the Federal Circuit under the *Chevron* framework prior to *Loper Bright*; and (3) how is this case affected by the *Stupp* case that is currently on appeal before the U.S. Court of Appeals for the Federal Circuit? We address each of these issues in turn below.

## ARGUMENT

### I. Effect of *Loper Bright* on This Case

*Loper Bright* does not alter the statutory standard of review that this Court should apply in reviewing Commerce's *Final Determination*. *Loper Bright* also does not eliminate deference to agency interpretations, particularly where there is a factual question or mixed question of fact and law. *Loper Bright* also does not disturb statutory *stare decisis*. Thus, Federal Circuit decisions affirming Commerce's interpretation of the antidumping statute and related methodologies remain good law and binding on this Court.

*First*, the standard of review that this Court is required to apply in this case remains unchanged, notwithstanding *Loper Bright*. This standard encompasses the deferential "substantial evidence" standard that applies under the Administrative Procedures Act ("APA") to agency factfinding, and even agency decisions on mixed questions of fact and law. The Supreme

1

Court in *Loper Bright* specifically reaffirmed that, under the APA, judicial review "of agency policymaking and factfinding {is} deferential." 144 S. Ct. at 2261. The Supreme Court cited its precedents in *Gray* and *Hearst* for the proposition that deference may also be due "where application of a statutory term {is} sufficiently intertwined with the agency's factfinding." *Id.* at 2260. Thus, Commerce's factual determinations, and even mixed questions of fact and law, are subject to the highly deferential substantial evidence standard. *See* 19 U.S.C. § 1516a(b)(1)(B)(i); *Nippon Steel Corp. v. United States*, 458 F.3d 1345, 1352 (Fed. Cir. 2006) (stating there is a "high barrier to reversal" of Commerce's factual determinations).

*Second*, *Loper Bright* also does not disturb statutory *stare decisis*. The Supreme Court specifically stated: "we do not call into question prior cases that relied on the *Chevron* framework. The holdings of those cases that specific agency actions are lawful . . . are still subject to statutory *stare decisis* despite our change in interpretive methodology." *Loper Bright*, 144 S. Ct. at 2273 (emphasis in original). Thus, Federal Circuit decisions affirming Commerce's interpretation of the antidumping statute or antidumping methodology under the *Chevron* standard remain good law and are binding on this Court.

*Third*, *Loper Bright* is only relevant when the statutory text is ambiguous. Prior to *Loper Bright*, under *Chevron* Step One, a reviewing court would apply the customary tools of statutory interpretation to determine whether a statute's meaning is ambiguous. *See Pesquera Mares Australes Ltda. v. United States*, 266 F.3d 1372, 1380 (Fed. Cir. 2001). If the court found the text to be unambiguous, the court would rule on the basis of the statutory text. *See, e.g.*, *Asociación de Exportadores e Industriales de Aceitunas de Mesa v. United States*, 429 F. Supp. 3d 1325, 1342 (CIT 2020); *Qingdao Qihang Tyre Co. v. United States*, 308 F. Supp. 3d 1329, 1346 (CIT 2018). *Loper Bright* does not disturb this principle. 144 S. Ct. at 2264 (acknowledging that

*Chevron* deference does not apply when the statute is unambiguous). The change in approach articulated under *Loper Bright* is thus only applicable where the reviewing court finds the meaning of statutory text to be ambiguous.

*Fourth*, although the Supreme Court in *Loper Bright* tasked a reviewing court to resolve any ambiguities in statutory language by "us{ing} every tool at their disposal to determine the best reading of the statute . . .{,}" 144 S. Ct. at 2266, it also acknowledged that Congress has often enacted statutes under which "the agency is authorized to exercise a degree of discretion." *Id.* at 2263. In other words, where Congress has delegated discretion to an agency, the courts must respect an agency's interpretation of the statute pursuant to that delegation.

The Supreme Court then provided examples of statutory delegations where an agency interpretation should be accorded deference. First, some statutes "expressly delegate" to an agency "the authority to give meaning to a particular statutory term." *Loper Bright*, 144 S. Ct. at 2263 (citing *Batterton v. Francis*, 432 U.S. 416, 425 (1977) (emphasis deleted)). Second, some statutes "empower an agency to prescribe rules to 'fill up the details' of a statutory scheme." *Id.* (*quoting Wayman v. Southard*, 10 Wheat. 1, 43 (1825)). Third, a statute may delegate authority to "regulate subject to the limits imposed by a term or phrase that 'leaves agencies with flexibility,'" *id.* (quoting *Michigan v. EPA*, 576 U.S. 743, 752 (2015)), where such terms might include "appropriate" or "reasonable." *Id*.

