IN THE UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: THE HONORABLE JENNIFER CHOE-GROVES, JUDGE

| | |
|---|---|
| GOVERNMENT OF CANADA, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>UNITED STATES,<br><br>    Defendant,<br><br>and<br><br>COMMITTEE OVERSEEING ACTION FOR LUMBER INTERNATIONAL TRADE INVESTIGATIONS OR NEGOTIATIONS, et al.,<br><br>    Defendant-Intervenors. | Consol. Court No. 23-00187 |

**SUPPLEMENTAL BRIEF ON *LOPER BRIGHT* OF THE COMMITTEE OVERSEEING ACTION FOR LUMBER INTERNATIONAL TRADE INVESTIGATIONS OR NEGOTIATIONS**

Andrew W. Kentz
Zachary J. Walker

**PICARD KENTZ & ROWE LLP**
1155 Connecticut Avenue NW
Suite 700
Washington, DC 20036
(202) 888-0595

*Counsel to the COALITION*

January 31, 2025

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES**………………………………………………...…………...…………ii

**RESPONSE TO QUESTION ONE**……………………………………………………………………1

*Can the Parties address what effect, if any, Loper Bright has on how this Court should review Commerce's differential pricing determination?*

**RESPONSE TO QUESTION TWO**……………………………………………………………….5

*How should the Court view cases that were decided by the U.S. Court of Appeals for the Federal Circuit under the Chevron framework prior to Loper Bright?*

**RESPONSE TO QUESTION THREE**……………………………………………………………....8

*How is this case affected by the Stupp case that is currently on appeal before the U.S. Court of Appeals for the Federal Circuit?*

# TABLE OF AUTHORITIES

## Cases

*Apex Frozen Foods Private Ltd. v. United States*,
  862 F.3d 1337 (Fed. Cir. 2017) .................................................................................. 7

*Asociacion de Exportadores e Industriales de Aceitunas de Mesa v. United States*,
  102 F.4th 1252 (Fed. Cir. 2024) ............................................................................. 2, 3

*Bartolo v. Garland*,
  No. 23-1578, 2025 WL 32825 (9th Cir. Jan. 6, 2025) ............................................... 6

*Borusan Mannesmann Boru Sanayi ve Ticaret A.S. v. United States*,
  608 Fed. Appx. 948 (Fed. Cir. 2015) ......................................................................... 7

*Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*,
  467 U.S. 837 (1984) .............................................................................................. 1, 5-6

*Dillinger France S.A. v. United States*,
  981 F.3d 1318 (Fed. Cir. 2020) .................................................................................. 5

*Garg Tube Export LLP v. United States*,
  740 F. Supp. 3d 1355 (Ct. Int'l Trade 2024) .......................................................... 3-4

*JBF RAK LLC v. United States*,
  790 F.3d 1358 (Fed. Cir. 2015) .................................................................................. 7

*Lichter v. United States*,
  334 U.S. 742 (1948) ..................................................................................................... 3

*Loper Bright Enterprises v. Raimondo*,
  603 U.S. 369 (2024) ............................................................................................ *passim*

*Micron Technology, Inc. v. United States*,
  243 F.3d 1301 (Fed. Cir. 2001) .................................................................................. 4

*Qingdao Sea-Line Trading Co. v. United States*,
  766 F.3d 1378 (Fed. Cir. 2014) .................................................................................. 8

*SmithKline Beecham Corp. v. Apotex Corp.*,
  439 F.3d 1312 (Fed. Cir. 2006) (same) ..................................................................... 5

*Stupp Corp. v. United States*,
  5 F.4th 1341 (Fed. Cir. 2021) ..................................................................................... 7

*Tennessee v. Becerra*,
  117 F.4th 348 (6th Cir. 2024) ..................................................................................... 6

*United States v. Great Am. Ins. Co. of New York*,
    738 F.3d 1320 (Fed. Cir. 2013) ................................................................................... 5

*United States v. Zenith Radio Corp.*,
    562 F.2d 1209 (CCPA 1977) ...................................................................................... 3

*Ventura Coastal, LLC v. United States*,
    736 F. Supp. 3d 1342 (Ct. Int'l Trade 2024) ........................................................ 2, 3

