# UNITED STATES COURT OF INTERNATIONAL TRADE
## BEFORE THE HONORABLE JENNIFER CHOE-GROVES, JUDGE

| | |
|---|---|
| The Government of Canada, *et al.*,<br><br>*Plaintiffs*,<br><br>Canfor Corporation, *et al.*,<br><br>and<br><br>Committee Overseeing Action for Lumber International Trade Investigations or Negotiations,<br><br>*Consolidated Plaintiffs*,<br><br>Canfor Corporation, *et al*.,<br><br>*Plaintiff-Intervenors*,<br><br>v.<br><br>The United States,<br><br>*Defendant*,<br><br>Committee Overseeing Action for Lumber International Trade Investigations or Negotiations, *et al.*,<br><br>*Defendant-Intervenors*. | **Consol. Court No.**<br>**1:23-cv-00187-JCG** |

**CANADIAN PARTIES'[1] SUPPLEMENTAL BRIEF ADDRESSING *LOPER BRIGHT***

January 31, 2025

---

[1] The "Canadian Parties" filing this brief are: **Plaintiffs** Government of Canada, Government of Alberta, Government of Québec, British Columbia Lumber Trade Council, Fontaine, Inc., Interfor Corporation, and Interfor Sales & Marketing Ltd.; **Consolidated Plaintiffs/Plaintiff-Intervenors** Canfor Corporation, Canadian Forest Products Ltd., Canfor Wood Products Marketing, Ltd., Tolko Industries, Ltd., Tolko Marketing & Sales, Ltd., and Gilbert Smith Forest Products, Ltd.; and **Plaintiff-Intervenors** Government of Ontario, Carrier Forest Products, Ltd., Carrier Lumber, Ltd., Chaleur Forest Products Inc., Chaleur Forest Products L.P., Olympic Industries, Inc., Olympic Industries ULC, West Fraser Mills, Ltd., J.D. Irving, Limited., Delco Forest Products Ltd., Devon Lumber Co. Ltd., H.J. Crabbe & Sons Ltd., Langevin Forest Products Inc., Marwood Ltd., North American Forest Products Ltd., and Twin Rivers Paper Co. Inc.

/s/ Eric S. Parnes
Eric S. Parnes
Joanne E. Osendarp
Lynn Kamarck
Alan Kashdan
**Blank Rome LLP**
1825 Eye Street, NW
Washington, DC 20006
Tel: (202) 420-5479
Email: eric.parnes@blankrome.com
*Counsel to the Government of Canada*

/s/ Lynn Fischer Fox
Lynn Fischer Fox
Gina M. Colarusso
Archana Rao P. Vasa
**Arnold & Porter Kaye Scholer LLP**
601 Massachusetts Avenue, NW
Washington, DC 20001-3743
Tel: (202) 942-5601
Email: lynn.fischerfox@arnoldporter.com
*Counsel to the Government of Alberta*

/s/ H. Deen Kaplan
H. Deen Kaplan
Jonathan T. Stoel
**Hogan Lovells US LLP**
Columbia Square Building
555 Thirteenth Street, NW
Washington, DC 20004
Tel: (202) 637-5799
Email: deen.kaplan@hoganlovells.com
*Counsel to the Government of Ontario*

/s/ Nancy Noonan
Nancy Noonan
**ArentFox Schiff LLP**
1717 K Street, NW
Washington, DC 20006
Tel: (202) 857-6479
Email: nancy.noonan@afslaw.com
*Counsel to the Government of Québec*

/s/ Amy J. Lentz
Amy J. Lentz
Stephanie Wang
**Steptoe LLP**
1330 Connecticut Avenue, NW
Suite 578
Washington, DC 20036
Tel: (202) 429-1320
Email: alentz@steptoe.com
*Counsel to the British Columbia Lumber Trade Council*

*/s/ Mark B. Lehnardt*
Mark B. Lehnardt
**Law Offices of David L. Simon, PLLC**
1025 Connecticut Avenue, NW
Suite 1000
Washington, DC 20036
Tel: (202) 642-4850
Email: MarkLehnardt@DLSimon.com
*Counsel to Fontaine Inc.*

