IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE JENNIFER CHOE-GROVES, JUDGE

| | |
|---|---|
| GOVERNMENT OF CANADA, *et al.*,<br>    Plaintiffs,<br><br>and<br><br>CANAFOR CORPORTATION, *et al.*,<br>    Plaintiff-Intervenors,<br><br>v.<br><br>UNITED STATES,<br><br>    Defendant,<br><br>and<br><br>COMMITTEE OVERSEEING ACTION FOR<br>LUMBER INTERNATIONAL TRADE<br>INVESTIGATIONS OR NEGOTIATIONS,<br>    *et al.*,<br>    Defendant-Intervenors. | Consol. Court No. 23-00187 |

**DEFENDANT'S RESPONSE TO PLAINTIFFS' *LOPER BRIGHT* BRIEFS**

BRETT A. SHUMATE
Acting Assistant Attorney General

PATRICIA M. MCCARTHY
Director

CLAUDIA BURKE
Deputy Director

OF COUNSEL:
VANIA WANG
Senior Attorney
U.S. Department of Commerce
Office of the Chief Counsel for
Trade Enforcement & Compliance
Washington, D.C. 20230

February 14, 2025

STEPHEN C. TOSINI
Senior Trial Counsel
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
P.O. Box 480, Ben Franklin Station
Washington, DC 20044
Telephone: (202) 616-5196
Email: stephen.tosini@usdoj.gov
Attorneys for Defendant, United States

**TABLE OF CONTENTS**

                                   **PAGE**

I.   Can the Parties address what effect, if any, Loper Bright has on how this Court should review Commerce's differential pricing determination?................................................................................................. 2

II.   How should the Court view cases that were decided by the U.S. Court of Appeals for the Federal Circuit under the Chevron Framework prior to Loper Bright?........................................................... 5

III.   How is this case affected by the Stupp case that is currently on appeal before the U.S. Court of Appeals for the Federal Circuit?........................... 9

# TABLE OF AUTHORITIES

**CASES**                                                                                                                      **PAGES(s)**

*Apex Frozen Foods Private Ltd. v. United States*,
   862 F. 3d 1337 (Fed. Cir. 2017) ............................................................................. *passim*

*Asociación de Exportadores e Industriales de Aceitunas de Mesa v. United States*,
   102 F.4th 1252 (Fed. Cir. 2024) ............................................................................. 3

*Borusan Mannesmann Boru Sanayi Ve Ticaret A.S. v. Am. Cast Iron Pipe Co.*,
   5 F.4th 1367 (Fed. Cir. 2021) ................................................................................. 3

*Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*,
   467 U.S. 837 (1984) ................................................................................................ 2

*De Sylva v. Ballentine*,
   351 U.S. 570 (1956) ................................................................................................ 7

*Dillinger France S.A. v. United States*,
   981 F. 3d 1318 (Fed. Cir. 2020) ............................................................................. 6

*Fujitsu General Ltd. v. United States*,
   88 F.3d 1034 (Fed. Cir. 1996) ................................................................................. 3

*Garg Tube Export LLP v. United States*,
   740 F. Supp. 3d 1355 (Ct. Int'l Trade 2024) ......................................................... *passim*

*Gundy v. United States*,
   588 U.S. 128 (2019) ................................................................................................ 4, 5

*JBF RAK LLC v. United States*,
   790 F.3d 1358 (Fed. Cir. 2015) ............................................................................. 9

*Kimble v. Marvel Ent., LLC*,
   576 U.S. 446 (2015) ................................................................................................ 6

*King v. St. Vincent's Hosp.*,
   502 U.S. 215 (1991) ................................................................................................ 6

*Loper Bright Enterprises v. Raimondo*,
   603 U.S. 369 (2024) ............................................................................................... *passim*

*Melamine Chemicals, Inc. v. United States*,
   732 F.2d 924 (Fed. Cir. 1984) ............................................................................... 3

*Nexteel Co. v. United States*,
   28 F.4th 1226 (Fed. Cir. 2022) ............................................................................... 3

*Smith-Corona Group v. United States*,
    713 F.2d 1568 (Fed. Cir. 1983) ................................................................................ 3

*Stupp Corp. v. United States*,
    5 F.4th 1341 (Fed. Cir. 2021) .......................................................................... *passim*

