UNITED STATES COURT OF INTERNATIONAL TRADE

*Before*: The Honorable Jennifer Choe-Groves, Judge

| | |
|---|---|
| **The Government of Canada**, *et al.*,<br><br>    *Plaintiffs*,<br><br>**Canfor Corporation**, *et al.*,<br><br>    and<br><br>**Committee Overseeing Action for Lumber International Trade Investigations or Negotiations**, *et al.*,<br><br>    *Consolidated Plaintiffs*,<br><br>**Canfor Corporation**, *et al.*,<br><br>    *Plaintiff-Intervenors*,<br><br>    v.<br><br>**United States**,<br><br>    *Defendant*,<br><br>**Committee Overseeing Action for Lumber International Trade Investigations or Negotiations**, *et al.*,<br><br>    *Defendant-Intervenors*. | Consol. Court No. 1:23-cv-00187-JCG<br><br>PUBLIC DOCUMENT |

**SUPPLEMENTAL REPLY BRIEF ON *LOPER BRIGHT*
OF CONSOLIDATED PLAINTIFFS RESOLUTE FP CANADA INC., CONSEIL DE L'INDUSTRIE FORESTIÈRE DU QUÉBEC ("CIFQ"), AND THE ONTARIO FOREST INDUSTRIES ASSOCIATION ("OFIA")**

Elliot J. Feldman<br>
Michael S. Snarr<br>
Ronald J. Baumgarten<br>
Tung A. Nguyen

**Baker Hostetler LLP**
1050 Connecticut Ave., NW
Suite 1100
Washington, D.C. 20036

Counsel to Resolute FP Canada Inc., Conseil de l'Industrie forestière du Québec ("CIFQ"), and the Ontario Forest Industries Association ("OFIA")

Dated: February 21, 2025

## TABLE OF AUTHORITIES

**Page #**

**Cases**

*Apex Frozen Foods Private Ltd. v. United States*, 862 F. 3d 1337 (Fed. Cir. 2017) ........ 4

*Campos-Chaves v. Garland*, 144 S. Ct. 1637 (2024) ....................................................... 3

*Dillinger France S.A. v. United States*, 981 F.3d 1318 (Fed. Cir. 2020) ......................... 3

*Garg Tube Export LLP v. United States*, 740 F. Supp. 3d 1355 (Ct. Int'l Trade 2024) .... 1

*JBF RAK LLC v. United States*, 790 F.3d 1358 (Fed. Cir. 2015) ..................................... 4

*Tennessee v. Becerra*, 117 F.4th 348 (6th Cir. 2024) ....................................................... 2

*Timken Co. v. United States*, 179 F. Supp. 3d 1168 (Ct. Int'l Trade 2016) ...................... 4

**Statutory Provisions**

19 U.S.C. § 1677f-1(d)(1)(A) ............................................................................................ 1

19 U.S.C. § 1677f-1(d)(1)(B) ............................................................................................ 1

19 U.S.C. § 1677f-1(d)(1)(B)(i) ................................................................................. 1, 3, 4

19 U.S.C. § 1677f-1(d)(1)(B)(ii) ................................................................................... 1, 2

Congress authorized weighted average to weighted average ("A-A") or transaction to transaction ("T-T") comparisons of normal values to export prices to determine a dumping margin.  See 19 U.S.C. § 1677f-1(d)(1)(A).  Congress also authorized an exception to this preferred methodology, to find targeted dumping, but only when (i) there is a pattern of export prices for comparable merchandise that differ significantly among purchasers, regions or periods of time, *and* (ii) Commerce has explained why such differences (in the export prices) cannot be taken into account using the preferred A-A or T-T methods.  See 19 U.S.C. § 1677f-1(d)(1)(B).

Commerce is not authorized to resort to the exception where Commerce (a) has not identified a "pattern;" (b) cannot show that the export prices differ significantly; or (c) has not explained why the export price differences cannot be taken into account by using the A-A or T-T methods. Agency discretion is limited by each and all of these conditions.

*Garg Tube Export LLP v. United States*, 740 F. Supp. 3d 1355 (Ct. Int'l Trade 2024) does not stand for the sweeping proposition that Commerce's targeted dumping analysis is entirely discretionary.  At most, *Garg Tube* suggests that Commerce may provide a well-reasoned basis (consistent with fundamental principles of math and statistics) for deciding when export prices differ "significantly" under 19 U.S.C. § 1677f-1(d)(1)(B)(i). It does not address the other statutory conditions required by Congress in 19 U.S.C. § 1677f-1(d)(1)(B)(i), nor in § 1677f-1(d)(1)(B)(ii).

In the case before this Court, Commerce, relying on a flawed iteration of the Cohen's *d* test, claimed to find an unidentified "pattern" of significant price differences on the basis of quarterly time periods, a time interval of Commerce's choosing.

However, Commerce's A-A dumping comparisons, which found no dumping, were conducted on shorter monthly, not quarterly intervals. Commerce does not have discretion to ignore the Congressional obligation in 19 U.S.C. § 1677f-1(d)(1)(B)(ii) to explain why A-A comparisons conducted for each month could not take into account significantly differing export prices across a three-month quarter. Under *Loper Bright*, the best interpretation of 19 U.S.C. § 1677f-1(d)(1)(B)(ii) requires Commerce to provide that explanation.

