**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: THE HONORABLE JENNIFER CHOE-GROVES, JUDGE**

| | |
|---|---|
| GOVERNMENT OF CANADA, et al., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant, <br><br> and <br><br> COMMITTEE OVERSEEING ACTION FOR LUMBER INTERNATIONAL TRADE INVESTIGATIONS OR NEGOTIATIONS, et al., <br><br> Defendant-Intervenors. | Consol. Court No. 23-00187 |

**SUPPLEMENTAL REPLY BRIEF ON *LOPER BRIGHT* OF THE COMMITTEE OVERSEEING ACTION FOR LUMBER INTERNATIONAL TRADE INVESTIGATIONS OR NEGOTIATIONS**

Andrew W. Kentz
Zachary J. Walker

**PICARD KENTZ & ROWE LLP**
1155 Connecticut Avenue NW
Suite 700
Washington, DC 20036
(202) 888-0595

*Counsel to the COALITION*

February 21, 2025

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. ii

    I.     Federal Circuit Precedent Remains Binding Regardless of Whether the Decision Was Decided Under the *Chevron* Framework ............................................................. 1

    II.    *Garg Tube* Correctly Held that Congress Gave Commerce Flexibility to Adress Targeted Dumping ....................................................................................................... 4

## TABLE OF AUTHORITIES

### Cases

*Apex Frozen Foods Private Ltd. v. United States*,
  862 F.3d 1337 (Fed. Cir. 2017) .................................................................................... 2

*Asociacion de Exportadores e Industriales de Aceitunas de Mesa v. United States*,
  102 F.4th 1252 (Fed. Cir. 2024) .................................................................................. 5

*Borusan Mannesmann Boru Sanayi ve Ticaret A.S. v. United States*,
  608 Fed. Appx. 948 (Fed. Cir. 2015) ........................................................................... 3

*Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*,
  467 U.S. 837 (1984) ..................................................................................................... 1

*Dillinger France S.A. v. United States*,
  981 F.3d 1318 (Fed. Cir. 2020) ................................................................................... 3

*Garg Tube Export LLP v. United States*,
  740 F. Supp. 3d 1355 (Ct. Int'l Trade 2024) ........................................................... 4, 5

*JBF RAK LLC v. United States*,
  790 F.3d 1358 (Fed. Cir. 2015) ................................................................................... 3

*Kimble v. Marvel Ent., LLC*,
  576 U.S. 446 (2015) ..................................................................................................... 2

*Loper Bright Enterprises v. Raimondo*,
  603 U.S. 369 (2024) ............................................................................................ 1, 3, 4

*Stupp Corp. v. United States*,
  5 F.4th 1341 (Fed. Cir. 2021) .................................................................................. 2, 3

### Statutes

19 U.S.C. § 1677a ................................................................................................................ 1

19 U.S.C. § 1677f-1 ..................................................................................................... 3, 4, 5

Consol. Court No. 23-00187

**SUPPLEMENTAL REPLY BRIEF ON *LOPER BRIGHT* OF THE COMMITTEE OVERSEEING ACTION FOR LUMBER INTERNATIONAL TRADE INVESTIGATIONS OR NEGOTIATIONS**

Pursuant to the Court's Orders of January 17, 2025 and February 7, 2025, the Committee Overseeing Action for Lumber International Trade Investigations or Negotiations ("COALITION") respectfully submits this supplemental reply brief regarding the U.S. Supreme Court's decision in *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 144 S. Ct. 2244 (2024). *See* Order, Jan. 17, 2025, ECF 141; Order, Feb. 7, 2025, ECF 150. As explained below, *Loper Bright* does not alter how this Court should review Commerce's application of its differential pricing methodology ("DPM").[1] Nor does *Loper Bright* provide a basis for this Court to reject holdings of the U.S. Court of Appeals for the Federal Circuit ("Federal Circuit") made under the *Chevron* framework.

