UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE THE HONORABLE JENNIFER CHOE-GROVES, JUDGE

| | |
|---|---|
| The Government of Canada, *et al.*,<br><br>*Plaintiffs*,<br><br>Canfor Corporation, *et al.*,<br><br>and<br><br>Committee Overseeing Action for Lumber International Trade Investigations or Negotiations,<br><br>*Consolidated Plaintiffs*,<br><br>Canfor Corporation, *et al*.,<br><br>*Plaintiff-Intervenors*,<br><br>v.<br><br>The United States,<br><br>*Defendant*,<br><br>Committee Overseeing Action for Lumber International Trade Investigations or Negotiations, *et al.*,<br><br>*Defendant-Intervenors*. | Consol. Court No.<br><br>1:23-cv-00187-JCG |

**CANADIAN PARTIES'**[1] **SUPPLEMENTAL REPLY BRIEF ADDRESSING** *LOPER BRIGHT*

February 21, 2025

---

[1] The "Canadian Parties" filing this brief are: **Plaintiffs** Government of Canada, Government of Alberta, Government of Québec, British Columbia Lumber Trade Council, Fontaine, Inc., Interfor Corporation, and Interfor Sales & Marketing Ltd.; **Consolidated Plaintiffs/Plaintiff-Intervenors** Canfor Corporation, Canadian Forest Products Ltd., Canfor Wood Products Marketing, Ltd., Tolko Industries, Ltd., Tolko Marketing & Sales, Ltd., and Gilbert Smith Forest Products, Ltd.; and **Plaintiff-Intervenors** Government of Ontario, Chaleur Forest Products Inc., Chaleur Forest Products L.P., West Fraser Mills, Ltd., J.D. Irving, Limited., Delco Forest Products Ltd., Devon Lumber Co. Ltd., H.J. Crabbe & Sons Ltd., Langevin Forest Products Inc., Marwood Ltd., North American Forest Products Ltd., and Twin Rivers Paper Co. Inc.

/s/ Eric S. Parnes
Eric S. Parnes
Joanne E. Osendarp
Lynn Kamarck
Alan Kashdan
**Blank Rome LLP**
1825 Eye Street, NW
Washington, DC 20006
Tel: (202) 420-5479
Email: eric.parnes@blankrome.com
*Counsel to the Government of Canada*

/s/ Lynn Fischer Fox
Lynn Fischer Fox
Gina M. Colarusso
Archana Rao P. Vasa
**Arnold & Porter Kaye Scholer LLP**
601 Massachusetts Avenue, NW
Washington, DC 20001-3743
Tel: (202) 942-5601
Email: lynn.fischerfox@arnoldporter.com
*Counsel to the Government of Alberta*

/s/ H. Deen Kaplan
H. Deen Kaplan
Jonathan T. Stoel
**Hogan Lovells US LLP**
Columbia Square Building
555 Thirteenth Street, NW
Washington, DC 20004
Tel: (202) 637-5799
Email: deen.kaplan@hoganlovells.com
*Counsel to the Government of Ontario*

/s/ Nancy Noonan
Nancy Noonan
**ArentFox Schiff LLP**
1717 K Street, NW
Washington, DC 20006
Tel: (202) 857-6479
Email: nancy.noonan@afslaw.com
*Counsel to the Government of Québec*

/s/ Amy J. Lentz
Amy J. Lentz
Stephanie Wang
**Steptoe LLP**
1330 Connecticut Avenue, NW
Suite 578
Washington, DC 20036
Tel: (202) 429-1320
Email: alentz@steptoe.com
*Counsel to the British Columbia Lumber Trade Council*

*/s/ Mark B. Lehnardt*
Mark B. Lehnardt
**Law Offices of David L. Simon, PLLC**
1025 Connecticut Avenue, NW
Suite 1000
Washington, DC 20036
Tel: (202) 642-4850
Email: MarkLehnardt@DLSimon.com
*Counsel to Fontaine Inc.*

*/s/ Diana Dimitriuc-Quaia*
Matthew Nolan
Diana Dimitriuc Quaia
Mario Torrico
**ArentFox Schiff LLP**
1717 K Street, NW
Washington, DC 20006
Tel: (202) 857-6291
Email: diana.dimitriuc-quaia@afslaw.com
*Counsel* to *Interfor Corporation, Interfor Sales and Marketing Ltd., Chaleur Forest Products, Inc. and Chaleur Forest Products, L.P.*