*Fifth*, the Supreme Court's decision in *Loper Bright* leaves undisturbed other forms of deference, including deference to long-standing agency interpretations under *Skidmore*, 144 S. Ct. at 2262 (citing *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)), and deference to an agency's interpretation of its own regulations under *Auer* and *Kisor*. *See Kisor v. Wilkie*, 588 U.S. 558, 563 (2019).

The Supreme Court explained that, under the APA, although courts must exercise independent judgment in determining the meaning of statutory provisions, the exercise of that judgment involves, "as {it has} from the start", "seek{ing} aid from the interpretations of those responsible for implementing particular statutes." *Loper Bright*, 144 S. Ct. at 2262. The Supreme Court stated further that "{s}uch interpretations 'constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance' consistent with the APA." *Id.* (quoting *Skidmore*, 323 U.S. at 140). In addition, the Supreme Court held that "interpretations issued contemporaneously with the statute at issue, and which have remained consistent over time, may be especially useful in determining the statute's meaning." *Id.* (citing *Skidmore*, 323 U.S. at 140; *Whitman v. American Trucking Assns., Inc.*, 310 U.S. 457, 549 (2001)).

In so stating, the Supreme Court cited *Skidmore*, which stands for the proposition that an agency's interpretation of its own statute "constitute{s} a body of experience and informed judgment to which courts and litigants may properly resort for guidance," 323 U.S. at 140. As stated in *Skidmore*, the deference accorded in a particular case "will depend upon the thoroughness evident in {the agency's} consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade . . ." *Id.* Thus, *Skidmore* remains good law, and an important consideration in this Court's interpretation of statutory text that may be ambiguous is the existence of longstanding, consistent agency interpretations. *Loper Bright* also does not implicate the deference due an agency's interpretation of its own regulations, under the principles set forth in *Auer* and *Kisor*. *See Kisor*, 588 U.S. at 563.

In sum, *Loper Bright* does not alter this Court's standard of review or eliminate deference to agency interpretation. This Court may rule on the basis of the statutory text where it is unambiguous. Where the statutory text is ambiguous, *Loper Bright* leaves room for the Court to accord deference to Commerce's longstanding interpretations of the statute, as this Court has consistently done. *See N. Star Steel Ohio v. United States*, 824 F. Supp. 1074, 1078 (CIT 1993). This Court should therefore maintain the same standard of review for Commerce's interpretations in the *Final Results* and accord deference as appropriate.

*Loper Bright* also has limited relevance to the issues presented in this appeal. As discussed below, the Federal Circuit decisions affirming Commerce's differential pricing methodology ("DPM") and its constituent elements under the *Chevron* framework remain good law and are binding on this Court, pursuant to statutory *stare decisis*. Further, *Loper Bright* is not implicated because the Federal Circuit did not find the statutory text to be ambiguous in *Stupp I* or *Marmen*, and therefore did not accord deference to the agency's interpretation under *Chevron* step 2. Thus, the Supreme Court's guidance in *Loper Bright* regarding the role of the Court in interpreting ambiguous statutory text is inapplicable.

Additionally, Commerce's application of the Cohen's *d* test is not a pure question of statutory interpretation that implicates *Loper Bright*. To the contrary, whether Commerce's application of the Cohen's *d* test is lawful is a mixed question of law and fact, and thus subject to the deferential substantial evidence standard. Further, the statute gives the agency broad discretion to make methodological choices such that Commerce's explanation of its choice must only be reasonable, not "the best" in the eyes of this Court.

In sum, *Loper Bright* does not alter this Court's standard of review or eliminate deference to agency interpretation. This Court may rule on the basis of the statutory text where it is

**Consol. Court No. 23-00187**

unambiguous. Where the statutory text is ambiguous, *Loper Bright* leaves room for the Court to accord deference to Commerce's longstanding interpretations of statute, as the Court has consistently done. *See N. Star Steel Ohio*, 824 F. Supp. at 1078. The Court should therefore be judicious in reviewing Commerce's interpretations in the *Final Results* and accord deference as appropriate.

## II.     Effect of *Loper Bright* on Cases Decided by the Federal Circuit

As explained above, *Loper Bright* does not have any effect on the Federal Circuit's repeated affirmation of the lawfulness of Commerce's methodological choices. The Supreme Court expressly addressed this question in *Loper Bright* and was clear that the doctrine of statutory *stare decisis* still holds. The Supreme Court stated: "we do not call into question prior cases that relied on the *Chevron* framework. The holdings of those cases that specific agency actions are lawful . . . are still subject to statutory *stare decisis* despite our change in interpretive methodology." *Loper Bright*, 144 S. Ct. at 2273. Thus, this Court is required to follow binding Federal Circuit precedents decided prior to *Loper Bright*.