## Statutes

19 U.S.C. § 1516a ................................................................................................................ 1

19 U.S.C. § 1677-2 .............................................................................................................. 2

19 U.S.C. § 1677f-1 ........................................................................................................ 3, 7

19 U.S.C. § 3512 ................................................................................................................. 4

## Other Authorities

*North American Free Trade Agreement (NAFTA), Article 1904 Binational Panel Review:
    Panel Order To Stay Proceedings*, 89 Fed. Reg. 56,305 (Dep't Commerce July 9, 2024) ....... 8

**Consol. Court No. 23-00187**

## SUPPLEMENTAL BRIEF ON *LOPER BRIGHT* OF THE COMMITTEE OVERSEEING ACTION FOR LUMBER INTERNATIONAL TRADE INVESTIGATIONS OR NEGOTIATIONS

Pursuant to the Court's Order of January 17, 2025, the Committee Overseeing Action for Lumber International Trade Investigations or Negotiations ("COALITION") respectfully submits this supplemental brief responding to the Court's questions regarding the relevance of the U.S. Supreme Court's decision in *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 144 S. Ct. 2244 (2024) to the issues presented in this appeal. *See* Order, Jan. 17, 2025, ECF 141.

**Question 1:** Can the Parties address what effect, if any, *Loper Bright* has on how this Court should review Commerce's differential pricing determination?

*Loper Bright* does not alter how this Court should review Commerce's application of its differential pricing methodology ("DPM"). Importantly, while *Loper Bright* overruled *Chevron* and deference to "permissible" interpretations of ambiguous statutes, *see Loper Bright*, 603 U.S. at 400, the Supreme Court retained other general legal principles and deference doctrines that are important to this Court's review of Commerce's DPM.

As an initial matter, *Loper Bright* does not alter the standard of review applied by this Court in reviewing Commerce's final results. *See* 19 U.S.C. § 1516a(b)(1)(B)(i). This standard of review incorporates the deferential "substantial evidence" standard, under which the Court shall "hold unlawful any determination, finding, or conclusion found . . . to be unsupported by substantial evidence on the record . . . ." *Id.* *Loper Bright* does not disturb the significant deference accorded to Commerce's factfinding but rather emphatically reaffirms that agency findings of fact, when supported by substantial evidence, are binding on the reviewing court. *See Loper Bright*, 603 U.S. at 392 (discussing the Administrative Procedure Act's substantial evidence standard of review).

1

**Consol. Court No. 23-00187**

Additionally, *Loper Bright* does not permit reviewing courts to reject discretionary determinations made when Congress has conferred upon the agency the power to make that determination. *See Loper Bright*, 603 U.S. at 394 ("In a case involving an agency, of course, the statute's meaning may well be that the agency is authorized to exercise a degree of discretion."). The Supreme Court emphasized in *Loper Bright* that the "best reading of a statute" may be that Congress delegated discretionary authority to an agency. *Id.*; *see also Ventura Coastal, LLC v. United States*, 736 F. Supp. 3d 1342, 1356 (Ct. Int'l Trade 2024) ("In exercising their judgment, courts may determine that Congress explicitly delegated authority to an agency to give meaning to a particular statutory term." (citing *Loper Bright*, 603 U.S. at 394-95)). In such circumstances, the court fulfills its reviewing "role by recognizing constitutional delegations, 'fix{ing} the boundaries of {the} delegated authority,' . . . and ensuring the agency has engaged in 'reasoned decisionmaking' within those boundaries." *Loper Bright*, 603 U.S. at 395 (internal quotation marks altered) (citations omitted).