*/s/ Diana Dimitriuc-Quaia*
Matthew Nolan
Diana Dimitriuc Quaia
Mario Torrico
**ArentFox Schiff LLP**
1717 K Street, NW
Washington, DC 20006
Tel: (202) 857-6291
Email: diana.dimitriuc-quaia@afslaw.com
*Counsel to Interfor Corporation, Interfor Sales and Marketing Ltd., Chaleur Forest Products, Inc. and Chaleur Forest Products, L.P.*

*/s/ Henry D. Almond*
Henry D. Almond
Kang Woo Lee
**Arnold & Porter Kaye Scholer LLP**
601 Massachusetts Avenue, NW
Washington, DC 20001-3743
Tel: (202) 942-5698
Email: henry.almond@arnoldporter.com
*Counsel to Tolko Industries Ltd., Tolko Marketing & Sales Ltd., and Gilbert Smith Forest Products Ltd.*

*/s/ R. Will Planert*
R. Will Planert
Donald B. Cameron
Julie C. Mendoza
Brady W. Mills
Mary S. Hodgins
Eugene Degnan
Jordan L. Fleischer
Nicholas C. Duffey
Ryan R. Migeed
**Morris, Manning & Martin, LLP**
1333 New Hampshire Avenue, NW
Suite 800
Washington, DC 20036
Tel.: (202) 216-4819
Email: wplanert@mmmlaw.com
*Counsel to Canfor Corporation, Canadian Forest Products, Ltd., and Canfor Wood Products Marketing Ltd.*

*/s/ Donald Harrison*
Donald Harrison
**Gibson, Dunn & Crutcher, LLP**
1050 Connecticut Avenue, NW
Suite 900
Washington, DC 20036-5306
Tel: (202) 955-8560
Email: dharrison@gibsondunn.com
*Counsel to West Fraser Mills Ltd.*

*/s/ Jeffrey S. Grimson*
Jeffrey S. Grimson
Kristin H. Mowry
Yixin (Cleo) Li
**Mowry & Grimson, PLLC**
5335 Wisconsin Avenue, Suite 810
Washington, DC 20015
Tel:202-688-3610
Email: jsg@mowrygrimson.com
*Counsel to Carrier Forest Products Ltd. and Carrier Lumber Ltd., Olympic Industries, Inc. and Olympic Industries ULC*

*/s/ Jay Charles Campbell*
Jay Charles Campbell
Allison Kepkay
Walter Spak
**White & Case, LLP**
701 Thirteenth Street, NW
Washington, DC 20005-3807
Tel: (202) 626-3632
Email: jcampbell@whitecase.com
*Counsel to J.D. Irving, Limited*

*/s/ Rajib Pal*
Rajib Pal
**Sidley Austin LLP**
1501 K Street, NW
Washington, DC 20005
Tel: (202) 736-8329
Email: rpal@sidley.com
*Counsel to Delco Forest Products Ltd., Devon Lumber Co. Ltd., H.J. Crabbe & Sons Ltd., Langevin Forest Products Inc., Marwood Ltd., North American Forest Products Ltd., and Twin Rivers Paper Co. Inc.*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES...................................................................................................... ii

I. What effect does *Loper Bright* have on how this Court should review Commerce's differential pricing determination?........................................................................................ 1

II. How should the Court view cases that were decided by the U.S. Court of Appeals for the Federal Circuit under the *Chevron* framework prior to *Loper Bright*?................................. 7

III. How is this case affected by the *Stupp* case on appeal before the U.S. Court of Appeals for the Federal Circuit? ............................................................................................................ 9

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Adee Honey Farms v. United States*,
   107 F.4th 1322 (Fed. Cir. 2024) ....................................................................................... 3

*Allen v. United States*,
   No. 05–1133, 2024 WL 4002305 (Fed. Cir. Aug. 30, 2024) ........................................... 8

*Apex Frozen Foods Private Ltd. v. United States*,
   862 F.3d 1337 (Fed. Cir. 2017) ......................................................................................... 2

*Beacon Oil Co. v. O'Leary*,
   71 F.3d 391 (Fed. Cir. 1995) ............................................................................................. 8

*Consol. Edison Co. v. N.L.R.B.*,
   305 U.S. 197 (1938) ......................................................................................................... 4