*Stupp Corporation v. United States*,
    619 F. Supp. 3d 1314 (Ct. Int'l Trade 2023) .................................................. *passim*

*United States v. Moore*,
    613 F.2d 1029 (D.C. Cir. 1979) ............................................................................... 7

*United States v. Morton*,
    467 U.S. 822 (1984) .................................................................................................. 6


**Statutes**

5 U.S.C. § 706 ................................................................................................................ 2

19 U.S.C. § 1677 .................................................................................................. *passim*


**Regulations**

19 C.F.R. § 351.414(d)(3)(e) ......................................................................................... 8


**Administrative Decisions**

*Residential Washers From Mexico: Final Results
    of Antidumping Duty Administrative Review*,
        85 Fed. Reg. 81,450 (Dep't of Commerce Dec. 16, 2020) ...................................... 7

*Certain Frozen Warmwater Shrimp From India:
    Final Results of Antidumping Duty Administrative Review*,
        79 Fed. Reg. 51,309 (Dep't of Commerce Aug. 28, 2014) ..................................... 7

IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE JENNIFER CHOE-GROVES, JUDGE

| | |
|---|---|
| GOVERNMENT OF CANADA, *et al.*, Plaintiffs, and CANAFOR CORPORTATION, *et al.*, Plaintiff-Intervenors, v. UNITED STATES, Defendant, and COMMITTEE OVERSEEING ACTION FOR LUMBER INTERNATIONAL TRADE INVESTIGATIONS OR NEGOTIATIONS, *et al.*, Defendant-Intervenors. | Consol. Court No. 23-00187 |

**DEFENDANT'S RESPONSE TO PLAINTIFFS'** ***LOPER BRIGHT*** **BRIEFS**

Pursuant to the Court's Order, issued on January 17, 2025, Defendant, the United States, respectfully submits this response to the supplemental briefs submitted by Resolute FP Canada Inc. *et al.* (Resolute Supp. Br. (Jan. 30, 2025), ECF No. 142), Sierra Pacific Industries (SPI) (SPI Supp. Br., ECF No. 143), Committee Overseeing Action for Lumber International Trade Investigations or Negotiations (COALITION) (COALITION Supp. Br., ECF No. 144), and Government of Canada *et al.* (Canadian Parties Supp. Br., ECF No. 145), regarding *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024).

**I.     Can the Parties address what effect, if any, *Loper Bright* has on how this Court should review Commerce's differential pricing determination?**

*Loper Bright* does not affect the Court's review of the differential pricing analysis. Construing the Administrative Procedure Act (APA), 5 U.S.C. § 706, *Loper Bright* overruled step two of *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), and *Chevron*'s presumption that statutory ambiguities are implicit delegations of interpretive authority to agencies to resolve questions of statutory interpretation. *Loper Bright*, 603 U.S. at 398-400. *Loper Bright* did not disturb the deference owed to Commerce's fact-finding under the substantial evidence standard. *See id*. at 392 (the APA "*does* mandate that judicial review of agency policymaking and factfinding be deferential") (emphasis in original). Here, the question is whether Commerce's finding that "there is a pattern of export prices . . . for comparable merchandise that differ significantly among purchasers, regions, or periods of time," 19 U.S.C. § 1677f-1(d)(1)(B), is reasonable. 19 U.S.C. § 1516a(b)(1)(B)(i). In its analysis, Commerce exercised the discretion that Congress committed to it to implement a statistical test.

The Supreme Court recognized this process in *Loper Bright*, explaining that statutes may authorize agencies to "exercise discretion and flexibility":

> the statute's meaning may well be that the agency is authorized to exercise a degree of discretion. Congress has often enacted such statutes. For example, some statutes expressly delegate to an agency the authority to give meaning to a particular statutory term. Others empower an agency to prescribe rules to fill up the details of a statutory scheme, or to regulate subject to the limits imposed by a term or phrase that leaves agencies with flexibility, such as appropriate or reasonable.

603 U.S. at 394-95 (cleaned up). And if the best interpretation of the statute is that it delegates discretionary authority to the agency, the Court must only ensure that "the agency engaged in 'reasoned decisionmaking'" within the boundaries of its delegated authority. *Id.* at 395.