Courts must evaluate the determinations and explanations put before them on a case-by-case basis. *Loper Bright* allows for new challenges to agency interpretations that have not yet been adjudicated. *See Tennessee v. Becerra*, 117 F.4th 348, 363 (6th Cir. 2024).

In the case here, Commerce's targeted dumping analysis depends on its finding of a pattern of significant export price differences over three-month quarters because the Cohen's *d* test "pass rates" for significant price differences by purchaser or region were factually immaterial. The Court must determine whether Commerce satisfied both prong (i) *and* prong (ii), including a satisfactory explanation of why A-A comparisons in one-month periods could not take into account export price differences supposedly found over three-month periods.

Relying upon the Cohen's *d* test, Commerce said it found significant price differences that constituted a "pattern." Commerce did not define "pattern, a task left for the Court using traditional tools of statutory construction. By statute, the pattern must exist among purchasers, regions, *or* time periods. Commerce did not, as the statute requires, identify in which category it claimed to find targeted dumping.

2

The Government claims the definition of "pattern," encompassing all three distinct categories, was settled in *Dillinger France S.A. v. United States*, 981 F.3d 1318 (Fed. Cir. 2020). The *Dillinger* court, however, said that the meaning of "pattern" was inadequately argued and upheld Commerce's interpretation as reasonable solely under *Chevron*, considering the arguments presented. *See id.* at 1326. No court has yet declared the best statutory interpretation of "pattern" nor why Congress would require a "pattern" be shown if the mere existence of export prices that differ significantly always constituted a "pattern." In the case before this Court, the Government has claimed, relying on *Dillinger*, that a combination of passing transactions from three different categories could constitute a pattern.

The Government and Coalition incorrectly argue that Resolute and the Canadian Parties waived the aggregation arguments (combining transactions by purchaser, region, and periods of time) regarding the ratio test.[1] The Government claims that courts have long held that "or" can mean "and," *see* U.S. Resp. Br. at 7 (citing *United States v. Moore*, 613 F.2d 1029, 1040 & n. 85 (D.C. Cir. 1979); *De Sylva v. Ballentine*, 351 U.S. 570, 573 (1956)), The Supreme Court does not agree.

The word "or" is almost always disjunctive and generally is used in statutes to indicate an alternative, unless the ordinary use is overcome by statutory context. *See Campos-Chaves v. Garland*, 144 S. Ct. 1637, 1641 (2024). There is no apparent statutory context concerning 19 U.S.C. § 1677f-1(d)(1)(B)(i) that suggests Congress intended for "or" to be used as "and," allowing Commerce to aggregate three unrelated categories of time, purchaser and region.

---

[1] *See* fn. 172 of Canadian Parties' Opening Brief (Apr. 5, 2024), pp. 31-33 of Canadian Parties Reply Brief (Oct. 10, 2024).

3

Even if the statutory language were not to require disaggregation of the three categories, the "pass rates" for each category require a distinct "time period" analysis because significant price differences by purchaser and region, whether by themselves or together, were immaterial to the results of the ratio test.  Commerce must explain why the significant export price differences it claimed to find over a three-month time period, which were material to the ratio test, could not be taken into account by A-A comparisons on a one-month time period basis.

The Government has cited *JBF RAK LLC v. United States*, 790 F.3d 1358 (Fed. Cir. 2015) and *Apex Frozen Foods Private Ltd. v. United States*, 862 F. 3d 1337 (Fed. Cir. 2017) ("*Apex II*") as contrary authorities, but the Court must construe those cases according to their actual holdings. *JBF Rak* pertains only to § 1677f-1(d)(1)(B)(i), not (B)(ii).[2]  *JBF Rak* does not prevent the Court from addressing (B)(ii) under *Loper Bright*. *See, e.g., Ortiz v. McDonough*, 6 F.4th 1267, 1279 (Fed. Cir. 2021).

The court in *Apex II,* 862 F.3d at 1347, deferred, under *Chevron*, to a "less than ideal" Commerce interpretation of the meaningful difference test.  There, the plaintiffs argued that Commerce should not use all sales in the meaningful difference test.

The argument in *Apex II* is not ours.  Commerce must explain why significant export price differences over a three-month time period (for all sales) could not be taken

---

[2] The court in *Timken Co. v. United States*, 179 F. Supp. 3d 1168, 1179 n12 (Ct. Int'l Trade 2016) opined that "*JBF RAK* does not appear to speak to a situation where a respondent actually demonstrates that the price differences are not the result of targeting."  The *Timken* court's view of *JBF Rak* seems to be that Commerce must consider the qualitative evidence supporting an interpretation that A-A is sufficient for accounting for significant price differences with respect to time periods (*e.g.*, that export price differences were not a function of targeted dumping, but price fluctuations within the U.S. market over time (among all sellers) when individual transaction prices are compared against an average). But even if no qualitative evidence were available or permitted, Commerce still must explain why A-A monthly normal value/export price comparisons could not account for export price differences over a three-month period.

4

into account by Commerce's A-A monthly comparisons.  Commerce in this case has not even tried.

Respectfully submitted,

/s/ *Elliot J. Feldman*
Elliot J. Feldman
Michael S. Snarr
Ronald J. Baumgarten
Tung A. Nguyen

Baker & Hostetler LLP

Counsel to Resolute FP Canada Inc., Conseil de l'Industrie forestière du Québec ("CIFQ"), and the Ontario Forest Industries Association ("OFIA")