**I.  Federal Circuit Precedent Remains Binding Regardless of Whether the Decision Was Decided Under the *Chevron* Framework**

The COALITION's opening brief explained that Federal Circuit precedent decided prior to *Loper Bright* remains controlling and dispositive of multiple issues raised by the Canadian Parties in this appeal. *See* Suppl. Br. on *Loper Bright* of the COALITION at 6-7, Jan. 31, 2025 ("COALITION Suppl. Br."), ECF 144. The COALITION agrees with the Government's response that the Canadian Parties "{m}ere disagreement with the holding in a prior case 'cannot

---

[1] The COALITION maintains that *Loper Bright* is highly relevant to the affirmative argument that Commerce misinterpreted section 772(c)(2)(A) of the Tariff Act of 1930, as amended (the "Act"), by refusing to deduct countervailing duty costs from the price used to establish the export price ("EP") of the subject merchandise. As previously discussed, the Federal Circuit has not addressed Commerce's unlawful practice of excluding countervailing duties from the required adjustments to EP. *See* Reply Br. of the COALITION and Sierra Pacific Indus. in Supp. of Mot. for J. on the Agency R. at 6, Oct. 10, 2024, ECF 127 (conf.), 128 (public). Accordingly, this is a novel question of statutory interpretation that the Court should address using the *Loper Bright* framework.

1

**Consol. Court No. 23-00187**

by itself justify scrapping settled precedent.'" Def.'s Resp. to Pls.' *Loper Bright* Briefs at 6, Feb. 14, 2025 ("Gov. Suppl. Br.") (quoting *Kimble v. Marvel Ent., LLC*, 576 U.S. 446, 455 (2015)), ECF 151.  As noted by the Government, such precedent remains binding on this court "unless overturned by the Federal Circuit *en banc*."  *Id.*

Relevant to this appeal, the COALITION's opening brief applied the holding of *Apex Frozen Foods Private Ltd.*, where the Federal Circuit sustained Commerce's application of its meaningful differences test to explain why the average-to-average ("A-A") comparison method cannot account for significantly disparate pricing before the agency resorts to the average-to-transaction ("A-T") comparison method.  COALITION Suppl. Br. 6-7 (citing *Apex Frozen Foods Private Ltd. v. United States*, 862 F.3d 1337 (Fed. Cir. 2017) ("*Apex II*")).  The Government's response brief notes correctly that the Federal Circuit's holding in *Apex II* was reaffirmed in *Stupp*, where the Federal Circuit again held that Commerce's meaningful difference test fulfills the statutory directive that Commerce explain why the A-A method is inadequate in certain cases.  Gov. Suppl. Br. 7-8 (citing *Stupp Corp. v. United States*, 5 F.4th 1341, 1356 (Fed. Cir. 2021)).  Both *Apex II* and *Stupp* remain good law post-*Loper Bright*.  Thus, the Court is required by Federal Circuit precedent to reject the Canadian Parties' argument that the meaning of the word "explain" requires that Commerce identify the reasons for the differing results under the two comparison methods.  *See* Suppl. Br. on Subsequent Authority of Resolute FP Canada Inc. at 5, Jan. 31, 2025 ("Resolute Suppl. Br."), ECF 142; Canadian Parties' Suppl. Brief Addressing *Loper Bright* at 6-7, Jan. 31, 2025 ("CP Suppl. Br."), ECF 145.

The COALITION's opening brief also demonstrated that the Federal Circuit's decision in *Dillinger France* held that Commerce's use of the ratio test to determine if there is a pattern of prices that differ significantly was in accordance with law.  COALITION Suppl. Br. 5 (citing

2

**Consol. Court No. 23-00187**

*Dillinger France S.A. v. United States*, 981 F.3d 1318 (Fed. Cir. 2020)).  The Government's response similarly identifies *Dillinger France* as binding and controlling on this Court.  Gov. Suppl. Br. 6-7 (noting that "{w}hile parties may disagree with the Federal Circuit's use of *Chevron* analysis, *Loper Bright* held that 'mere reliance on *Chevron* cannot constitute a 'special justification' for overruling' holdings of prior cases" (quoting *Loper Bright*, 603 U.S. at 412)).  *Dillinger France* held that Commerce's "aggregation" methodology satisfies the statutory requirement that Commerce determine if a pattern of significantly differing pricing exists.  *Dillinger France*, 981 F.3d at 1325; *see also Stupp Corp.*, 5. F.4th at 1355 (holding that Commerce's ratio test satisfies the statutory requirement that Commerce determine whether there is a pattern of export prices that differ significantly).  This precedent remains binding even if the Federal Circuit reached its decision applying the *Chevron* framework.  *See Loper Bright*, 603 U.S. at 376.  Thus, this Court is obligated to reject the Canadian Parties' invitation to ignore settled precedent.  *See* Resolute Supp. Br. 8 n.25.