*/s/ Henry D. Almond*
Henry D. Almond
Kang Woo Lee
**Arnold & Porter Kaye Scholer LLP**
601 Massachusetts Avenue, NW
Washington, DC 20001-3743
Tel: (202) 942-5698
Email: henry.almond@arnoldporter.com
*Counsel to Tolko Industries Ltd., Tolko Marketing & Sales Ltd., and Gilbert Smith Forest Products Ltd.*

*/s/ R. Will Planert*
R. Will Planert
Donald B. Cameron
Julie C. Mendoza
Brady W. Mills
Mary S. Hodgins
Eugene Degnan
Jordan L. Fleischer
Nicholas C. Duffey
Ryan R. Migeed
**Morris, Manning & Martin, LLP**
1333 New Hampshire Avenue, NW
Suite 800
Washington, DC 20036
Tel.: (202) 216-4819
Email: wplanert@mmmlaw.com
*Counsel to Canfor Corporation, Canadian Forest Products, Ltd., and Canfor Wood Products Marketing Ltd.*

*/s/ Donald Harrison*
Donald Harrison
**Gibson, Dunn & Crutcher, LLP**
1050 Connecticut Avenue, NW
Suite 900
Washington, DC 20036-5306
Tel: (202) 955-8560
Email: dharrison@gibsondunn.com
*Counsel to West Fraser Mills Ltd.*

*/s/ Jay Charles Campbell*
Jay Charles Campbell
Allison Kepkay
Walter Spak
**White & Case, LLP**
701 Thirteenth Street, NW
Washington, DC 20005-3807
Tel: (202) 626-3632
Email: jcampbell@whitecase.com
*Counsel to J.D. Irving, Limited*

*/s/ Rajib Pal*
Rajib Pal
**Sidley Austin LLP**
1501 K Street, NW
Washington, DC 20005
Tel: (202) 736-8329
Email: rpal@sidley.com
*Counsel to Delco Forest Products Ltd., Devon Lumber Co. Ltd., H.J. Crabbe & Sons Ltd., Langevin Forest Products Inc., Marwood Ltd., North American Forest Products Ltd., and Twin Rivers Paper Co. Inc.*

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Apex Frozen Foods Private Ltd. v. United States*,
    862 F.3d 1337 (Fed. Cir. 2017) ..................................................................................5

*Asociación de Exportadores e Industriales de Aceitunas de Mesa v. United States*,
    102 F.4th 1252 (Fed. Cir. 2024) .................................................................................3

*Baltimore Gas and Elec. Co. v. Natural Resources Defense Council, Inc.*,
    462 U.S. 87 (1983) .....................................................................................................2

*Borusan Mannesmann Boru Sanayi ve Ticaret A.S. v. United States*,
    608 Fed. Appx. 948 (Fed. Cir. 2015) ..........................................................................5

*Ctr. for Biological Diversity v. Bernhardt*,
    982 F.3d 723 (9th Cir. 2020) ......................................................................................2

*Fujitsu General Ltd. v. United States*,
    88 F.3d 1034 (Fed. Cir. 1996) ....................................................................................3

*Garg Tube Export LLP v. United States*,
    740 F. Supp. 3d 1355 (Ct. Int'l Trade 2024) ...........................................................3, 4

*Gonzales v. Oregon*,
    546 U.S. 243 (2006) ...................................................................................................2

*Gray v. Powell*,
    314 U.S. 402 (1941) ...................................................................................................1

*Industriales de Aceitunas de Mesa v. United States*,
    102 F.4th 1252 (Fed. Cir. 2024) .............................................................................3, 4

*JBF RAK LLC v. United States*,
    790 F.3d 1358 (Fed. Cir. 2015) ..................................................................................5

*Loper Bright Enterprises v. Raimondo*,
    144 S. Ct. 2244 (2024) ...................................................................................... *passim*

*Mid Continent Steel & Wire, Inc. v. United States*,
    940 F.3d 662 (Fed. Cir. 2019) ....................................................................................3

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
    463 U.S. 29 (1983) .....................................................................................................2