For example, the Federal Circuit affirmed Commerce's methodological choice of the threshold for the Cohen's *d* coefficient in *Mid-Continent Steel & Wire, Inc. v. United States*, 940 F.3d 662 (Fed. Cir. 2019). In that case, the Federal Circuit held that Commerce's rationale for using the 0.8 threshold was reasonable and within "Commerce's exercise of the wide discretion left to it under 19 U.S.C. § 1677f-1(d)(1)(B)." *Id.* at 673. Thus, the fact that the statute does not define what it means for prices to "differ significantly" – or how Commerce is to measure whether prices "differ significantly" – means that the statute "empower{s} an agency to prescribe rules to 'fill up the details' of a statutory scheme," *Loper Bright*, 144 S. Ct. at 2263 (*quoting Wayman*, 10 Wheat. at 43). *Mid-Continent Steel & Wire* is directly on point and binding on this present case.

### III.     Effect of *Stupp* on the Present Case

The Federal Circuit did not hold Commerce's use of Cohen's *d* unlawful in *Stupp Corp. v. United States*, 5 F.4th 1341 (Fed. Cir. 2021) ("*Stupp I*"). Rather, the Federal Circuit raised concerns that Commerce's application of the Cohen's *d* test may in some cases violate statistical assumptions of normality, sufficient observation size, and roughly equal variances described by Professor Cohen, and remanded to Commerce for further explanation. Commerce had explained that "the assumptions of normality, . . . and roughly equal variances" are not relevant when it applies the Cohen's *d* test to the full population of export sales. *Id.* at 1360. Following the Federal Circuit's remand order, Commerce has provided further explanation to support its use of the Cohen's *d* test as part of the DPM. *See Stupp Corp. v. United States*, 619 F. Supp. 3d 1314 (CIT 2023) ("*Stupp IV*"), *appeal docketed*, No. 23-1663 (Fed. Cir. Mar. 27, 2023). Specifically, Commerce provided additional explanation of why the assumptions of normality, sufficient observation size, and roughly equal variances are only relevant as a matter of statistical significance, and do not apply when analyzing a whole population. *Id.*

Post *Stupp I*, this Court has affirmed Commerce's continued use of the Cohen's *d* as part of the DPM in multiple cases, and held that Commerce's reasonable explanation of its methodology satisfies the substantial evidence standard. *Id.* at 1328; *SeAH Steel Corp. v. United States*, 619 F. Supp. 3d 1309, 1313 (CIT 2023); *Marmen Inc. v. United States*, 627 F. Supp. 3d 1312, 1320-22 (CIT 2023), *appeal docketed*, No. 23-1877 (Fed. Cir. May 11, 2023) ("*Marmen II*"). In *SeAH Steel Corp.*, this Court rejected a motion for reconsideration based on *Stupp I*, holding that "Commerce's use of a population, rather than a sample, in the application of the Cohen's *d* test sufficiently negates the questionable assumptions about thresholds that were raised in *Stupp*." 619 F. Supp. 3d at 1313.

Similarly, in *Marmen Inc.*, this Court stated that:

**Consol. Court No. 23-00187**

> Based on Commerce's explanation, this Court concludes that Commerce's application of the Cohen's *d* test to determine whether there was a significant pattern of differences was reasonable because Commerce applied the Cohen's *d* test to a population rather than a sample.

627 F. Supp. 3d at 1322. These decisions affirm Commerce's continued use of the Cohen's *d* test as part of the DPM as reasonable, supported by substantial evidence, and in accordance with law. This Court should reach the same conclusion in this case.

## CONCLUSION

Sierra Pacific respectfully requests that this Court apply the standard set by Federal Circuit precedents, consistent with the standard of review set forth in *Loper Bright*.

Dated: January 31, 2025

/s/
David J. Ross
Jeffrey I. Kessler
Stephanie E. Hartmann

Wilmer Cutler Pickering Hale and Dorr LLP
2100 Pennsylvania Avenue NW
Washington, D.C. 20037
(202) 663-6000

*Counsel for Defendant-Intervenor Sierra Pacific Industries, including its subsidiary Seneca Sawmill Company*

# CERTIFICATE OF COMPLIANCE

The undersigned counsel hereby certifies that this brief complies with the 10-page limitation described in the Court's order of January 17, 2025. This brief contains 2,304 words according to the word-count function of the word-processing software used to prepare the memorandum, excluding the table of contents, table of authorities, and counsel's signature block.

/s/ David J. Ross
David J. Ross
Wilmer Cutler Pickering Hale and Dorr LLP
2100 Pennsylvania Avenue NW
Washington, D.C. 20037
(202) 663-6000

*Counsel for Defendant-Intervenor Sierra Pacific Industries, including its subsidiary Seneca Sawmill Company*

January 31, 2025