The Federal Circuit has similarly explained that Congress, through the use of nonspecific statutory language, invokes its "ability to delegate power under broad general directives." *Asociacion de Exportadores e Industriales de Aceitunas de Mesa v. United States*, 102 F.4th 1252, 1259 (Fed. Cir. 2024) (citation omitted). In that case, the Federal Circuit explained that the term "substantially dependent" used by Congress in section 771B of the Tariff Act of 1930, as amended (the "Act"), is general in nature, thus indicating that Congress intended to delegate the question of whether particular facts satisfy the statute's requirements to Commerce. *Id.* at 1259-60. Specifically, the Federal Circuit held that "Congress's use of the term 'substantially dependent,' as opposed to specifying a minimum percentage, reflects 'an expression of its well-considered judgment as to the degree of administrative authority which it was necessary to

grant.'" *Id.* (quoting *Lichter v. United States*, 334 U.S. 742, 784, (1948)); *see also United States v. Zenith Radio Corp.*, 562 F.2d 1209 (CCPA 1977) (holding that Congress's use of the terms "bounty" and "grant," which were "broad but not ambiguous," demonstrated Congress's intent to provide the agency "wide latitude" within which to determine the existence or non-existence of a bounty or a grant).

Because of these legal principles and deference doctrines, *Loper Bright* should not materially impact this Court's consideration of the DPM issues presented in this appeal. As noted in the Court's order on supplemental briefing, the CIT has discussed the applicability of *Loper Bright* to judicial review of Commerce's DPM in *Garg Tube Export LLP v. United States*. *See Garg Tube Export LLP v. United States*, 740 F. Supp. 3d 1355 (Ct. Int'l Trade 2024). In that case, the CIT ultimately concluded that *Loper Bright* does not materially affect how the CIT reviews Commerce's DPM because the relevant "subsection of the statute, read along with the section as a whole, confirms that Congress meant to afford the agency with flexibility and discretion in making the relevant determination." *Id.* at 1367.

The CIT reached this conclusion after exercising its independent judgment and finding that Congress gave Commerce flexibility in section 777A(d)(1)(B) of the Act "by its use of the open-ended term 'differ significantly.'" *Id.* at 1366-67; *see also Ventura Coastal*, 736 F. Supp. 3d at 1357 (describing the significance of Congress's use of open-ended terms). *Garg Tube* went on to explain that "Congress' mandate to Commerce to assess not merely whether prices differ, but whether they differ 'significantly' necessarily affords Commerce flexibility to assess the degree of difference depending on the particular context." *Garg Tube*, 740 F. Supp. 3d at 1367.

Moreover, *Garg Tube* did not rely solely on the statutory text. Instead, the CIT also examined the Uruguay Round Agreements Act's ("URAA") Statement of Administrative Action

3

("SAA").[1] *Id.*; *see also Loper Bright*, 603 U.S. at 454 (directing courts to deploy the "whole legal toolkit"). The CIT found that the SAA "confirms Congress' delegation under Section 1677f-1." *Id.* Specifically, the court observed that Congress's instruction that Commerce "proceed 'case by case' confirms the flexibility provided by the words of the statute." *Garg Tube*, 740 F. Supp. 3d at 1367. Thus, the court concluded that it was "clear that Congress delegated to Commerce the power to use its discretion when determining whether prices differ significantly under 19 U.S.C. § 1677f-1." *Id.* This Court should similarly find that Congress gave Commerce flexibility in assessing whether there is a pattern of export prices that differ significantly.

Finally, *Loper Bright* does not provide the Canadian Respondents with the opportunity to raise issues related to Commerce's DPM that have been waived. Specifically, the Canadian Respondents' reply brief invites the Court to consider arguments regarding Commerce's use of the ratio test as part of its DPM in light of *Loper Bright*.[2] Canadian Parties' Reply Br. in Supp. of Mot. for J. on the Agency R. Regarding Application of Differential Pricing Analysis at 31-33, Oct. 10, 2024 ("CP Reply Br."), ECF 125 (conf.), 126 (public). This line of argument was not presented in the Canadian Respondents' opening brief and was therefore waived. *See, e.g.*,

---

[1] The SAA is "an authoritative expression by the United States concerning the interpretation and application of the Uruguay Round Agreements and this Act in any judicial proceeding in which a question arises concerning such interpretation or application." 19 U.S.C. § 3512(d); *see also Micron Technology, Inc. v. United States*, 243 F.3d 1301, 1309 (Fed. Cir. 2001) (noting that "{t}he SAA, of course, is more than mere legislative history").