*Dillinger France S.A. v. United States*,
   981 F.3d 1318 (Fed. Circ. 2020) ................................................................................... 5, 8

*Garg Tube Exp. LLP v. United States*,
   740 F. Supp. 3d 1355 (Ct. Int'l Trade 2024) ................................................................ 3, 4

*JBF RAK LLC v. United States*,
   790 F.3d 1358 (Fed. Cir. 2015) ......................................................................................... 2

*Loper Bright Enterprises v. Raimondo*,
   603 U.S. 369, 144 S. Ct. 2244 (2024) ........................................................................ passim

*Marmen, Inc. v. United States*,
   No. 23-1877 (Fed. Cir. argued Jan. 13, 2025) ................................................................. 9

*Mid Continent Steel & Wire, Inc. v. United States*,
   31 F.4th 1367 (Fed. Cir. 2022) ......................................................................................... 3

*Mid Continent Steel & Wire, Inc. v. United States*,
   940 F.3d 662 (Fed. Cir. 2019) .............................................................................. 2, 7, 9, 10

*Mid Continent Steel & Wire, Inc. v. United States*,
   No. 24-1556 (Fed. Cir. appeal docketed Mar. 11, 2024) ................................................. 9

*Montezuma-Reyes v. Garland*,
   124 F.4th 416 (6th Cir. 2024) ........................................................................................... 4

*Nucor Corp. v. United States*,
  927 F.3d 1243 (Fed. Cir. 2019) .................................................................................................. 2

*Smith v. Orr*,
  855 F.2d 1544 (Fed. Cir. 1988) .................................................................................................. 8

*Stupp Corp. v. United States*,
  5 F.4th 1341 (Fed. Cir. 2021) ............................................................................................ *passim*

*Stupp Corp. v. United States*,
  No. 23-1663 (Fed. Cir. appeal docketed Mar. 27, 2023) ........................................................... 9

**Statutes and Legislative Material**

19 U.S.C. § 1677f-1(d)(1) .................................................................................................................7

19 U.S.C. § 1677f-1(d)(1)(B) ................................................................................................. 2, 4, 5

19 U.S.C. § 1677f-1(d)(1)(B)(i) ..........................................................................................................3

19 U.S.C. § 1677f-1(d)(1)(B)(ii) .........................................................................................................6

Statement of Administrative Action Accompanying the Uruguay Round
  Agreements Act, H.R. Doc. No. 103-316, vol. 1, reprinted in 1994
  U.S.C.C.A.N. 4040 ................................................................................................................ 4, 5

**Other Authorities**

*Explain*, Merriam-Webster Online Dictionary, *available at* https://www.merriam-
  webster.com/dictionary/explain (last visited Jan. 30, 2025) ..................................................... 6

*Pattern*, Concise Oxford English Dictionary of Current English 1002 (9th ed.
  1995) ......................................................................................................................................... 5

*Pattern*, Merriam-Webster Online Dictionary, *available at* https://www.merriam-
  webster.com/dictionary/pattern (last visited Jan. 30, 2025) ..................................................... 5

*Significant*, Merriam-Webster Online Dictionary, *available at*
  https://www.merriam-webster.com/dictionary/significant (last visited Jan. 30,
  2025) ......................................................................................................................................... 3

In response to the Court's Order of January 17, 2025, the Canadian Parties[1] submit this supplemental brief regarding the applicability of the Supreme Court's decision in *Loper Bright Enterprises v. Raimondo*[2] to this Court's review of Commerce's determination.

I. **WHAT EFFECT DOES *LOPER BRIGHT* HAVE ON HOW THIS COURT SHOULD REVIEW COMMERCE'S DIFFERENTIAL PRICING DETERMINATION?**

*Loper Bright* replaces the deferential *Chevron* framework with a mandate for courts to "use every tool at their disposal to determine the best reading of the statute."[3] The mandate of *Loper Bright* applies with full force to the Court's review of Commerce's differential pricing methodology ("DPM") in this case. This is because the U.S. Court of Appeals for the Federal Circuit ("CAFC") has held that the DPM constitutes Commerce's interpretation of the three statutory preconditions for applying an average-to-transaction ("A-T") methodology to calculate dumping margins.[4] Applying the deferential review previously mandated by *Chevron*, courts have in some (but not all) instances sustained aspects of the DPM as reflecting "reasonable" interpretations of those statutory preconditions.[5] Applying *Loper Bright*, the Court may no