2

Congress may delegate discretionary authority through "general" statutory language. *Asociación de Exportadores e Industriales de Aceitunas de Mesa v. United States*, 102 F.4th 1252, 1260-61 (Fed. Cir. 2024) (*Asemesa*). The trade laws are often written in general terms because Congress is not "prescient" and cannot anticipate in legislation all the factual and legal intricacies that may arise in each proceeding. *Melamine Chemicals, Inc. v. United States*, 732 F.2d 924, 930 (Fed. Cir. 1984). For this reason, Commerce has "broad discretion in executing the law" in line with Congress's "general standards." *Smith-Corona Gp. v. United States*, 713 F.2d 1568, 1571 (Fed. Cir. 1983). To this end, Commerce's discretion to develop methodologies within its delegated authority is distinct from *Chevron*:

> the antidumping statute reveals tremendous deference to the expertise of the Secretary of Commerce in administering the antidumping law. Antidumping and countervailing duty determinations involve complex economic and accounting decisions of a technical nature, for which agencies possess far greater expertise than courts. This deference is both greater than and distinct from that accorded the agency in interpreting the statutes it administers, because it is based on Commerce's technical expertise in identifying, selecting and applying methodologies to implement the dictates set forth in the governing statute, as opposed to interpreting the meaning of the statute itself where ambiguous.

*Fujitsu General Ltd. v. United States*, 88 F.3d 1034, 1039 (Fed. Cir. 1996) (internal citations omitted ) (applying this distinct deference separately from and concurrently with *Chevron*); *see also Nexteel Co. v. United States*, 28 F.4th 1226, 1239 (Fed. Cir. 2022) ("Commerce has selected a methodology consistent with the statutory language, which we afford greater deference than under the *Chevron* framework") (citing *Fujitsu*, 88 F.3d at 1039); *Borusan Mannesmann Boru Sanayi Ve Ticaret A.S. v. Am. Cast Iron Pipe Co.*, 5 F.4th 1367, 1374-75 (Fed. Cir. 2021) (recognizing "deference {that} is both greater than and distinct from that accorded the agency in interpreting the statutes it administers, because it is based on Commerce's technical expertise").

3

The statute here, 19 U.S.C. § 1677f-1(d)(1)(B), is written in general terms, indicating that Congress "intended to delegate the question of whether particular facts satisfy the statute's requirements to Commerce." *Asemesa*, 102 F.4th at 1259. The Court reached the same conclusion in *Garg Tube Export LLP v. United States*, 740 F. Supp. 3d 1355 (Ct. Int'l Trade 2024), when addressing the statutory requirement that there be a pattern of prices that "differ significantly" among purchasers, regions, or time periods. The Court held that "{t}he text of the statute and its legislative history indicate that Congress gave Commerce flexibility by its use of the open-ended term 'differ significantly.'" *Id.* at 1366-67. First, it explained that "Congress' mandate to Commerce to assess not merely whether prices differ, but whether they differ 'significantly' necessarily affords Commerce flexibility to assess the degree of difference depending on the particular context." *Id.* at 1367. The Court next observed that the SAA directs that Commerce will proceed on a case-by-case basis, which confirms the flexibility provided by the words of the statute. *Id.* (citing Statement of Administrative Action (SAA), H.R. Doc. No. 103-16, vol. 1 (1994), reprinted in 1994 U.S.C.C.A.N. 4040, 4178). Lastly, the Court found that phrase "differ significantly" when juxtaposed with the subsection that allows Commerce to decline taking into account insignificant adjustments, 19 U.S.C. § 1677f-1(a)(2), and another subsection exclusively allowing Commerce to select averages and statistically valid samples, 19 U.S.C. § 1677f-1(b), further confirms that Congress meant to afford significant flexibility and discretion. *Garg Tube*, 740 F. Supp. 3d 1357. The Court thus held that "Congress delegated to Commerce the power to use its discretion when determining whether prices differ significantly under 19 U.S.C. § 1677f-1." *Garg Tube*, 740 F. Supp. 3d 1367.