    The COALITION's opening brief likewise emphasized that Commerce was not required to determine why there is a pattern of export prices that differs significantly among purchasers, regions, or time periods.  COALITION Suppl. Br. 7 (citing *JBF RAK LLC v. United States*, 790 F.3d 1358, 1367-68 (Fed. Cir. 2015); *Borusan Mannesmann Boru Sanayi ve Ticaret A.S. v. United States*, 608 Fed. Appx. 948 (Fed. Cir. 2015)).  The Government's response further explains that *JBF RAK*'s holding was not limited to 19 U.S.C. § 1677f-1(d)(1)(B)(i)—as Resolute had argued.  *See* Gov. Suppl. Br. 9 (noting that "{b}y referencing subparagraph (B) in its entirety, the Court did not limit its holding" to only section 777A(d)(1)(B)(i) of the Act).  Under *Loper Bright*, the Federal Circuit's decision in *JBF RAK* remains good law.

**Consol. Court No. 23-00187**

Accordingly, binding Federal Circuit is dispositive of many of the arguments advanced by the Canadian Parties in this appeal. These decisions remain binding even if decided under *Chevron*. *Loper Bright*, 603 U.S. at 412 (noting that the decision to overrule *Chevron* "do{es} not call into question prior cases that relied on the *Chevron* framework").

## II. *Garg Tube* Correctly Held that Congress Gave Commerce Flexibility to Adress Targeted Dumping

The CIT considered the impact of *Loper Bright* on judicial review of issues related to Commerce's differential pricing methodology ("DPM") in *Garg Tube*. *See Garg Tube Export LLP v. United States*, 740 F. Supp. 3d 1355, 1364-68 (Ct. Int'l Trade 2024). The Defendant's response brief relies, in part, on that case to argue that the language of the statute reflects Congress' intent to give Commerce flexibility to address targeted dumping. Gov. Suppl. Br. 4. The COALITION agrees with the Government that section 777A(d)(1)(B) of the Act is best interpreted to delegate discretionary authority to Commerce to determine whether use of the A-T method is appropriate in a particular case.

Specifically, the Government's response noted that "Congress' mandate to Commerce to assess not merely whether prices differ, but whether they differ 'significantly' necessarily affords Commerce flexibility to assess the degree of difference depending on the particular context.'" *Id.* at 4 (quoting *Garg Tube*, 740 F. Supp. 3d at 1367). The COALITION agrees with the Defendant's argument and the reasoning expressed by the CIT in *Garg Tube* that "the words of the statute as well as the SAA make clear that Congress delegated to Commerce the power to use its discretion when determining whether prices differ significantly." *Garg Tube*, 740 F. Supp. 3d at 1367. The Canadian Parties attempt to argue that *Garg Tube* "rests on several erroneous premises." CP Suppl. Br. 4. But this is wrong. As noted by the Government in its response, the term "differ significantly" used by Congress in section 777A(d)(1)(B) of the Act is similar to the

4

**Consol. Court No. 23-00187**

term "substantially dependent," which the Federal Circuit found to be "general but not ambiguous." *Asociacion de Exportadores e Industriales de Aceitunas de Mesa v. United States*, 102 F.4th 1252, 1261 (Fed. Cir. 2024). Further, use of such general language gives Commerce flexibility to address targeted dumping. *See Garg Tube*, 740 F. Supp. 3d at 1367. Accordingly, the COALITION agrees with the Government that the language of the statute is best read as delegating discretionary authority to Commerce to determine whether the prerequisites of section 777A(d)(1)(B) of the Act are satisfied such that the agency should calculate dumping using the A-T method.

                                              Respectfully submitted,

                                              */s/ Zachary J. Walker*

                                              Andrew W. Kentz
                                              Zachary J. Walker

                                              **PICARD KENTZ & ROWE LLP**
                                              *Counsel to the COALITION*

Dated: February 21, 2025

**CERTIFICATE OF COMPLIANCE**

The undersigned counsel hereby certifies that this supplemental reply brief complies with the 5 page limit set in the Court's Orders of January 17, 2025 and February 7, 2025. *See* ECF Nos. 141, 150.

                                                 Respectfully submitted,

                                                 */s/ Zachary J. Walker*
                                                 Zachary J. Walker

                                               **PICARD KENTZ & ROWE LLP**
                                               *Counsel to the COALITION*

Dated: February 21, 2025