*NEXTEEL Co., Ltd. v. United States*,
    28 F.4th 1226 (2022) .............................................................................................3, 4

*NLRB v. Hearst Publications*,
    322 U.S. 111 (1941)..........................................................................................................1

*Skidmore v Swift & Co.*,
    323 U.S. 124 (1944)..........................................................................................................2

*Stupp Corp. v. United States*,
    5 F.4th 1341 (Fed. Cir. 2021) ....................................................................................3, 4, 5

*The Timken Co. v. United States*,
    179 F. Supp. 3d 1168 (Ct. Int'l Trade 2016) ....................................................................5

**Statutes**

19 U.S.C. § 1677(35) ....................................................................................................................3

19 U.S.C. § 1677f-1(d)(1)(B) ....................................................................................................1, 3

19 U.S.C. § 1677f–1(d)(1)(B)(i) ....................................................................................................5

19 U.S.C. § 1677f–1(d)(1)(B)(ii) ...................................................................................................5

**Other Authorities**

Statement of Administrative Action Accompanying the Uruguay Round
    Agreements Act, H.R. Doc. No. 103-316, vol. 1, reprinted in 1994
    U.S.C.C.A.N. 4040 ..........................................................................................................4

In this review of agency action, the Government and the Domestic Parties ask the Court to disregard the most significant Supreme Court decision addressing judicial review of agency action in at least a generation. To accept their pleas would be to ignore the central holdings of *Loper Bright* that "Chevron is overruled," that it "makes no sense to speak of a 'permissible' interpretation that is not the one the court, after applying all relevant interpretive tools, concludes is best," and that "{c}ourts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority."[1] Likewise, these Parties insist that deference to Commerce's Differential Pricing Methodology ("DPM") survives *Loper Bright*. These arguments ignore Federal Circuit holdings that the DPM is an "interpretive rule" setting forth the agency's interpretation of ambiguous terms in 19 U.S.C. § 1677f-1(d)(1)(B), which, prior to *Loper Bright*, were reviewed for "reasonableness" under the *Chevron* framework.[2] In considering the arguments, we respectfully urge the Court to keep in mind that—whatever the precise holding of *Loper Bright*—it cannot possibly be the case that it *enhanced* the deference this Court owes to Commerce's interpretations of its statutory obligations.

*Loper Bright* makes clear courts have and are expected to apply expertise in interpreting the law *without* deference to agency interpretations. It is for the court to apply its own best interpretation of the law. That is the case for what might be characterized as mixed questions of law and fact.[3] It is true for "technical statutory questions" and in circumstances where agencies

---

[1] *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244, 2273, 2266 (2024).
[2] Canadian Parties Suppl. Br., Jan. 31, 2025, ECF No. 145, at 1-2 & n.5.
[3] *Contra* Sierra Pacific's Suppl. Br., Jan. 31, 2025, ECF No. 143, at 1-2. Far from endorsing deference to agencies for mixed questions of law and fact, the Court's discussion of *Gray v. Powell*, 314 U.S. 402 (1941), and *NLRB v. Hearst Publications,* 322 U.S. 111 (1941), merely recounts the "far from consistent" historical approach to deference, "even {for} such factbound statutory determinations." *Loper Bright*, at 2260. The majority nowhere suggests that courts should defer to agency interpretations in such circumstances, and both concurring and dissenting

have sought so-called "*Skidmore* deference," which is not deference at all, but merely counsels "respect" for agency interpretations informed by expertise and having persuasive value—factors not implicated here.[4] Respect is based on agency expertise, and the weight of an agency's opinion depends on "the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control."[5]

To the extent that Congress intended Commerce to develop and apply expertise in administering the dumping laws, there is no indication that Commerce has, or was authorized to apply, expertise in the use and application of statistical tests. The statistical and mathematical principles underlying Cohen's *d*, a statistical test for use in the social sciences, are not within the agency's area of expertise.[6] This Court does not owe even *Skidmore* "respect" to Commerce for decisions that cannot "be ascribed to . . . the product of agency expertise."[7] Even pre-*Loper Bright* decisions regularly rejected pleas for deference when administrative agencies act outside their expertise.[8] Commerce's responsibility for administering the antidumping laws does not imply that all of the choices Commerce makes in interpreting or applying those laws are within