[2] The Canadian Respondents acknowledged in a footnote in their opening brief that Commerce's application of its ratio test to determine if a "pattern" of significantly differing pricing exists has been sustained by the Federal Circuit. Canadian Parties' Mot. for J. on the Agency R. Regarding Application of Differential Pricing Analysis and Accompanying Mem. of Law and P. & A. at 44 n.172, Feb. 5, 2024, ECF 113 (conf.), 114 (public). Thus, rather than present arguments challenging the ratio test, the Canadian Respondents admitted that Commerce's use of the ratio test in its DPM had been sustained in binding precedent. *See id.*

*United States v. Great Am. Ins. Co. of New York*, 738 F.3d 1320, 1328 (Fed. Cir. 2013) (noting that it is "well established that arguments . . . not appropriately developed in a party's briefing may be deemed waived" (citations omitted)); *SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1319-20 (Fed. Cir. 2006) (same). Moreover, as explained below in response to question two, *Loper Bright* does not call into question holdings made under the *Chevron* framework. *Loper Bright*, 603 U.S. at 412. Thus, the Federal Circuit's holding in *Dillinger France S.A. v. United States* sustaining Commerce's use of the ratio test to determine if a "pattern" of significantly differing pricing exists remains binding authority. *See Dillinger France S.A. v. United States*, 981 F.3d 1318, 1325 (Fed. Cir. 2020) (holding that "Commerce's interpretation of pattern was reasonable").

**Question 2:** How should the Court view cases that were decided by the U.S. Court of Appeals for the Federal Circuit under the *Chevron* framework prior to *Loper Bright*?

The Supreme Court expressly declined to upend cases decided under the *Chevron* framework, stating that its decision to overrule *Chevron* "do{es} not call into question prior cases that relied on the *Chevron* framework." *Loper Bright*, 603 U.S. at 412. *Loper Bright* went on to explain that "{t}he holdings of those cases that specific agency actions are lawful— including the Clean Air Act holding of *Chevron* itself—are still subject to statutory *stare decisis* despite our change in interpretive methodology." *Id.* (citations omitted). In its guidance to lower courts, the Supreme Court explained that the "{m}ere reliance on *Chevron* cannot constitute a 'special justification'" that would justify overruling prior holdings decided under the *Chevron* framework, "because to say a precedent relied on *Chevron* is, at best, 'just an argument that the precedent was wrongly decided.'" *Id.* (citations omitted). Thus, this Court is required to follow Federal Circuit precedent decided prior to *Loper Bright*.

5

Federal courts have relied on this aspect of the Supreme Court's decision in *Loper Bright* to reject arguments attempting to call into question existing holdings made under the *Chevron* framework. For example, in *Tennessee v. Becerra*, the Sixth Circuit rejected the State of Tennessee's challenge to a rule promulgated by the U.S. Department of Health and Human Services where Tennessee argued that *Loper Bright* undermined the validity (and precedential value) of decisions made under the *Chevron* framework. *Tennessee v. Becerra*, 117 F.4th 348, 362-64 (6th Cir. 2024). Responding to Tennessee's argument, the 6th Circuit explained that the Supreme Court rejected the contention that *Loper Bright* "abrogated the precedential effect" of prior holding that "relied on *Chevron*." *Id.* at 364 (explaining that "*Loper Bright* does not dictate abandonment" of earlier holdings "because it does not 'call into question prior cases that relied on *Chevron*'" (quoting *Loper Bright*, 603 U.S. at 412)).

The Ninth Circuit has likewise emphasized that it remains bound by decisions made under the *Chevron* framework. *See Bartolo v. Garland*, No. 23-1578, 2025 WL 32825, at *2 (9th Cir. Jan. 6, 2025). Specifically, the Ninth Circuit explained in *Bartolo v. Garland* that the Supreme Court provided courts with the "clear directive" in *Loper Bright* that prior cases that relied on the *Chevron* framework remain precedential and binding. *Id.* This Court is similarly bound by the Supreme Court's "clear directive" to apply the holdings of decisions made under the *Chevron* framework in reviewing the challenged agency action, as these prior holdings remain binding authorities.