---

[1] The "Canadian Parties" filing this brief are: **Plaintiffs** Government of Canada, Government of Alberta, Government of Québec, British Columbia Lumber Trade Council, Fontaine, Inc., Interfor Corporation, and Interfor Sales & Marketing Ltd.; **Consolidated Plaintiffs/Plaintiff-Intervenors** Canfor Corporation, Canadian Forest Products Ltd., Canfor Wood Products Marketing, Ltd., Tolko Industries, Ltd., Tolko Marketing & Sales, Ltd., and Gilbert Smith Forest Products, Ltd.; and **Plaintiff-Intervenors** Government of Ontario, Carrier Forest Products, Ltd., Carrier Lumber, Ltd., Chaleur Forest Products Inc., Chaleur Forest Products L.P., Olympic Industries, Inc., Olympic Industries ULC, West Fraser Mills, Ltd., J.D. Irving, Limited., Delco Forest Products Ltd., Devon Lumber Co. Ltd., H.J. Crabbe & Sons Ltd., Langevin Forest Products Inc., Marwood Ltd., North American Forest Products Ltd., and Twin Rivers Paper Co. Inc.

[2] 603 U.S. 369, 144 S. Ct. 2244 (2024) ("*Loper Bright*").

[3] *Loper Bright*, 144 S. Ct. at 2266.

[4] *Stupp Corp. v. United States*, 5 F.4th 1341, 1352 (Fed. Cir. 2021) ("*Stupp II*").

[5] *See Stupp II*, 5 F.4th at 1353 (collecting cases and explaining that "{o}ur precedents make clear that the relevant standard for reviewing Commerce's selection of statistical tests and numerical cutoffs is reasonableness, not substantial evidence."). Each decision identified in *Stupp II* relied

longer defer to Commerce's interpretation, but must instead apply all of the traditional tools of statutory construction to discern and apply the "best" interpretation of the statute.[6]

"Commerce's differential pricing analysis is an interpretation of {the} statutory language {in 19 U.S.C. § 1677f-1(d)(1)(B)} and thus constitutes an interpretive rule. . . . {I}t interprets the statutory provision that applies to patterns of significantly differing export prices by providing a mechanism for identifying such patterns."[7] With each of the three tests that form part of the DPM, Commerce purports to interpret a particular statutory precondition for application of A-T: (1) the Cohen's *d* test reflects Commerce's interpretation of whether "prices . . . differ significantly," (2) the ratio test implements Commerce's interpretation of the term "pattern" of prices that differ significantly, and (3) the meaningful-difference test provides Commerce's interpretation of whether such differences "cannot be taken into account" using an average-to-average ("A-A") or transaction-to-transaction ("T-T") methodology.[8] After *Loper Bright*, the Court may not sustain application of these tests unless they reflect the best interpretation of the statutory language. They clearly do not.

---

directly on *Chevron* or on precedent relying on *Chevron* as authority for reviewing Commerce's DPM for reasonableness. *See Mid Continent Steel & Wire, Inc. v. United States*, 940 F.3d 662, 667 (Fed. Cir. 2019) (citing, *inter alia*, *Nucor Corp. v. United States*, 927 F.3d 1243, 1248-49 (Fed. Cir. 2019), which relies on *Chevron* to support review for reasonableness); *Apex Frozen Foods Private Ltd. v. United States*, 862 F.3d 1337, 1346-47 (Fed. Cir. 2017) (relying on *Chevron* to support review of Commerce's interpretations for reasonableness); *JBF RAK LLC v. United States*, 790 F.3d 1358, 1363, 1367 (Fed. Cir. 2015) (reviewing Commerce's approach to targeted dumping under *Chevron* framework). *See generally* Canadian Parties' Mot. J. Agency R. Regarding Appl. Differential Pricing Analysis and Accompanying Mem. of Law and Points of Authorities, Apr. 5, 2024, ECF No. 113 ("CP Opening Br.").

[6] *Loper Bright*, 144 S. Ct. at 2273.

[7] *Stupp II*, 5 F.4th at 1352.