Canadian Parties contend at paged 3-5 that *Garg Tube* was wrongly decided because "significant" is not open-ended. This disagreement with *Garg Tube* is unavailing. Indeed,

4

"significantly" is similar to "substantially," which was at issue in *Asemesa*, where the Federal Circuit held that Congress invokes its "ability to delegate power under broad general directives" by using nonspecific statutory language. 102 F.4th at 1259 (quoting *Gundy v. United States*, 588 U.S. 128, 147 (2019)) (cleaned up). The Court explained that Congress's use of the term "substantially dependent," as opposed to specifying a minimum percentage, reflected "an expression of its well-considered judgment as to the degree of administrative authority which it was necessary to grant." *Id.* Notably, the Federal Circuit did not apply *Chevron* in reaching its determination, explaining that "{b}ecause we regard the term 'substantially dependent' as general but not ambiguous, we believe this case is more properly viewed as one involving implied delegation of adjudicative authority to the agency rather than deference to the agency's interpretation of an ambiguous statute." *Id.* at 1261. The Canadian Parties fail to overcome the Federal Circuit's holding and reasoning in *Asemesa*, and also cannot upset *Garg Tube*'s analysis of the SAA and section 1677f-1(d)(1)(B)'s context. This Court interpreted the case-by-case language of the SAA to allow Commerce flexibility, and this flexibility was confirmed by the statutory context in 19 U.S.C. § 1677f-1, which gives Commerce "flexibility and discretion" for sampling, selecting averages, and declining to make adjustments that are insignificant. *Garg Tube,* 740 F. Supp. 3d at 1367. In sum, because the statute delegates discretionary authority to Commerce, and in light of *Asemesa*, *Fujitsu*, and other binding precedent, *Loper Bright* does not materially alter this Court's review of Commerce's differential pricing methodology.

II.    **How should the Court view cases that were decided by the U.S. Court of Appeals for the Federal Circuit under the *Chevron* framework prior to *Loper Bright*?**

Contrary to the Canadian Parties' bold invitation to ignore appellate precedent at page seven of their brief, all published Federal Circuit cases, even if decided under *Chevron,* remain binding. In *Loper Bright*, the Supreme Court "d{id} not call into question prior cases that relied on the

5

*Chevron* framework." *Loper Bright*, 603 U.S. at 412. "Mere reliance on *Chevron* cannot constitute a 'special justification' for overruling such a holding, because to say a precedent relied on *Chevron* is, at best, just an argument that the precedent was wrongly decided. That is not enough to justify overruling a statutory precedent." *Id.*; *see also* COALITION Br. at 6 (citing appellate cases that relied on this aspect of *Loper Bright*). Mere disagreement with the holding in a prior case "cannot by itself justify scrapping settled precedent," *Kimble v. Marvel Ent., LLC*, 576 U.S. 446, 456 (2015), and such precedent governs unless overturned by the Federal Circuit *en banc*. Indeed, the Supreme Court explained that "stare decisis carries enhanced force when a decision . . . interprets a statute." *Kimble*, 576 U.S. at 456. Thus, precedent sustaining Commerce's interpretation of its statute remains binding even if the Federal Circuit reached its decision under *Chevron* step two.

      Resolute also contends that *Dillinger France S.A. v. United States*, 981 F. 3d 1318 (Fed. Cir. 2020) "left the door open" regarding the meaning of "pattern" because the Federal Circuit purportedly did not adequately consider certain waived arguments. Resolute Supp. Br. at 8 n.25. However, courts "do not . . . construe statutory phrases in isolation; {they} read statutes as a whole." *United States v. Morton*, 467 U.S. 822, 828 (1984); *King v. St. Vincent's Hosp.*, 502 U.S. 215, 221 (1991) (citations omitted). In *Dillinger*, the Federal Circuit addressed arguments that Commerce's ratio test fails to implement the pattern requirement because Commerce aggregates prices found to differ among different purchasers, different regions, and different time periods, into a single pattern. *Dillinger*, 981 F. 3d at 1325-26. In construing 19 U.S.C. § 1677f-1(d)(1)(B), which is at issue in this case, the Federal Circuit held that Commerce's "aggregation" methodology is a reasonable interpretation of the pattern requirement, rejecting a claim that is substantially similar to that which Resolute and Canadian Parties make in supplemental briefing.

6

Resolute Supp. Br. at 3-5, 9-10; Canadian Parties Supp. Br. at 5-6. While parties may disagree with the Federal Circuit's use of *Chevron* analysis, *Loper Bright* held that "mere reliance on *Chevron* cannot constitute a 'special justification' for overruling" holdings of prior cases and this is "just an argument that precedent was wrongly decided." *Loper Bright*, 603 U.S. at 412. We also agree with the COALITION that Resolute and Canadian Parties have waived their aggregation arguments regarding the ratio test. COALITION Supp. Br. at 4.