---

Justices make clear that they understand that the holding does not do what Sierra Pacific claims. *Loper Bright,* at 2284 (Gorsuch, J. concurring) and 2305-06 (Kagan, J. dissenting).
[4] *Loper Bright*, at 2267.
[5] *Loper Bright*, at 2259, citing *Skidmore v Swift & Co.*, 323 U.S. 124, 140 (1944).
[6] *See* Canadian Parties' Suppl. Br. at 5–8.
[7] *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983); *cf. Baltimore Gas and Elec. Co. v. Natural Resources Defense Council, Inc.*, 462 U.S. 87, 103 (1983) (a reviewing court owes deference to an agency determination if that agency is acting "within its area of special expertise").
[8] *See, e.g.*, *Gonzales v. Oregon*, 546 U.S. 243, 266 (2006) ("The structure of the CSA, then, conveys unwillingness to cede medical judgments to an executive official who lacks medical expertise."); *Ctr. for Biological Diversity v. Bernhardt*, 982 F.3d 723, 740 (9th Cir. 2020) ("{D}eference applies only when the agency is making predictions within its area of special expertise" and the scope of the Bureau of Ocean Energy Management's expertise did "not include the economic analysis of greenhouse gas emissions . . . .").

2

the agency's expertise.  The Federal Circuit certainly has not deferred to any purported Commerce expertise in the field of statistics.[9]  Neither should this Court.

Arguments that Congress delegated interpretive authority to Commerce are equally unavailing.  There is no explicit delegation in the statute.  Cases cited for the proposition that Commerce has been *implicitly* delegated interpretative authority through use of broad language[10] or is otherwise due some form of deference because of its expertise in "complex economic and accounting decisions of a technical nature" do not control in this case.[11]  After *Loper Bright*, Commerce's pleas that it must be afforded deference as "master of the dumping laws" must yield to the Supreme Court's holding that courts, not agencies, are masters of statutory interpretation.  Moreover, the Federal Circuit has already ruled that Commerce's DPM is an "interpretive rule" and must be analyzed as such.[12]  In *NEXTEEL*, where the Federal Circuit analyzed issues involving the particular market situation statute under the implicit delegation doctrine, it did not

---

[9] *Stupp Corp. v. United States*, 5 F.4th 1341, 1357–60 (Fed. Cir. 2021) (reviewing the statistics literature and concluding that it did not support Commerce's defenses for using Cohen's *d*); *Mid Continent Steel & Wire, Inc. v. United States*, 940 F.3d 662, 674 (Fed. Cir. 2019) (reviewing the literature to conclude that "the only cited literature source for the relevant aspect of {Cohen's *d*} calls for the use of weighted averages").

[10] *Loper Bright* recognized that a "statute's meaning may well be that the agency is authorized to exercise a degree of discretion." *Loper Bright*, 144 S. Ct. at 2263.  Some level of discretion may arise when a statute delegates authority to an agency to give meaning to a statutory term, to prescribe rules to "fill up the details" of the statutory scheme, or "regulate subject to the limits imposed by a term or phrase" such as "appropriate," or "reasonable." *Id.* at 2263.  The provisions noted by the Supreme Court also contained language indicative of an intent to delegate authority to exercise judgment or make findings as to whether such terms were met. *Id.* at 2263 n.6. The statutory provisions at issue—19 U.S.C. § 1677f-1(d)(1)(B) and 19 U.S.C. § 1677(35)—do not use any such language.

[11] *See Asociación de Exportadores e Industriales de Aceitunas de Mesa v. United States*, 102 F.4th 1252 (Fed. Cir. 2024) ("*Asemesa*"), *Fujitsu General Ltd. v. United States,* 88 F.3d 1034 (Fed. Cir. 1996), and *Garg Tube Export LLP v. United States*, 740 F. Supp. 3d 1355 (Ct. Int'l Trade 2024).

[12] *See Stupp*, 5 F.4th at 1351-53.