The holdings of several Federal Circuit cases are relevant to the issues regarding the lawfulness of Commerce's methodological choices. These holdings remain binding post-*Loper Bright*. For example, Commerce's application of its meaningful difference test to explain why the average-to-average ("A-A") method cannot account for significantly disparate pricing before

6

it resorts to the average-to-transaction ("A-T") method has been sustained by the Federal Circuit. *Apex Frozen Foods Private Ltd. v. United States*, 862 F.3d 1337, 1345-46 (Fed. Cir. 2017) ("*Apex II*"). In *Stupp Corp. v. United States*, the Federal Circuit applied its holding in *Apex II* to dispose of challenges to Commerce's meaningful difference test, reiterating its prior holding that the meaningful difference test satisfies the statutory directive that Commerce explain why the A-A method is inadequate in certain cases. *Stupp Corp. v. United States*, 5 F.4th 1341, 1355-56 (Fed. Cir. 2021) (citing *Apex II*, 862 F.3d at 1348-49). These cases remain controlling precedent and are dispositive of the Canadian Respondents' arguments contesting Commerce's meaningful difference test.

Federal Circuit precedent is likewise dispositive of the argument raised by the Canadian Respondents that Commerce was required to determine whether the pattern of export prices that differ significantly among purchasers, regions, or time periods could be explained by price volatility or seasonality. *See JBF RAK LLC v. United States*, 790 F.3d 1358, 1367-68 (Fed. Cir. 2015); *Borusan Mannesmann Boru Sanayi ve Ticaret A.S. v. United States*, 608 Fed. Appx. 948 (Fed. Cir. 2015). These cases hold that section 777A(d)(1)(B) of the Act does not require Commerce to determine why a firm's sales prices differ significantly between time periods before applying the A-T method. *See, e.g.*, *JBF RAK LLC*, 790 F.3d at 1368 ("Section 1677f-1(d)(1)(B) does not require Commerce to determine the reasons why there is a pattern of export prices for comparable merchandise that differs significantly among purchasers, regions, or time periods . . . ."). In summary, *Loper Bright* does not provide a justification to depart from settled and binding precedent sustaining multiple aspects of Commerce's DPM.

**Consol. Court No. 23-00187**

**Question 3:** **How is this case affected by the *Stupp* case that is currently on appeal before the U.S. Court of Appeals for the Federal Circuit?**

The issue currently on appeal before the Federal Circuit in *Stupp Corp.* involves whether Commerce sufficiently explained its application of the Cohen's *d* test as part of its DPM.[3] While this case involves a different record and analysis of unique sales data, *see Qingdao Sea-Line Trading Co. v. United States*, 766 F.3d 1378, 1387 (Fed. Cir. 2014) (recognizing "that each administrative review is a separate exercise of Commerce's authority that allows for different conclusions based on different facts in the record"), the Federal Circuit's decision in *Stupp Corp.* is likely to provide guidance that would be relevant to this action as both cases involve challenges to Commerce's use of the Cohen's *d* test to identify significant price differences.[4]

                                        Respectfully submitted,

                                        */s/ Zachary J. Walker*

                                        Andrew W. Kentz
                                        Zachary J. Walker

                                        **PICARD KENTZ & ROWE LLP**
                                        *Counsel to the COALITION*

Dated: January 31, 2025

---

[3] The Federal Circuit has scheduled oral argument in *Stupp Corp.* for March 5, 2025. *See* Notice of Oral Argument, *Stupp Corp. v. United States*, No. 23-1663 (Fed. Cir. Jan. 17, 2025), ECF 105.

[4] Various Canadian respondent interested parties sought (and were granted) a stay of the NAFTA binational panel review of Commerce's final determination of sales at less than fair value until the issuance of a mandate in *Stupp Corp.* based on their position that the outcome of that litigation may resolve the respondents' challenges to Commerce's DPM. *See North American Free Trade Agreement (NAFTA), Article 1904 Binational Panel Review: Panel Order To Stay Proceedings*, 89 Fed. Reg. 56,305 (Dep't Commerce July 9, 2024).

**CERTIFICATE OF COMPLIANCE**

The undersigned counsel hereby certifies that this supplemental brief complies with the 10 page limit set in the Court's Order of January 17, 2025. *See* ECF 141.

    Respectfully submitted,

    */s/ Zachary J. Walker*
    Zachary J. Walker

    **PICARD KENTZ & ROWE LLP**
    *Counsel to the COALITION*

Dated: January 31, 2025