[8] *See* CP Opening Br. 42.

2

**First**, Commerce's use of the Cohen's *d* test fails to carry out the statutory precondition that Commerce identify U.S. prices "that differ significantly."[9] Commerce measures "significant differences" only if it identifies categories of U.S. prices that differ among purchasers, regions, or periods of time, by "noticeable" and "measurably large"[10] amounts as compared to other U.S. prices. The Canadian Parties have extensively briefed why Commerce cannot reasonably interpret "prices {that} differ significantly," one of the statutory conditions for use of A-T, to mean prices that do not meet the assumptions underlying Cohen's *d*, but for which Commerce nonetheless calculates a Cohen's *d* of greater than 0.8.[11] The CAFC has rejected, even under the deferential *Chevron*-based reasonableness standard, Commerce's efforts to defend its unprincipled application of Cohen's *d*.[12] *Loper Bright* raises the bar.[13] Commerce's mechanical reliance on the arbitrary results of a misapplied statistical test to define what the statute means by "differ significantly" falls short of reasonableness under *Chevron*, and is even more clearly inconsistent with the best reading of the statute required by *Loper Bright*.

The Court should not follow the course suggested by the recent decision in *Garg Tube Exp. LLP v. United States.*[14] In analyzing a claimed exception to the exhaustion requirement, the *Garg Tube* court concluded that *Loper Bright* does not "materially alter the result" of a challenge

---

[9] 19 U.S.C. § 1677f-1(d)(1)(B)(i).

[10] *Significant*, Merriam-Webster Online Dictionary, *available at* https://www.merriam-webster.com/dictionary/significant (last visited Jan. 30, 2025).

[11] CP Opening Br. 13-57; Canadian Parties' Reply Br. Oct. 10, 2024, ECF No. 126, 9-19, 24-26 ("CP Reply Br.").

[12] *Mid Continent Steel & Wire, Inc. v. United States*, 31 F.4th 1367 (Fed. Cir. 2022); *Stupp II*, 5 F.4th at 1360.

[13] *See, e.g.*, *Adee Honey Farms v. United States*, 107 F.4th 1322, 1331-33 (Fed. Cir. 2024) (engaging in a close analysis of statutory text through the "traditional tools of statutory interpretation" as mandated by *Loper Bright*).

[14] 740 F. Supp. 3d 1355 (Ct. Int'l Trade 2024).

3

to Commerce's reliance on Cohen's *d* because "Congress gave Commerce flexibility by its use of the open-ended term 'differ significantly.'"[15] The *Garg Tube* decision rests on several erroneous premises that, even if accepted as true, do not support the conclusion that Commerce's use of the Cohen's *d* test to define significant difference is lawful. First, the court did not identify any authority for the proposition that the term "significant" is an open-ended term that gives Commerce flexibility, as when Congress uses terms like "appropriate" or "reasonable." Those terms assume a degree of subjectivity that "significant," which connotes an element of quantification, does not.[16] Second, under the reasoning of *Loper Bright*, open-ended terms are not enough to infer that Congress conferred interpretive flexibility on the agency.[17] Finally, even if the statute does, in fact, delegate to Commerce discretion in determining whether prices differ significantly, *Loper Bright* makes clear that this Court retains its obligation to "fix the boundaries of delegated authority."[18] The SAA makes clear that Congress intended significance to be measured contextually, as part of a case-by-case analysis that accounts for characteristics of

---

[15] *Id.* at 1366-67.

[16] "Significant" more closely resembles "substantial," a term that courts have extensive experience interpreting. *See, e.g.*, *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938) (defining "substantial" as used in the "substantial evidence" standard).

[17] *See Montezuma-Reyes v. Garland*, 124 F.4th 416, 420 (6th Cir. 2024), holding that the term "exceptional and extremely unusual hardship" did not trigger deference to the administering agency. ("If broad language alone triggered deference, we'd unwittingly return to construing less than precise words as implicit delegations to the agency that warrant deference. . . . That can't be right. The case that declared '*Chevron* is overruled' didn't quietly reinstate it."). As the court observed, the "actual statutes that *Loper Bright* cited as examples of delegations that may call for deference don't only have broad language. They pair that language with words that expressly empower the agency to exercise judgement," like "in {its} judgment" or "if the Administrator finds." *Id.* Section 1677f-1(d)(1)(B) contains no such language of empowerment indicating that it is for the agency, rather than the courts, to determine the meaning of "significant."