Regardless, attempts to constrict the meaning of "pattern" fail. Canadian Parties Supp. Br. at 5-6; Resolute Supp. Br. at 3-5. They cite only one definition of many from the Merriam Webster and the Oxford dictionaries. Merriam-Webster also provides that pattern means "a reliable sample of traits, acts, tendencies, or other observable characteristics of a person, group, or institution (behavior pattern) (spending pattern)" and "frequent or widespread incidence (a pattern of dissent)." https://www.merriamwebster.com/dictionary/pattern (last visited Feb. 6, 2025). This definition supports Commerce's approach. *See, e.g., Large Residential Washers From Mexico: Final Results of Antidumping Duty Administrative Review*, 85 Fed. Reg. 81,450 (Dep't of Commerce Dec. 16, 2020), and accompanying IDM at cmt. 1. Resolute also contends that Commerce used an inclusive "or" to wrongly aggregate categories. Resolute Supp. Br. at 4, 9. But courts have long held that "or" can mean "and." *See e.g., United States v. Moore*, 613 F.2d 1029, 1040 & n. 85 (D.C. Cir. 1979); *De Sylva v. Ballentine*, 351 U.S. 570, 573 (1956).

Resolute and Canadian Parties also assert that the plain meaning of "explain" in 19 U.S.C. § 1677f-1(d)(1)(B)(ii) requires that Commerce identify reasons for differing results under the comparison methods. Resolute Supp. Br. at 5, 10; Canadian Parties Supp. Br. at 6-7. *Apex Frozen Foods Private Ltd. v. United States*, 862 F. 3d 1337, 1346 (Fed. Cir. 2017), disposes of this argument. In *Apex*, the Federal Circuit held that "the difference in the actual antidumping

7

rates that would be assessed—below *de minimis* when calculated with the A-A methodology; above *de minimis* when calculated with an alternative methodology—indeed informs the question of whether the A-A methodology can adequately account for a pattern of significant price differences 'because A-A masked the dumping that was occurring as revealed by the A-T calculated margin.'" *Id.* at 1346 (citations omitted). Although Resolute argues at page 8 of its brief that the Federal Circuit's ruling is limited to the three arguments in *Apex*, the Federal Circuit rejected a similar attempt to distinguish *Apex* in *Stupp Corp. v. United States*, 5 F.4th 1341, 1356 (Fed. Cir. 2021) (remanded on other grounds), where the plaintiff had argued that *Apex* did not hold that comparisons of margin calculations alone are sufficient. The Court held "(1) Commerce's meaningful difference test is a reasonable response to the statutory directive to explain why the average-to-average method is inadequate in certain cases, and (2) the meaningful difference test is sufficient to satisfy that directive." *Id.*; *see also* IDM at 40-41.

Resolute and Canadian Parties further claim that *Apex* does not apply because the A-A method used monthly comparisons, *see* 19 C.F.R. §§ 351.414(d)(3), (e), which they claim was not argued in *Apex*. Resolute Supp. Br. at 6-7; Canadian Parties Supp. Br. at 8-9. However, *Apex* provided that "differences revealed by zeroing are not inconsequential or to be ignored." *Apex*, 862 F.3d at 1347-49. "{T}he effects of zeroing are precisely what 19 U.S.C. § 1677f-1(d)(1)(B) seeks to address." *Id.* at 1349. Indeed, in the underlying administrative review for *Apex*, Commerce explained that A-A monthly comparisons are insufficient in unmasking dumping because there may still be implicit masked dumping within the monthly averaging groups. *Certain Frozen Warmwater Shrimp From India: Final Results of Antidumping Duty Administrative Review*, 79 Fed. Reg. 51,309 (Dep't of Commerce Aug. 28, 2014), and accompanying IDM at cmt. 2. The monthly comparisons argument therefore does not

8

distinguish *Apex*.  Instead, *Apex* "informs the question of whether the A-A methodology can adequately account for a pattern of significant price differences 'because A-A masked the dumping that was occurring as revealed by the A-T calculated margin.'"  862 F.3d at 1346.