3

undertake such an analysis for issues involving the DPM, and instead followed *Stupp* and ordered a remand.[13]

Even if there were an implicit delegation, *Asemesa* is instructive on its limits. There, the Federal Circuit deferred to Commerce's flexible, case-specific reading of the broad term "substantially dependent," but *rejected* the idea of a "pure numerical test."[14] Here, Commerce has adopted a pure numerical test for "differ significantly" rather than a "flexible interpretation," as endorsed in *Asemesa* for the term "substantially dependent." The latter would at least arguably be in line with Congress's intent that Commerce engage in case-by-case analysis.[15] If there is discretion conferred by the term "significant difference," Commerce has not exercised it, but has instead abdicated it in favor of a bright-line rule based on a misapplied statistical test.

With respect to the *stare decisis* effect of certain Federal Circuit decisions addressing issues relevant to this case, the Government and the Domestic Parties once again fail to engage meaningfully with the points that the Canadian Parties have made. This is particularly apparent in the Government's discussion of cases addressing the requirement that Commerce explain why A-A cannot account for an identified pattern of significant price differences.[16] *Loper Bright* directed that "holdings of . . . cases that specific agency actions are lawful . . . are still subject to

---

[13] *NEXTEEL Co., Ltd. v. United States*, 28 F.4th 1226, 1233-34, 1239 (2022).
[14] *Asemesa*, 102 F.4th at 1261.
[15] Statement of Administrative Action Accompanying the Uruguay Round Agreements Act, H.R. Doc. No. 103-316, vol. 1, at 843, reprinted in 1994 U.S.C.C.A.N. 4040, 4177-78 ("SAA"). The SAA is inconsistent with the suggestion in *Garg Tube* that the DPM effectuates a delegation of interpretive authority. Commerce has applied a mechanical test that absolves it from having to conduct the kind of inquiry directed by the SAA: "Commerce will proceed on a case-by-case basis, because small differences may be significant for one industry or one type of product, but not for another." *Id*. Even in the case of a delegation, *Loper Bright* makes it clear that courts have the obligation to "ensure the agency acts within it." 144 S. Ct. at 2273.
[16] Canadian Parties Suppl. Br. Addressing *Loper Bright*, at 8-9.

4

statutory *stare decisis*."[17]  The "specific agency action" upheld in *Apex II* and *Stupp* was not the application of the meaningful difference test in any and all circumstances.[18]  The Federal Circuit's decision in *Stupp* itself makes clear that finding a test generally "reasonable" (as in the case of Cohen's *d*) does not sustain application of that test in all circumstances (as in the case of applying Cohen's *d* without regard to the assumptions).[19]

With respect to *JBF RAK*, it is important to emphasize the limits of that holding and its application.[20]  *JBF RAK* states only that the Act does not impose a requirement for Commerce to determine intent.[21]  Our arguments are not based on the "intent" of the respondents but rather on objective record evidence of market price trends that contradict Commerce's conclusion that, in this case, resort to the A-T method was necessary to unmask targeted dumping.[22]

---

[17] *Loper Bright*, at 2273.
[18] *Stupp*, 5 F.4th at 1356; *Apex Frozen Foods Private Ltd. v. United States*, 862 F.3d 1337 (Fed. Cir. 2017).  Neither case addressed application of the test where price differences are based entirely on quarterly price comparisons, and the rationale in *Apex II* would not apply to such circumstances.
[19] *Stupp*, 5 F.4th at 1360.
[20] While the COALITON cites to *Borusan Mannesmann Boru Sanayi ve Ticaret A.S. v. United States*, 608 Fed. Appx. 948 (Fed. Cir. 2015), the Government does not, and with good reason.  That opinion is not precedential.  To the extent it extended the holding of *JBF RAK*, it did so without analysis and therefore it cannot be considered even persuasive authority.
[21] *JBF RAK LLC v. United States*, 790 F.3d 1358, 1367-68 (Fed. Cir. 2015).  Moreover, the *JBF RAK* court addressed "Commerce's Interpretation of 19 U.S.C. § 1677f–1(d)(1)(B)(i)," it did not rule on the explanation requirement in 19 U.S.C. § 1677f–1(d)(1)(B)(ii).
[22] *See The Timken Co. v. United States,* 179 F. Supp. 3d 1168, 1179 n.12 (Ct. Int'l Trade 2016) (the burden referred to in *JBF RAK* might not exist where the parties provide the information, and that in such cases the substantial evidence standard might require a different result).