[18] *Loper Bright*, 144 S. Ct. at 2263 (quotation and alterations omitted).

4

each subject industry.[19] By adopting an inflexible definition of "significant difference" to mean the results of a mechanical application of a (misused) statistical test, Commerce is operating well outside any boundaries for flexibility contemplated by the statute.

**Second**, the statutory precondition for Commerce to resort to an A-T margin calculation requires a "pattern" of prices that differ significantly among purchasers, regions, or time periods. Commerce treats the results of its "ratio test" as meeting the definition of a "pattern," but that does not reflect the best and plain meaning of that term.[20] The term "pattern" contemplates a readily-identifiable collection of coherently interrelated data points.[21] Commerce's ratio test does not discern whether significantly different prices form a pattern in any intelligible sense. Instead, the ratio test merely calculates the proportion of sales that exhibit "significant difference" as determined by application of the Cohen's *d* test. Reading "pattern" to mean "more than a certain proportion" is to ignore the plain meaning of the term. Moreover, the legislative history of Section 1677f-1(d)(1)(B) demonstrates that Congress intended the term "pattern" to refer to indicia of targeted dumping in the form of recognizable price discrimination between different time periods, different purchasers, or different regions.[22] Commerce's mechanical

---

[19] *See* Statement of Administrative Action Accompanying the Uruguay Round Agreements Act, H.R. Doc. No. 103-316, vol. 1, at 843, reprinted in 1994 U.S.C.C.A.N. 4040, 4177-78 ("SAA") ("the Administration intends that in determining whether a pattern of significant price differences exist, Commerce will proceed on a case-by-case basis, because small differences may be significant for one industry or one type of product, but not for another.").

[20] *See* CP Reply Br. 31-33. As the Canadian Parties have acknowledged, the CAFC in *Dillinger France S.A. v. United States*, 981 F.3d 1318, 1325 (Fed. Circ. 2020), applied the *Chevron* framework to sustain as "reasonable" Commerce's reliance on the ratio test to define "pattern." CP Reply Br. 32-33.

[21] *Pattern*, Merriam-Webster Online Dictionary, *available at* https://www.merriam-webster.com/dictionary/pattern (last visited Jan. 30, 2025); *Pattern*, Concise Oxford English Dictionary of Current English 1002 (9th ed. 1995).

[22] *See* SAA at 842-43.

5

application of its ratio test to satisfy the second statutory condition for application of A-T is at odds with both the plain meaning of "pattern" and the case-by-case, industry-specific assessment that Congress contemplated for identification of targeted dumping.[23]

**Third**, Commerce's interpretation of the statutory condition that "the administering authority explains why such differences cannot be taken into account using {the average-to-average} method"[24] as being satisfied by application of the "meaningful difference" test cannot be reconciled with a coherent, much less the best, reading of the statute. Commerce's meaningful difference test does not produce anything resembling an explanation for why identified price differences cannot be accounted for by application of the A-A methodology. Instead, the test compares the dumping margins calculated under A-A with those calculated under A-T and treats differences above certain thresholds as establishing that observed price differences cannot be taken into account using A-A.[25] Interpreting the existence of differences between the results of two methodologies as an explanation for why one of those methodologies cannot account for price variations is not consistent with the best reading of the statute.

Such an interpretation is at odds with the plain meaning of the verb "explain": "to give the reason for or cause of."[26] The meaningful difference test identifies instances where two different methodologies produce two different results, but it does not provide any indication that the reason for the differing results has anything to do with the ability of one methodology to

---

[23] *Id.*

[24] 19 U.S.C. § 1677f-1(d)(1)(B)(ii).

[25] *See* CP Opening Br. 8-9 (explaining the operation of the meaningful difference test).

[26] *Explain*, Merriam-Webster Online Dictionary, *available at* https://www.merriam-webster.com/dictionary/explain (last visited Jan. 30, 2025).

account for the particular price differences found to be significant and to form a pattern. The statute requires an explanation, and the meaningful difference test does not provide it.[27]

## II. HOW SHOULD THE COURT VIEW CASES THAT WERE DECIDED BY THE U.S. COURT OF APPEALS FOR THE FEDERAL CIRCUIT UNDER THE *CHEVRON* FRAMEWORK PRIOR TO *LOPER BRIGHT*?