Lastly, *JBF RAK LLC v. United States*, 790 F.3d 1358 (Fed. Cir. 2015), made clear that Commerce is not required to determine why there is a pattern of export prices that differs significantly among purchasers, regions, or time periods.  Although Resolute asserts that *JBF RAK* applies to 19 U.S.C. § 1677f-1(d)(1)(B)(i) only, this contention is refuted by the case's holding.  The Court held that "Section 1677f-1(d)(1)(B) does not require Commerce to determine the reasons why there is a pattern of export prices for comparable merchandise that differs significantly among purchasers, regions, or time periods."  *JBF RAK*, 790 F.3d at 1368.  By referencing subparagraph (B) in its entirety, the Court did not limit its holding.  Similarly, in *Apex*, the Federal Circuit found that the use of "such differences" in the statute does not "dictate how Commerce is to make the determination whether the A-A methodology can account for *potential* targeted or masked dumping."  862 F.3d at 1345 (emphasis added).  Under *Loper Bright*, this binding precedent remains good law.  *Loper Bright*, 603 U.S. at 412.

III. **How is this case affected by the *Stupp* case that is currently on appeal before the U.S. Court of Appeals for the Federal Circuit?**

In *Stupp*, the Federal Circuit affirmed most of Commerce's differential pricing analysis and remanded one narrow aspect for further explanation.  First, it held "that Commerce's ratio test reasonably implements the statutory requirement that Commerce determine whether there is a pattern of export prices differing significantly among purchasers, regions, or periods of time before selecting the average-to-transaction method."  *Stupp*, 5 F.4th at 1355 (cleaned up).  Next, *Stupp* sustained the meaningful difference test, reaffirming that the meaningful difference test is a reasonable response to the statutory directive to explain why the average-to-average method is

9

inadequate in certain situations, and that the meaningful difference test is sufficient to satisfy that directive. *Id.* at 1355-56. Accordingly, the Court should follow binding Federal Circuit precedent in *Stupp* and sustain Commerce's ratio and meaningful difference tests.

The Court remanded one narrow aspect of Commerce's decision, questioning "whether Commerce's application of the Cohen's *d* test to the data in this case violated the assumptions of normality, sufficient observation size, and roughly equal variances associated with that test" in light of certain academic literature raised on appeal. *Stupp*, 5 F.4th at 1357-60. The Court remanded to allow Commerce to explain whether the described statistical criteria for the examined data were satisfied in the investigation at issue in that litigation, and this Court sustained Commerce's remand on this narrow issue, which further explained Commerce's methodology. *Stupp Corporation v. United States*, 619 F. Supp. 3d 1314 (Ct. Int'l Trade 2023). This Court held that Commerce had addressed the Federal Circuit's concerns about population size and whether samples without normal distributions will produce an inappropriate number of passes, explaining that the ratio test and meaningful difference test compensate for inaccuracies. *Id.* at 1325-26. The Court further reasoned that Commerce had permissibly adopted the 0.8 threshold because it was widely accepted in the academic literature and that the 0.8 threshold produces reasonable passing rates once the ratio and meaningful difference tests are applied. *Id.* at 1327. This narrow issue regarding the application of the Cohen's *d* test is currently on appeal and oral argument is scheduled for March 2025. The Federal Circuit's eventual holding in *Stupp* might be dispositive on the lawfulness of the Cohen's d test and may provide further teaching regarding the standard of review for Commerce determinations post-*Loper Bright*.

                                      Respectfully submitted,

                                      BRETT A. SHUMATE
                                      Acting Assistant Attorney General

|  |  |
|---|---|
|  | PATRICIA M. MCCARTHY<br>Director |
|  | CLAUDIA BURKE<br>Deputy Director |
| OF COUNSEL:<br>VANIA WANG<br>Senior Attorney<br>U.S. Department of Commerce<br>Office of the Chief Counsel for<br>Trade Enforcement & Compliance<br>Washington, D.C. 20230 | STEPHEN C. TOSINI<br>Senior Trial Counsel<br>U.S. Department of Justice<br>Civil Division<br>Commercial Litigation Branch<br>P.O. Box 480, Ben Franklin Station<br>Washington, DC 20044<br>Telephone: (202) 616-5196<br>Email: stephen.tosini@usdoj.gov |
| February 14, 2025 | Attorneys for Defendant, United States |