The relevance and continued precedential effect of CAFC cases decided under the *Chevron* framework will vary depending on the particular issues addressed, but several overarching principles can be discerned and should guide the Court's approach.

**First**, *Loper Bright* could not be more clear that "*Chevron* is overruled."[28] Accordingly, where the CAFC has directed courts to review the DPM or other Commerce interpretations of statutory terms for "reasonableness," with deference to Commerce's interpretation, or otherwise pursuant to the *Chevron* framework, that direction no longer controls.[29] After *Loper Bright*, Commerce does not get the benefit of the doubt when it comes to the meaning of statutory terms. If Commerce's interpretation of the law is not consistent with the Court's, the latter prevails.

**Second**, although *Chevron* is overruled, *Loper Bright* did not overturn statutory interpretations adopted by courts applying the *Chevron* framework.[30] Of course, there may be

---

[27] As the Canadian Parties have emphasized, when—as in this case—the only identified "prices . . . that differ significantly" are prices during different time periods, which Commerce measures in calendar quarters, Commerce's application of A-A, which is based on monthly averages, will necessarily account for the observed price differences. Commerce cannot, therefore, offer any explanation that would satisfy the statutory precondition for resort to use of A-T. *See* CP Opening Br. 72-73; CP Reply Br. 26-28.

[28] *Loper Bright*, 144 S. Ct. at 2273.

[29] Thus, this Court need not—and, indeed, must not—follow the CAFC's direction in such cases as *Stupp II*, *Mid Continent*, and *Apex II* that Commerce's use of the DPM to interpret and satisfy provisions of section 1677f-1(d)(1) should be sustained as long as they are reasonable.

[30] *Loper Bright*, 144 S. Ct. at 2273 ("holdings of those cases that specific agency actions are lawful . . . are still subject to statutory *stare decisis* despite our change in interpretive methodology.").

7

additional considerations that warrant overruling precedent, including precedent decided under *Chevron*.[31] The Canadian Parties believe that such considerations apply with respect to certain prior CAFC holdings addressing aspects of the DPM.[32]

**Third**, and critical to the Court's analysis in this case, CAFC precedent controls only as to the specific legal issues raised before and decided by the court.[33] "{I}t is well established that a general expression in an opinion, which expression is not essential to the disposition of the case, does not control a judgment in a subsequent proceeding. Broad language in an opinion, which language is unnecessary to the court's decision, cannot be considered binding authority."[34] This admonition should carry particular force where, as here, the Government urges the Court to extend or broadly read CAFC decisions that were based on now-repudiated deference.

The Government seeks to extend broad language regarding the meaningful difference test in CAFC opinions that did not address the particular issues raised in this case.[35] Rather than engaging with the specific challenges raised by the Canadian Parties to Commerce's inability to explain why A-A, applied on a *monthly* basis, cannot account for identified *quarterly* price differences, the Government relies what it reads as broad endorsements of the meaningful

---

[31] *See id.*, 144 S. Ct. at 2280 (Gorsuch, J., concurring) (discussing exceptions to the principle of *stare decisis*). A decision should be subject to stare decisis only to the extent that it has the "power to persuade" and "reflects the time-tested wisdom of generations." *Id.* Decisions sustaining elements of Commerce's DPM satisfy neither condition.

[32] *See* CP Reply Br. 32-33 (critiquing the analysis in the CAFC's decision in *Dillinger France*, 981 F.3d at 1325, to defer to the ratio test to find a pattern). *Cf. See Allen v. United States*, No. 05–1133, 2024 WL 4002305, at *1 (Fed. Cir. Aug. 30, 2024) (vacating judgment of Court of Federal Claims because it relied on *Chevron*).

[33] *See, e.g., Beacon Oil Co. v. O'Leary*, 71 F.3d 391, 395 (Fed. Cir. 1995) ("*Stare decisis* applies only to legal issues that were actually decided in a prior action.").

[34] *Smith v. Orr*, 855 F.2d 1544, 1550 (Fed. Cir. 1988).

[35] Def.'s Resp. Br., Aug. 22, 2024, ECF No. 118, at 12, 37.

8

difference test by the CAFC's decisions in *Stupp II* and *Apex II*. *Stupp II* describes the cases as holding: "(1) Commerce's meaningful difference test is a reasonable response to the statutory directive to explain why the average-to-average method is inadequate in certain cases, and (2) the meaningful difference test is sufficient to satisfy that directive."[36] The Canadian Parties have explained in detail why, whatever the merits of the meaningful difference test may be in "certain cases," it is neither reasonable nor consistent with the best interpretation of the statute in cases where the only identified price differences are those among different calendar quarters.[37] A broad statement that the meaningful difference test provides a reasonable explanation for why the A-A test is inadequate in certain cases does not constitute binding precedent applicable to all cases, particularly those that present circumstances not previously addressed by the CAFC.

### III. <u>HOW IS THIS CASE AFFECTED BY THE *STUPP* CASE ON APPEAL BEFORE THE U.S. COURT OF APPEALS FOR THE FEDERAL CIRCUIT?</u>

Three appeals involving challenges to Commerce's use of Cohen's *d*, including the appeal of the *Stupp* case as well as appeals in *Marmen, Inc. v. United States* and *Mid Continent Steel & Wire, Inc. v. United States*, are currently pending at the CAFC.[38] *Stupp* and *Marmen* both present challenges to Commerce's failure to ensure that the assumptions underlying Cohen's *d* are met before Commerce relies on Cohen's conventions for measuring "large" differences. The appeal in *Mid Continent* focuses on Commerce's departure from statistical

---

[36] *Stupp II*, 5 F.4th at 1356.

[37] *See* CP Reply Br. 26-28.

[38] *Stupp Corp. v. United States*, No. 23-1663 (Fed. Cir. appeal docketed Mar. 27, 2023); *Marmen, Inc. v. United States*, No. 23-1877 (Fed. Cir. argued Jan. 13, 2025); *Mid Continent Steel & Wire, Inc. v. United States*, No. 24-1556 (Fed. Cir. appeal docketed Mar. 11, 2024). The CAFC heard oral argument in the *Marmen* appeal on January 13, 2025. *2023-1877: Marmen Inc. v. US*, U.S. Ct. Appeals Fed. Cir., https://www.cafc.uscourts.gov/01-13-2025-2023-1877-marmen-inc-v-us-audio-uploaded/ (last visited Jan 31, 2025).

principles in calculating the denominator for Cohen's *d*. These challenges have also been raised by the Canadian Parties in this case, and such challenges overlap with the challenges in *Stupp*, *Marmen*, and *Mid Continent*.[39] Accordingly, decisions by the CAFC addressing the issues presented in *Stupp*, *Marmen*, and *Mid Continent* may have significant bearing on this Court's resolution of the same or similar issues as presented in this case.

However, the Canadian Parties in this case have presented additional arguments, explanations, and statistical analyses related to Cohen's *d* that were not raised before Commerce in the proceedings underlying the *Stupp*, *Marmen*, and *Mid Continent* appeals. Of particular significance, in the administrative review challenged in this proceeding, the Canadian Parties provided Commerce with a detailed report by Professor Larry Hedges, one of the world's leading experts on statistical measures of effect size. The significance of that report's analysis and Commerce's failure to meaningfully engage with it presents an important issue in this case that is not before the CAFC in the three pending appeals. Moreover, the Canadian Parties have raised additional arguments, particularly with respect to Commerce's failure to comply with the statutory requirement to explain why A-A cannot account for identified differences in prices among time periods, that will not be addressed in the three appeals.[40] Accordingly, although the appeals may have significant bearing on certain issues before the Court, their resolution will not fully dispose of the challenges raised by the Canadian Parties.

---

[39] CP Opening Br. 13-58; CP Reply Br. 9-26.
[40] CP Opening Br. 64-75; Canadian Parties' Reply Br. 26-33.

## CERTIFICATE OF COMPLIANCE

The undersigned certifies that this brief complies with the page limitation set by the Court's Order of January 17, 2025.

*Eric S. Parnes*
Eric S. Parnes